UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

       Plaintiff,

v.

Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

       Defendants.

Civil No. 09-1091 (JNE/JSM)
ORDER

Keith M. Sorge, Esq., Arthur, Chapman, Kettering, Smetak & Pikala, PA, appeared for Plaintiff Aviva Sports, Inc.

Stephan J. Nickels, Esq., Foley & Lardner, appeared for Defendant Wal-Mart Stores, Inc.

Brooke D. Anthony, Esq., Anthony Ostlund Baer & Louwagie, PA, appeared for Defendant Manley Toys, Ltd.

Pending before the Court is Defendant Wal-Mart Stores, Inc.'s (Wal-Mart) motion for summary judgment on count three of the Amended Complaint, which alleges unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (2006). Wal-Mart argues that Plaintiff Aviva Sports, Inc. (Aviva) does not have standing to bring a Lanham Act false advertising claim against it. For the reasons stated below, the Court agrees and grants summary judgment to Wal-Mart on count three of the Amended Complaint.

## I.    BACKGROUND[1]

Aviva manufactures and sells, among other things, inflatable waterslides and pools. Defendant Manley Toys, Ltd. (Manley) also manufactures and sells inflatable waterslides and

---

[1] Unless otherwise stated, the facts described below are undisputed or are those that a reasonable fact-finder could find when viewing the record in the light most favorable to Aviva.

1

pools. Both Aviva's and Manley's products are available through Wal-Mart. Aviva claims that Manley's advertisements violate the Lanham Act's false advertising provision. In brief, Aviva asserts that Manley altered images of its products to make them appear larger than they actually are. According to Aviva, Manley did this by reducing the size of images of children relative to the size of its products and then inserting the scaled-down children into images of the toys to make it look like the children were using them.

Aviva outsources the manufacturing of its slides and pools and sells them, as a wholesaler, to retail stores, such as Wal-Mart. The retailers then sell the products to the ultimate consumer. A very small percentage of Aviva's sales are to consumers directly through its website. Those undisputed percentages are, from 2001 through 2010, (1) 3.71% of Aviva's total sales were retail; (2) 0.13% of Aviva's total sales were retail sales of products at issue in this case; and (3) 0.73% of Aviva's sales of products at issue in this case were retail.

Wal-Mart sells Manley's inflatable waterslides and pools in its stores and also sells them alongside Aviva's on Wal-Mart's website. Wal-Mart is not a wholesaler of the products at issue in this case.

Aviva allows the consuming public to purchase slides and pools from its website, but apart from that it points to no evidence that it attempts to compete at the retail, as opposed to the wholesale, level. For example, Aviva points to nothing suggesting it tried to improve its retail sales or take retail business away from retailers such as Wal-Mart. Aviva does, however, cite to the deposition testimony of its Federal Rule of Civil Procedure 30(b)(6) witness, Garry Bowhall, in which he testified that Aviva is in competition with some retailers.

## II.     DISCUSSION

In broad terms, standing is the plaintiff's right to assert a claim in court. In federal court, standing involves constitutional limitations on federal-court jurisdiction as well as prudential limits on the exercise of that jurisdiction. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). To satisfy constitutional standing, which is required by Article III's limit on federal-court jurisdiction to cases or controversies, plaintiffs must demonstrate (1) that they have suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that a favorable decision will redress the injury.[2] *Id.* In addition to these immutable requirements, federal courts have adhered to "a set of prudential principles that bear on the question of standing." *Id.* (citations omitted) (internal quotation marks omitted).

Prudential limits are concerned with the proper role of courts in a democratic society. *Id.* Unlike constitutional standing, Congress can override courts' prudential standing decisions with legislation. *Id.* As might be expected, no single rule governs every issue of prudential standing. *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987). There are, however, several considerations that are typically invoked: (1) litigants may not assert the rights of third parties; (2) courts should refrain from adjudicating matters of wide public significance which amount to generalized grievances; and (3) litigants must demonstrate that their asserted interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision upon which the claim is based. *Int'l Ass'n of Firefighters of Saint Louis v. City of Ferguson*, 283 F.3d 969, 973-74 (8th Cir. 2002).

---

[2]     The Court concludes that Aviva has met its burden—at the summary judgment stage—of demonstrating constitutional standing. The record contains evidence suggesting that Wal-Mart offers Manley's inflatable waterslides and pools with advertisements containing misrepresentations about the size of those products, and these misrepresentations could influence a consumer's decision to purchase Manley's products over Aviva's.

3

**A.      Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Wal-Mart suggests that because the issue before the Court is standing, as opposed to the merits, the Court may decide issues of disputed fact. (Reply 5) The Court disagrees for two reasons. First, none of the three "typical" prudential standing doctrines is at issue here. Aviva asserts its own interest, the dispute is concrete in nature, and neither party has framed the issue under the zone-of-interests test. As the Third Circuit Court of Appeals explained in *Conte Brothers Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3rd Cir. 1998), the real question is whether Congress intended parties in Aviva's position to have standing to sue parties in Wal-Mart's position. The *Conte Brothers* court called this question of prudential standing one of "statutory standing." *Id.* at 226. The Eighth Circuit Court of Appeals has distinguished between Article III standing and statutory standing in determining the appropriateness of a court deciding disputed fact issues. Unlike disputed facts that determine Article III standing, which may sometimes be decided by a court, disputed facts that determine statutory standing go "to the

4

merits and therefore must be decided in accordance with Rule 56 standards, viewing the evidence in the light most favorable to [the plaintiff] and leaving credibility issues to the ultimate finder of fact." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003). The Court is not convinced that it may appropriately resolve disputed facts that bear on whether Aviva has prudential standing here. Second, resolving disputed facts would require an evidentiary hearing, which has not been conducted and which no party has requested. It would be error to "resolve[] factual disputes and ma[k]e witness credibility determinations central to the issue of standing simply by relying on a warring paper record consisting of conflicting affidavit and deposition transcripts." *United States v. 1998 BMW "I" Convertible, Vin # WBABJ8324WEM 20855*, 235 F.3d 397, 400 (8th Cir. 2000). Accordingly, the Court declines to decide facts which have conflicting support in the record, and proceeds instead under the familiar framework of Rule 56, upon which Wal-Mart ultimately bases its motion.

**B.     Prudential standing**

Because Congress may eliminate the prudential limitations on standing, the first issue that the Court must address is whether Congress did so in passing the false advertising provision in the Lanham Act. The Court is aware of and the parties point to no Eighth Circuit case resolving this issue, but the Eighth Circuit stated in dicta that the prudential limitations on standing should apply to false advertising Lanham Act claims. *Am. Ass'n. of Orthodontists v. Yellow Book USA, Inc. (Yellow Book)*, 434 F.3d 1100, 1103-04 (8th Cir. 2006) (dismissing Lanham Act case for failure to state a claim, but including dicta that a prudential standing requirement in false advertising cases is "without question a proper component of the 'prudential considerations defining and limiting the role of the courts'"). Every circuit that has addressed the issue has held that prudential standing limitations apply to Lanham Act false advertising

cases. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.32 (4th ed. 2011) (discussing the prudential standing requirements of the Second, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuit Courts of Appeal). The *Conte Brothers* court analyzed the issue in detail based on the Lanham Act's text, structure, and legislative history and concluded that Congress had not abrogated prudential standing. The Court finds this analysis and the weight of authority on the matter persuasive and concludes that prudential limitations on standing apply to false advertising claims brought under the Lanham Act.

Although the circuits are unanimous that prudential standing limitations apply to Lanham Act false advertising claims, they articulate different frameworks to determine standing. There are three approaches: (1) a categorical test, requiring that the plaintiff and the defendant be competitors; (2) a five-factor aggregate test, first recognized in *Conte Brothers*; and (3) a reasonable interest test. In *Yellow Book*, the Eighth Circuit recognized the categorical test and the test from *Conte Brothers*, but declined to endorse one over the other because the plaintiff lacked standing under either. *Yellow Book*, 434 F.3d at 1104. The Court concludes that Aviva lacks standing under all three approaches.

*1.     The categorical test*

The Ninth Circuit, as well as the Seventh and Tenth Circuits, have restricted prudential standing for Lanham Act false advertising cases to plaintiffs that compete with defendants. 5 McCarthy, *supra*, § 27.32.

> False advertising cases generally involve some sort of misrepresentation in the marketplace that causes "a discernibly competitive injury." [*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106 (9th Cir. 1992)]. Standing under this line of cases requires a showing that: (1) the plaintiff competes with the defendant in some marketplace, *Halicki v. United Artists Commc['ns], Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987); (2) the plaintiff has alleged a discernibly competitive injury resulting from a misrepresentation in the marketplace, *Waits*, 978 F.2d at 1109; and (3) the misrepresentation implicates some purpose of the Lanham Act

6

> regarding the use of trademarks.  *Id.*; *see also Halicki*, 812 F.2d at 1214 (Lanham
> Act should not be construed to create a federal "tort of misrepresentation").

*Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003).

Wal-Mart argues that Aviva does not have standing under this test because Aviva, a wholesaler, does not compete with Wal-Mart, a retailer.  Aviva responds by asserting that the record would allow a reasonable fact-finder to find that Aviva competes with Wal-Mart on the retail level.  It does not.  The only evidence that Aviva competes against Wal-Mart in the retail marketplace is Aviva's retail sales through its website and Bowhall's deposition testimony that Aviva competes in the retail marketplace.  Aviva's retail sales make up an insignificant percentage of its total business.  Aviva responds that there should be no de minimis amount of sales that prohibits a conclusion of competition.  Regardless of whether a per se de minimis test should be adopted, the small amount of sales in this situation is not enough to allow a reasonable fact-finder to conclude that Aviva competes with Wal-Mart on the retail level.  Aviva does not point to any evidence suggesting that it attempted to expand its retail sales or that it actively tried to take sales away from Wal-Mart (through which it sold—and apparently sells—its products) or any other retailer.  Aviva also points to no evidence suggesting that it set the price of its retail products to make them competitive with retailers selling similar or even Aviva's own products. The only evidence in the record of action that Aviva took to obtain retail sales was making its products available on its website to retail consumers.  In sum, Aviva's non-retail sales account for approximately 96% of its total sales; what minimal retail sales Aviva does have take place exclusively through its website; and Aviva points to no evidence of other actions or strategies to compete on the retail level.  Under these circumstances, a reasonable fact-finder could not conclude that Aviva competes with Wal-Mart on the retail level.  The testimony of Aviva's Rule 30(b)(6) witness does not change this analysis.  Though Bowhall did testify that he considered

7

retailers selling competing products to be competitors, he also testified that he considered retailers selling Aviva's products to be customers rather than competitors. (Bowhall Dep. 61) Further, Bowhall's testimony is conclusory and does not contain any underlying facts supporting his conclusion that Aviva competes with retailers. On this record, a reasonable fact-finder could not conclude that Aviva competes with Wal-Mart on the retail level. Therefore, Aviva does not have standing to sue Wal-Mart under the categorical competitor test.

   *2.   Five-factor test*

A five-factor aggregate test to determine Lanham Act standing was adopted by the Third Circuit in *Conte Brothers*:

> (1) The nature of the plaintiff's alleged injury; whether it is of a type that Congress sought to redress.
>
> (2) The directness or indirectness of the asserted injury.
>
> (3) The proximity or remoteness of the party to the alleged injurious conduct.
>
> (4) The speculativeness of the damages claim.
>
> (5) The risk of duplicative damages or complexity in apportioning damages.

*Conte Bros.*, 165 F.3d at 233. Aviva fails to demonstrate standing under this test.

Aviva argues that it has established an injury of the type Congress sought to redress through the Lanham Act because it suffered lost sales. But injury to commercial interest is only one type of injury that Congress sought to redress; the other is damage to a plaintiff's ability to compete, good will, or reputation. *Conte Bros.*, 165 F.3d at 234. Aviva does not argue that the advertising here damaged its ability to compete, its reputation, or its good will. Because Aviva points to evidence supporting commercial injury without pointing to evidence of competitive injury, the first factor does not weigh in favor of its prudential standing.

Aviva's injuries are indirectly related to Wal-Mart's alleged misconduct.

8

> The paradigmatic case in which the directness of the plaintiff's asserted injury most clearly supports standing is one in which the defendant's "literally false advertising about its own goods influenced its customers to buy its products instead of [the plaintiff]'s product." In that scenario, the plaintiff's injury is an unmediated consequence of the defendant's anti-competitive conduct. A typical direct-injury scenario thus proceeds in three steps: (1) the defendant runs a false advertisement; (2) the advertisement causes customers to switch from purchasing the plaintiff's product to purchasing the defendant's product; (3) the plaintiff suffers economic injury as a result.

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 799 (5th Cir. 2011). Here the causal chain is more attenuated than in the paradigmatic case and is comprised of four steps instead of three: (1) Manley runs allegedly false advertisements; (2) Wal-Mart offers for sale Manley's products with the allegedly false advertisements; (3) the Manley advertisements cause the customer to purchase Manley's products instead of Aviva's; and (4) Aviva suffers an economic loss as a result. There is an intermediate step in between the initial false representation and when that representation is made to the ultimate consumer. That is, Manley makes the initial representation, which is then passed on to Wal-Mart, and then Wal-Mart passes the representation on to the consumer. And while this extra step does not occur in between the defendant's conduct and the plaintiff's injury (it is not an intervening cause), it nevertheless bears on the indirectness of the relationship between Wal-Mart's conduct and Aviva's injury; without Manley's conduct, Wal-Mart's alleged misconduct could not have occurred. The second factor does not favor Aviva's prudential standing.

> Aviva is not particularly proximate to the alleged injurious conduct.
>
> "'[T]he existence of an identifiable class of persons'" who are more immediate to the injury than is the plaintiff and "'whose self-interest would normally motivate them to vindicate the public interest diminishes the justification for allowing a more remote party'" to bring suit. Customers are "irrelevant to this analysis" because they lack standing to sue under the Lanham Act.

9

*Id.* at 800-01 (citations omitted). Here, other retailers in competition with Wal-Mart are such an identifiable class. These potential plaintiffs are more proximately injured by Wal-Mart's conduct because they are at the same level in the distribution chain. Further, their self-interest, as direct retail competitors, make them more likely to vindicate the public interest. Because Wal-Mart is an Aviva customer, the litigation decisions made by a plaintiff in Aviva's position are colored by a desire to increase its business with the customer-defendant. Accordingly, this factor does not support Aviva's prudential standing.

Because Aviva's damages claim is not entirely speculative, this factor slightly supports Aviva's prudential standing. "To state a damages claim that is sufficiently determinate to support Lanham Act standing, a plaintiff must plead that the defendant's anti-competitive conduct either has caused the plaintiff to lose profits or has caused the defendant to gain profits in a definite and ascertainable amount." *Id.* at 801. As Aviva points out, the degree to which standing must be supported with evidence depends on the stage of the litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1990). When this motion was argued expert discovery had not closed. In support of the definiteness of its damages claim, Aviva cites the declaration of its expert Frances M. McCloskey, who states that he will provide lost sales and profit calculations concerning the damages caused by Manley's allegedly false advertising. On the other hand, the actual economic loss depends on consumers reacting in a particular way to the advertisements of Aviva's and Manley's products. And the amount of any resulting loss will be difficult to quantify. In this sense, the damages are speculative. But on balance and at this stage of the litigation, Aviva's assertion as to what expert evidence it will adduce at trial suggests its damages are not entirely speculative and slightly supports Aviva's claim of prudential standing.

Finally, the risk of duplicative damages and complex apportionment counsels against Aviva's prudential standing. This case presents nearly the same issues as were present in *Conte Brothers*, which was a retailer-plaintiff suing a wholesaler-defendant.

> Finally, recognizing the right of every potentially injured party in the distribution chain to bring a private damages action would subject defendant firms to multiple liability for the same conduct and would result in administratively complex damages proceedings. Additionally, such a holding could result in an enormous number of relatively insignificant cases being litigated in the federal courts. If every retailer had a cause of action for false advertising regardless of the amount in controversy, regardless of any impact on the retailer's ability to compete, regardless of any impact on the retailer's good will or reputation, and regardless of the remote nature of the injury suffered, the impact on the federal courts could be significant.

*Conte Bros.*, 165 F.3d at 235. The final factor counsels against Aviva's prudential standing.

Aviva does not have prudential standing under the *Conte Brothers* test.

### 3. *Reasonable interest test*

A third prudential standing test, the reasonable interest test, is used by the Second Circuit Court of Appeals.

> Our test for standing has been called the "reasonable interest" approach. Under this rubric, in order to establish standing under the Lanham Act, a plaintiff must demonstrate (1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising.

*Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 113 (2d Cir. 2010). For the same reasons as have already been discussed above, the Court concludes that Aviva does not have prudential standing under the reasonable interest test.

Accordingly, Aviva does not have standing to sue Wal-Mart under the Lanham Act regardless of which prudential standing test is used.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Wal-Mart's Motion for Partial Summary Judgment [Docket No. 284] is GRANTED.

2. Summary judgment is granted in favor of Wal-Mart and against Aviva as to count three, the Lanham Act claim, of the Amended Complaint.

Dated: June 27, 2011

                                                  s/ Joan N. Ericksen
                                                  JOAN N. ERICKSEN
                                                  United States District Judge