UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

      Plaintiff,

v.

Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

      Defendants.

Civil No. 09-1091 (JNE/JSM)
ORDER

---

Keith M. Sorge, Esq., Arthur, Chapman, Kettering, Smetak & Pikala, PA, appeared for Plaintiff Aviva Sports, Inc.

Stephan J. Nickels, Esq., Foley & Lardner, appeared for Defendant Wal-Mart Stores, Inc.

Brooke D. Anthony, Esq., Norman J. Baer, Esq., and Kristin B. Heebner, Esq., Anthony Ostlund Baer & Louwagie, PA, appeared for Defendant Manley Toys, Ltd.

---

On April 7, 2011, Aviva Sports, Inc. (Aviva) filed a motion for a permanent injunction, asking the Court to enjoin Defendant Manley Toys, Ltd. (Manley) from introducing or maintaining in the stream of commerce certain advertisements of Manley's inflatable waterslides and pools. Aviva bases its request for a permanent injunction on allegations that Manley's advertisements violate the Lanham Act and Minnesota's Uniform Deceptive Trade Practices Act (UDTPA). In brief, Aviva asserts that Manley altered images of its products to make them appear larger than they actually are. According to Aviva, Manley reduced the size of images of children relative to the size of its products and then inserted the scaled-down children into images of Manley's products as if the children were using the products.

The standards for issuing a preliminary or permanent injunction are the same except for one difference: a permanent injunction requires a showing of actual success on the merits, rather

1

than a showing of a likelihood of success on the merits as required for a preliminary injunction. *Oglala Sioux Tribe v. C & W Enters.*, 542 F.3d 224, 229 (8th Cir. 2008). "If a court finds actual success on the merits, it then considers . . . (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." *Id.*

Aviva has not shown actual success on the merits. No judgment has been entered in Aviva's favor, no trier of fact has found in Aviva's favor, and no motion for judgment on the pleadings or summary judgment has been granted in Aviva's favor. Citing *Frontier Traylor Shea, LLC v. Metropolitan Airports Commission*, 132 F. Supp. 2d 1193 (D. Minn. 2000), Aviva argues that this Court has considered a motion for a permanent injunction at a procedural posture similar to the one presented here. But *Frontier* is distinguishable because the parties stipulated to an accelerated schedule: "[Defendant] needs a decision on the request for injunctive relief prior to November 20, 2000. In light of this, the parties herein have agreed to an expedited briefing schedule, and the parties have further stipulated to the admissibility of certain facts and evidence. A hearing on Plaintiff's request for a permanent injunction has been set for November 3, 2000." Brief for Metropolitan Airports Commission in Opposition to Motion for Injunction at 11 n.1, *Frontier*, 132 F. Supp. 2d 1193 (Civ. No. 00-2196 ADM/SRN). Accordingly, *Frontier* does not stand for the general proposition that a motion for a permanent injunction is appropriate at this procedural stage. Further, the Court, in *Frontier*, found that there was no actual success on the merits; thus, Aviva cites no authority where a court granted a permanent injunction at this stage of litigation. The Court concludes that a permanent injunction is premature at this time and denies Aviva's motion for this reason.

Nevertheless, because the parties concentrated on the issue in their briefs and at oral argument, the Court will address whether Aviva is entitled to presumptions as to certain elements of its claims. In response to Manley's argument that the Court should treat Aviva's motion as one for summary judgment,[1] Aviva admits that summary judgment would be inappropriate "because the issue of Aviva being damaged is a fact issue not properly decided by summary judgment." (Reply 5) This open issue rules out a finding of actual success on the merits because, as discussed below, Aviva must prove injury or a likelihood of injury to establish actual success on the merits of its false advertising claim.

The Court first addresses Aviva's Lanham Act claim, which requires five elements:

> To establish a claim under the false or deceptive advertising prong of the Lanham Act, a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). The parties dispute whether proving a literally false statement relieves Aviva of the burden of proving the other four elements—in other words, Aviva suggests that, upon proving literal falsity, a plaintiff earns presumptions as to the other four elements. Even if the Court could make a finding of literal

---

[1] Because Aviva unequivocally states that it has not brought a motion for summary judgment and does not want its motion for a permanent injunction to be treated as one for summary judgment, the Court does not treat this motion as one for summary judgment. (The Court is simultaneously issuing a summary judgment order in this case, but that order addresses Wal-Mart's motion questioning Aviva's standing to sue it under the Lanham Act.)

falsity as a matter of law,[2] it is not persuaded that such a showing would entitle Aviva to all of the presumptions that Aviva claims apply. More specifically, the Court concludes that proving literal falsity does not relieve Aviva of its burden of showing injury or a likelihood of injury, and causation (the fifth element).[3]

Manley argues that a presumption of causation and injury[4] is only appropriate where the defendant has made misrepresentations comparing its product to one of the plaintiff's, i.e., comparative advertising cases. The Court agrees. The issue is dispositive here because, although Aviva does not concede comparative advertising, it presented no evidence or argument with this motion that Manley engaged in comparative advertising. In *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329 (8th Cir. 1997), the Eighth Circuit Court of Appeals discussed two presumptions in the context of a deliberate-deception false advertising Lanham Act claim: the presumption of injury and causation (the fifth element), and the presumption of deception (the second element). The presumption of deception was not appealed in *Porous*. *Id.* at 1333. The *Porous* court did, however, uphold the presumption of injury and causation under the circumstances of the case, namely, intentional deception and comparative advertising. The district court instructed the jury that the plaintiff had the burden of proof on all five elements of the false advertising claim but instructed the jury to "presume that [the plaintiff] suffered damages as a result of [deliberate] deception." *Id.* The district court also instructed the jury that,

---

[2]  Manley disputes several factual assertions made by Aviva that bear on the question of whether Manley's advertisements, taken in their full context, *see United Indus. Corp.*, 140 F.3d at 1180, present a literally false message.

[3]  The Court expresses no opinion regarding any presumptions that might apply to the other elements.

[4]  It is more precise to refer to this presumption as the presumption of injury, or a likelihood of injury, and causation. For brevity, the Court refers to it using the less precise, but more compact form.

regarding an award of damages, the plaintiff had the burden of proving actual damages and causation. The Eighth Circuit affirmed.

Citing a Ninth Circuit Court of Appeals case, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989), the *Porous* defendant argued that the instruction on presuming causation and injury was erroneous. The *Porous* court distinguished *Harper House* by pointing out that *Harper House* was not a comparative advertising case but *Porous* was. The *Porous* court cited with approval reasoning from *Harper House*:

> As Judge Goodwin points out, where a defendant is guilty of misrepresenting its own product without targeting any other specific product, it is erroneous to apply a rebuttable presumption of harm in favor of a competitor. . . . Thus, in cases where there is no comparative advertising involved, the plaintiff must shoulder the full burden of proof of both cause in fact and injury.

110 F.3d at 1334. The *Porous* court also cited with approval the reasoning of the Second Circuit Court of Appeals, which had held that, in injunction cases,[5] the presumption of injury and causation is only appropriate in the comparative advertisement context. In *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988), the Second Circuit reasoned that the presumption of injury and causation was inappropriate in injunction cases not involving comparative advertising.

> Both *Coca-Cola* and *Johnson & Johnson* involved misleading, non-comparative commercials which touted the benefits of the product advertised but made no direct reference to any competitor's product. The injury in such cases accrues equally to all competitors; none is more likely to suffer from the offending broadcasts than any other. The Lanham Act, however, only authorizes actions by one "who believes that he is or is likely to be damaged." 15 U.S.C. §

---

[5] *Porous* was a case involving money damages, whereas this motion only entails Aviva's request for injunctive relief. The logic upon which *Porous* based its holding, however, was that detailed in Second Circuit cases "where injunctive relief [was] sought under the Lanham Act." *Porous*, 110 F.3d at 1334. The *Porous* court found "that in comparative advertising cases where money damages are sought . . . the reasoning of the injunction cases set forth primarily in the Second Circuit cases is applicable." *Id.* at 1336. The Court therefore concludes that the reasoning is applicable here, where an injunction is sought.

> 1125(a). Thus, we required some indication of actual injury and causation to satisfy Lanham Act standing requirements and to ensure a plaintiff's injury was not speculative. *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d [186, 189 (2d Cir. 1980)].
>
> This case, by contrast, presents a false comparative advertising claim. Thus, the concerns voiced in *Coca-Cola* and *Johnson & Johnson* regarding speculative injury do not arise. A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer. By falsely implying that Advil is as safe as Tylenol in all respects, AHP deprived McNeil of a legitimate competitive advantage and reduced consumers' incentive to select Tylenol rather than Advil. This is analogous to a Lanham Act trademark dispute. An infringing mark, by its nature, detracts from the value of the mark with which it is confused. In that context, we recently confirmed that irreparable harm will be presumed.

848 F.2d at 38.

Following the Eighth Circuit's reasoning in *Porous* and the Second Circuit's decisions discussed in *Porous*, Aviva is not entitled to a presumption of injury and causation because there is no evidence of comparative advertising. Further support for this conclusion is provided by Article III of the U.S. Constitution, which makes injury in fact an essential component of a case or controversy. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). A presumption of injury and causation predicated on a mere showing of literal falsity, without a showing of competition or comparative advertising, cannot be squared with Article III because the presumption would allow a claim with no showing of injury in fact. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 581 (7th Cir. 2001). This is not true for comparative advertising cases, where "[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." *McNeilab*, 848 F.2d at 38. Literal falsity alone does not create a presumption of injury and causation, and the Lanham Act and the cases interpreting it "do not transgress Article III." *B. Sanfield*, 258 F.3d at 581.

Aviva argues that *Buetow v. A.L.S. Enterprises, Inc.*, 713 F. Supp. 2d 832 (D. Minn. 2010), *argued*, No. 10-2415 (8th Cir. Feb. 17, 2011), allowed a presumption of injury and causation in a non-comparative advertising case based on a finding of literal falsity.  The Court declines to rely on *Buetow*.  First, *Buetow* is currently under appeal, and one of the arguments involved with the appeal is whether the presumption of injury and causation was appropriate. Appellant's Opening Brief at 36, *Buetow v. A.L.S. Enters., Inc.*, No. 10-2415 (8th Cir. Aug. 16, 2010).  Second, *Buetow* involved consumer plaintiffs, rather than competitor plaintiffs.  The analysis behind requiring or not requiring comparative advertising discussed in *Porous* is inapplicable because comparative advertising allows an inference that a competitor plaintiff has been injured—it does not necessarily bear on whether a consumer plaintiff has been injured. Finally, *Buetow* relied on *Minnesota Life Insurance Co. v. AXA Investment Mgr.*, Civ. No. 03-4383, 2005 WL 1475336, at *7 (D. Minn. June 22, 2005), when it stated, "When an advertisement is literally false, the Court 'need not consider the remaining Lanham Act . . . elements in order to grant Plaintiffs injunctive relief.'"  *Minnesota Life*, in turn, cited *Ott v. Target Corp.*, 153 F. Supp. 2d 1055 (D. Minn. 2001), in support of the proposition that literal falsity relieves plaintiffs of their burden on the other Lanham Act elements.  As this Court has previously explained, however, *Ott* presented special circumstances:

> Although the Court applied a presumption of causation in [*Ott*], it did so because "Ott's complaint is not a generalized grievance about Target's promotions and advertising.  Rather, Ott claims that Target's advertising both directly and indirectly misled consumers to believe that [Defendant's] Liberty Landing dolls and the Dolls of All Nations were manufactured by Ott." [*Ott*, 153 F. Supp. 2d] at 1073.  As that court explained, the . . . *Ott* case was "not a typical false advertising case," in which a defendant falsely advertised characteristics of its products.  *Id.* at 1068.

*3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 972 (D. Minn. 2005).  Thus, *Ott* was analogous to a trademark infringement case, where injury may be inferred

7

from consumer confusion.[6]  The Court concludes that, even if literal falsity were conclusively shown, no presumption of injury and causation is appropriate here because there has been no showing of comparative advertising.

Without the presumption of injury and causation, the record does not contain sufficient evidence to find "actual success" on the issue of whether Aviva was injured or likely to be injured by Manley's allegedly false advertisements.  Aviva argues that it is likely to be injured by lost sales because "[i]t is just common sense that any consumer will buy what appears to be the same size product from one company for half the price of another company's similarly-sized product."  (Mem. in Support of Mot. 24)  In further support of this argument, Aviva produced images of a Manley pool and an Aviva pool.  The Aviva pool is roughly twice as expensive as the Manley pool, but the two pools appear to be the same size as judged by the children shown playing in them.  Aviva also cites the deposition testimony of its Federal Rule of Civil Procedure 30(b)(6) witness, who vaguely testified that a sale of a Manley product is a potential lost sale of an Aviva product:

> Q.  How does Wal-Mart's knowledge of any deceptive advertising cause Aviva to lose sales?
>
> . . .
>
> A.  Yeah.  It goes back to the first point.  When Wal-Mart is selling a product that is deceptively advertised, we have the potential of losing a sale when a customer buys that product from Wal-Mart, and then later finds out it's not what they expected but they've already bought it, they didn't buy an equivalent product from Aviva.  That is losing a sale.
>
> . . .

---

[6]  Aviva also relies on *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481 (D. Minn. 1996), which was cited in *Ott*.  But *LensCrafters* was a district court opinion that predated *Porous*.

> Q. When a Wal-Mart customer later finds out that the product was not what they expected it to be, do you have any reason to believe that the customer is unable to return the product to Wal-Mart?
>
> A. I have no idea.

(Garry Bowhall Dep. 119-20) Aviva's argument and evidence for injury or a likelihood of injury is basically an appeal to the Court's "common sense." Although this may be enough to allow a fact finder to conclude that there was injury or a likelihood of injury, it is not enough to allow the Court to conclude that Aviva has—at this point—obtained actual success on the issue of injury and causation.

Some courts have held that a likelihood of injury, and therefore statutory standing under the Lanham Act's requirement that a plaintiff be one "who believes that he is or is likely to be damaged," 15 U.S.C. § 1125(a), is demonstrated with a showing of literal falsity *and* a showing that the plaintiff competes with the defendant. One commentator has, however, noted a circuit split as to whether such a showing is sufficient to establish statutory standing. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.31 (4th ed. 2011). Assuming that Aviva could meet its standing burden by showing literal falsity and that it is Manley's competitor, the Court cannot conclude, based on the record before it, that Aviva actually succeeded in showing that it is Manley's competitor. Aside from the evidence described above, Aviva points to nothing to support its assertions that it competes with Manley. While such evidence may exist—and may even exist on this case's docket—the Court will not scour the record to provide support for Aviva's claim of actual success on the merits of its Lanham Act claim. Absent such a showing, Aviva's motion for a permanent injunction must fail.

Next, the Court turns to Aviva's UDTPA claim. The Lanham Act analysis discussed above applies to the UDTPA claim because the UDTPA's standing requirement is similar to the

Lanham Act's.  *See* Minn. Stat. § 325D.45 (2010) ("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.").  Further, the Minnesota Supreme Court has stated that federal courts should turn to Lanham Act jurisprudence for guidance in analyzing Minnesota consumer protection statutes.  *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 15 n.11 (Minn. 2001) (Minnesota's misrepresentation in sales statutes).  Accordingly, for the same reasons that Aviva has not shown actual success on its Lanham Act claim, it has not shown actual success on its UDTPA claim.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Aviva's Motion for Permanent Injunction [Docket No. 353] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 27, 2011

                                                s/ Joan N. Ericksen
                                                JOAN N. ERICKSEN
                                                United States District Judge