UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

     Plaintiff,

v.

Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

     Defendants.

Civil No. 09-1091 (JNE/JSM)
ORDER

     Plaintiff Aviva Sports, Inc. (Aviva) brought this action against Defendants Fingerhut Direct Marketing, Inc. (Fingerhut), Menard, Inc. (Menard), Kmart Corporation (Kmart), Wal-Mart Stores, Inc. (Wal-Mart), and Manley Toys, Ltd. (Manley), alleging patent infringement and false advertising in violation of the Federal Lanham Act, 15 U.S.C. § 1125(a) (2006), and the Minnesota Uniform Deceptive Trade Practices Act (UDTPA), Minn. Stat. § 325D.44 (2010).  In an Order dated June 27, 2011, this Court granted Wal-Mart's Motion for Partial Summary Judgment as to the Lanham Act claim (Count III of the Amended Complaint).  There are currently several motions before the Court, some of which have not yet been fully briefed or argued.  At this time, the Court only addresses Defendants Fingerhut, Menard, and Kmart's Motion for Summary Judgment as to Counts III and IV of the Amended Complaint, which allege violations of the Lanham Act and UDTPA.  Defendants argue that Aviva lacks standing to bring claims under either statute.  For the reasons stated below, the Court agrees and grants summary judgment to Defendants on Counts III and IV of the Amended Complaint.

1

# I.   BACKGROUND[1]

Aviva manufactures and sells, among other things, inflatable waterslides and pools. Manley also manufactures and sells inflatable waterslides and pools. Aviva's and Manley's products are both available through retailers including Fingerhut, Menard, and Kmart. Aviva claims that Manley's advertisements violate the false advertising provisions of the Federal Lanham Act and Minnesota UDTPA. According to Aviva, Manley superimposed scaled-down images of children onto images of its products to make the products appear larger than they actually are.

The defendant retailers sell the Aviva and Manley products to ultimate consumers through in-store sales, catalogs, and the internet. A very small percentage of Aviva's sales are to consumers directly through its website. Those undisputed percentages are, from 2001 through 2010, (1) 3.71% of Aviva's total sales were retail; (2) 0.13% of Aviva's total sales were retail sales of products at issue in this case; and (3) 0.73% of Aviva's sales of products at issue in this case were retail.

Defendants Fingerhut, Menard, and Kmart are not wholesalers of the products at issue. They sell Manley's and Aviva's products in their stores and on their websites. Aviva allows the consuming public to purchase slides and pools from its website, but points to no evidence that it attempts to compete at the retail, as opposed to the wholesale, level. It has not tried to improve its retail sales or take retail business away from retailers such as Fingerhut, Menard, and Kmart. Aviva again cites to the deposition testimony of its Federal Rule of Civil Procedure 30(b)(6) witness, Garry Bowhall, in which he testified that Aviva competes with some retailers and has suffered injury in the form of "lost opportunities" for sales.

---

[1] Unless otherwise stated, the facts described below are undisputed or are those that a reasonable fact-finder could find when viewing the record in the light most favorable to Aviva. For the most part, the facts are the same as those recited in this Court's June 27, 2011 Order granting Defendant Wal-Mart's Motion for Partial Summary Judgment.

## II.     DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.  Lanham Act

In Count III of its Amended Complaint, Aviva claims that Defendants violated the Lanham Act. Specifically, Aviva alleges that Defendants engaged in unfair competition by using advertisements and packaging that contain misleading representations and/or false descriptions of the products. Defendants assert that Aviva lacks standing to bring this claim.

This Court recently reviewed an identical claim by Aviva against Wal-Mart. In its June 27 Order, this Court thoroughly detailed the federal standing requirements under the Lanham Act. Again, but briefly this time: In federal court, standing involves both constitutional and prudential limitations. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). To establish constitutional standing under Article III of the United States Constitution, plaintiffs must show (1) that they have suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's conduct;

and (3) that a favorable decision will redress the injury.[2]  *Id.*  Prudential limits are concerned with the proper role of courts in a democratic society.  *Id.*  Generally, (1) litigants may not assert the rights of third parties; (2) courts should refrain from adjudicating matters of wide public significance which amount to generalized grievances; and (3) litigants must demonstrate that their asserted interests are arguably within the zone of interest intended to be protected by the statute, rule, or constitutional provision upon which the claim is based.  *Int'l Ass'n of Firefighters of Saint Louis v. City of Ferguson*, 283 F.3d 969, 973-74 (8th Cir. 2002).

Section 43(a) of the Lanham Act provides that "any person who believes that he or she is or is likely to be damaged" may bring a civil action.  15 U.S.C. § 1125(a)(1).  The Eighth Circuit Court of Appeals has stated that the prudential limitations on standing should apply to false advertising Lanham Act claims.  *Am. Ass'n. of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100, 1103-04 (8th Cir. 2006).  While the Eighth Circuit has not yet adopted a framework from which to determine standing, other circuits have articulated three approaches: (1) a categorical test, requiring that the plaintiff and the defendant be competitors; (2) a five-factor aggregate test, first recognized in *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998); and (3) a reasonable interest test.

This Court concluded that Aviva lacked standing against Wal-Mart under all three tests.  First, as a commercial wholesaler with evidence of only nominal direct consumer sales, no reasonable fact-finder could conclude that Aviva competes with Wal-Mart on the retail level.  Rather, Wal-Mart is actually Aviva's customer.  Thus, Aviva lacked standing under the categorical test.

---

[2] The Court has previously found that for purposes of summary judgment, Aviva met its burden of demonstrating constitutional standing against Wal-Mart.  With respect to the current motion, none of the parties have challenged Aviva's constitutional standing to bring claims against these Defendants.

Second, Aviva lacked standing under the five-factor test. This test considers: (1) the nature of the plaintiff's alleged injury—whether it is of a type that Congress sought to redress; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages. *Conte Bros.*, 165 F.3d at 233. The first factor weighed against prudential standing because Aviva alleged only injury to its commercial interest and not damage to its ability to compete, its reputation, or its good will. Congress sought to redress all these types of injuries. The second factor weighed against standing because Aviva's injuries were only indirectly related to Wal-Mart's alleged misconduct. The causal chain was too attenuated, because it was Manley's representations that caused the alleged injury—Wal-Mart merely passed the representations on to the ultimate consumer. The third factor weighed against standing because other retailers in competition with Wal-Mart would be more proximately injured by Wal-Mart's conduct. Those on the same level in the distribution chain would be more likely to vindicate the public interest. The fourth factor slightly supported Aviva's standing because its damages claim was not entirely speculative. Finally, the fifth factor weighed against Aviva because recognizing the right of every potentially injured party in the distribution chain to bring a claim would subject defendants to too great a risk of multiple liability and complex damages proceedings. It could also result in the flooding of federal courts with relatively insignificant cases.

Third, Aviva lacked standing under the reasonable interest test, under which a plaintiff has standing if he can demonstrate: (1) a reasonable interest to be protected against the alleged false advertising; and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 113

(2d Cir. 2010). If the plaintiff and defendant are not direct competitors, the plaintiff must make a "more substantial showing" of "injury and causation" to satisfy the reasonable basis prong of the standing requirement. *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994). For the reasons already discussed, Aviva lacked standing against Wal-Mart under this test.

Aviva concedes that the Court's previous analysis of standing under the Lanham Act with respect to Wal-Mart also applies to these three retail Defendants. Because there is no genuine dispute as to any material fact with respect to the Lanham Act claim, the Court grants Defendants' Motion for Summary Judgment as to Count III of the Amended Complaint.

## B. Minnesota UDTPA

In Count IV of its Amended Complaint, Aviva alleges that these Defendants violated the Minnesota UDTPA by using misleading visual images in their advertising and product packaging. Defendants argue that Aviva lacks standing to bring this claim. Under the UDTPA, "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, subdiv. 1. "In order to prevail in an action under [the UDTPA], a complainant need not prove competition between the parties or actual confusion or misunderstanding." § 325D.44, subdiv. 2. Section 325D.45 confers standing on any "person likely to be damaged by a deceptive trade practice of another . . . ." § 325D.45, subdiv. 1.

When interpreting any statute, courts begin with the plain language. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "[W]hen the statutory language is plain, we must enforce it according to its terms." *Id.* The UDTPA permits lawsuits only by "[a] person *likely to*

*be damaged*" by the defendant's conduct. § 325D.45, subdiv. 1 (emphasis added). If a party cannot show that it is likely to be injured in the future, it cannot obtain injunctive relief under the UDTPA. *See, e.g.*, *Buetow v. A.L.S. Enters., Inc.*, 713 F. Supp. 2d 832, 842-43 (D. Minn. 2010) (dismissing plaintiff's UDTPA because "there is no evidence indicating a risk of future harm to Plaintiffs"); *Summit Recovery LLC v. Credit Card Reseller LLC*, Civil No. 08-5273, 2010 WL 1427322, at *5 (D. Minn. Apr. 9, 2010) (explaining that plaintiff was not entitled to injunctive relief under the UDTPA because the statute "applies only to prospective damage" and plaintiff has not "provided evidence that it is likely to be damaged by a deceptive trade practice"); *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (granting summary judgment on plaintiff's UDTPA claim because "the evidence before the court does not indicate a likelihood of future harm"); *Lofquist v. Whitaker Buick-Jeep-Eagle, Inc.*, No. C5-01-767, 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001) (referring to "the statute's clear language requiring a likelihood of future damage").

Thus, a plaintiff has standing under the UDTPA if it is likely to be injured by the defendant's conduct. Aviva fails to meet this requirement. Aviva alleges that its injury is a "lost opportunity" for sales—i.e. that each sale of a Manley pool by the retailers is a "lost opportunity for Aviva to sell to that purchaser." Pl.'s Mem. Resp. Summ. J. Mot. 5-6. This is a competitive injury. Aviva argues that it need not be a competitor to have standing under the UDTPA. However, the cases Aviva relies upon are not cases in which a competitive injury was alleged. *See, e.g. The Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933 (D. Minn. 2009) (allowing a self-insured employer that paid its employees' medical expenses to bring claims against the manufacturer of recalled cardiac devices); *Kovatovich v. K-Mart Corp.*, 88 F. Supp. 2d 975 (D. Minn. 1999) (finding that a pharmacist had standing under the UDTPA to sue her former

employer for the continued use of her name on mail solicitations to customers after her termination).  Where plaintiffs have not alleged competitive injuries, direct competition is not a requirement for standing.  *See, e.g. United Healthcare Ins. Co., v. AdvancePCS*, No. Civ. 01-2320, 2002 WL 432068 (D. Minn. Mar. 18, 2002) (involving claims by non-competitors who alleged injury to their reputation and goodwill); *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490 (Minn. 1996) (recognizing that Blue Cross Blue Shield had standing to pursue its claim under section 325D.44 against tobacco companies for smoking-related injuries to its members).

Requiring competition where competitive injury is asserted comports with the plain language of section 325D.44.  The section, which sets forth the elements a plaintiff must prove to succeed on a claim under the UDTPA, states that a "complainant need not prove competition between the parties."  § 325D.44, subdiv. 2.  The quoted language, however, refers to only to the elements of the cause of action under section 325D.44.  Section 325D.45, not section 325D.44, sets forth the statutory requirements for standing.  Standing under the statute requires likelihood of damage—which may or may not require competition between the parties, depending on the type of damage alleged.

Furthermore, a review of the original Uniform Deceptive Trade Practices Act sheds light on the meaning of this statutory language.  Minnesota's UDTPA is an adoption of the Revised Uniform Deceptive Trade Practices Act, drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association.  The Minnesota legislature intended that it be "applied and construed as to effectuate its general purpose to make uniform the law . . . among those states which enact it."  Minn. Stat. § 325D.47.  Thus, it is appropriate to examine the original Uniform Act along with its prefatory notes and comments.

The authors of the Uniform Act commented that the subsection stating "a complainant need not prove competition between the parties or actual confusion or misunderstanding" was designed to "remove[] the enumerated factors as absolute bars to relief." Revised Unif. Deceptive Trade Practices Act § 2(b) cmt. at 15 (1966). The authors cited *Academy of Motion Picture Arts & Sciences v. Benson*, 15 Cal. 2d 685 (1940), in support of the principle that "actual competition between the parties is not a prerequisite of relief." *Academy of Motion Picture Arts & Sciences* involved what is now known as "false association." In that case, the defendant induced students to enroll in her acting school by making them believe her school was associated with the plaintiff's organization. The California trial court sustained the defendant's demurrer to the complaint without leave to amend. On appeal, the court acknowledged that the "businesses of the parties are not directly competitive, although both are connected with the motion picture industry." *Id.* at 688. It held that to plead a proper complaint for "the deceptive and injurious use of what may be designated as a trade name," it was not necessary that the parties be in direct competitive business. *Id.* at 690. It was sufficient that "the names, although not identical, are sufficiently similar to cause confusion and injury." *Id.* at 692.

The comment accompanying the Uniform Act illustrates that in certain contexts, a plaintiff does not have to prove actual competition as an element of the cause of action. This is especially true in the context of "passing off," "false association," or misuse of trade names or trademarks, where a non-competitor's business, reputation or good will can be injured. The comment does not support the conclusion that in the context of an alleged competitive injury, a complainant need not prove competition. Nor does the comment deal with the Act's requirements for standing.

Thus, because of the *type* of injury Aviva alleges—a competitive injury—Aviva only has standing under the UDTPA if it can show it competes with these retail Defendants. Aviva has not done so. The only evidence Aviva offers of competition is the deposition of Mr. Bowhall, in which he testified that Aviva competes with some retailers and has suffered injury in the form of "lost opportunities" for sales. This Court already held that Mr. Bowhall's testimony is conclusory and unsupported by facts. Aviva has made no attempt to provide any additional evidence to demonstrate that it competes, or even attempts to compete, with these retail Defendants.

Moreover, Minnesota courts have noted that the UDTPA generally mirrors the Federal Lanham Act and that claims under both statutes are analyzed in essentially the same way. *See Grp. Health Plan, Inc. v. Philip Morris Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999) ("Plaintiffs' claim for deceptive trade practices is governed by Minnesota Statute § 325D.44, which requires the same analysis as the federal Lanham Act."); *Med. Graphics Corp. v. Sensormedics Corp.*, 872 F. Supp. 643, 649 (D. Minn. 1994) ("Minnesota federal district courts have found that 'the Minnesota Deceptive Trade Practices Act mirrors the Lanham Act' and thus use the same analysis to evaluate false advertising claims that are made simultaneously under the federal and state statutes."); *Multi-Tech Sys., Inc. v. Hayes Microcomputer Prods., Inc.*, 800 F. Supp. 825, 847 (D. Minn. 1992) ("The Minnesota Deceptive Trade Practices Act covers false advertising and plaintiffs typically assert claims under that Act in conjunction with the Lanham Act, 15 U.S.C. § 1125(a). Thus, the Minnesota [DTPA] mirrors the Lanham Act."); *Scott v. Mego Int'l, Inc.*, 519 F. Supp. 1118, 1137 (D. Minn. 1981) (in the context of trademark infringement claims, "[t]he claim under the Minnesota [DTPA] is substantially the same as the federal claims").

The similarity between the statutory grants of authority to bring suit under the Lanham Act and the UDTPA reflect this "mirroring." The Lanham Act provides that "any person who believes that he or she is or is likely to be damaged" may bring a civil action. 15 U.S.C. § 1125(a)(1). The UDTPA permits lawsuits by "[a] person likely to be damaged by a deceptive trade practice of another." Minn. Stat. § 325D.45, subdiv. 1. This parallel language strongly suggests that the requirements for standing under the UDTPA are the same as those under the Lanham Act. In fact, when discussing the Uniform Act provision regarding standing, the National Conference of Commissioners on Uniform State Laws commented that "[s]imilar phraseology determines standing to sue under Section 43(a) of the Lanham Trademark Act." Revised Unif. Deceptive Trade Practices Act § 3 cmt. at 16 (1966). Thus, the drafters explicitly incorporated the Lanham Act's language regarding standing.

Aviva argues that analysis under the UDTPA cannot be the same as under the Lanham Act because the UDTPA specifically states that "a complainant need not prove competition between the parties." § 325D.44, subdiv. 2. In contrast, some circuit courts have held that a claimant *must* be a competitor in order to have standing under the Lanham Act.[3] *See, e.g.*, *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (holding that plaintiffs lacked standing under the Lanham Act's "false advertising" prong because they were not competitors and did not suffer competitive injuries); *Telecom Int'l Am.*,

---

[3] There might or might not be a conflict between the Uniform Act and the Lanham Act with regard to standing for ultimate consumers. *See, e.g.*, *Conte Bros.*, 165 F.3d at 229 (explaining that the Lanham Act's "focus . . . is on anti-competitive conduct in a commercial context" and that consumers "hav[e] no competitive or commercial interests affected by the conduct at issue"); *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993) (finding that a plaintiff has standing under Delaware's UDTPA only if there is some "horizontal business or trade interest at stake"). In Minnesota, there is a private attorney general statute. Minn. Stat. § 8.31, subdiv. 3a. This statute, however, does not apply to the UDTPA. *See State by Humphrey*, 551 N.W.2d at 496 (explaining that standing to bring suit under some consumer protection statutes is found in the private attorney general statute, but the UDTPA "contains its own legislative grant of standing and, thus, requires no reference to Minn. Stat. § 8.31"). In some instances, consumers have been allowed to sue under Minnesota's version of the UDTPA. *See id.* at 495 (allowing Blue Cross Blue Shield to bring a claim against tobacco companies for injuries to its members). However, this case does not involve a consumer plaintiff.

*Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) ("[T]o have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." (quoting *Stanfield v. Osborne, Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995))); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) ("A party bringing suit must assert 'a discernible competitive injury.'" (citation omitted)). Thus, Aviva argues, to require that a plaintiff be a competitor would contradict the plain language of the UDTPA.

Aviva's argument has merit to the extent that the "categorical test" for standing under the Lanham Act, which absolutely requires that the parties be direct competitors, is not applicable under the UDTPA. However, as this Court has already noted, Aviva is only required to be Defendants' competitor because of the specific type of injury Aviva alleges—a competitive injury. Additionally, Aviva cannot establish standing under either of the other two Lanham Act tests—the five-factor test from *Conte Bros.* or the reasonable interest test. Neither test makes the lack of direct competition an absolute bar to relief—it is only a factor to consider in the analysis. Application of these tests does not contradict the UDTPA's plain language. Just as the five-factor test and reasonable interest test resulted in Aviva having no standing against Wal-Mart, the same conclusion must be reached with respect to Fingerhut, Menard, and Kmart. Aviva agrees that these three Defendants are in no different position than Wal-Mart. Thus, Aviva lacks standing under either test to bring a claim against Fingerhut, Menard, or Kmart.

Aviva also argues that this Court should broadly construe the statute "to enhance consumer protection" and that "aggressive prosecution of deceptive trade practices is good for Minnesota consumers." While there is a "clear legislative policy encouraging aggressive prosecution of statutory violations," *State by Humphrey*, 551 N.W.2d at 495, "[a]ggressive

prosecution does not mean that we are permitted to misconstrue or expand those remedies provided by the legislature." *Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999). The statute explicitly provides a remedy only for those "likely to be damaged." Aviva does not meet this requirement.

After considering Minnesota courts' analysis of the UDTPA and the commentary accompanying the Uniform Act from which the UDTPA was derived, this Court concludes that Aviva lacks standing to bring this UDTPA claim against these Defendants. As previously stated, here and in the June 27 Order, Aviva has not pointed to any evidence that it competes in the retail market for the products at issue. Absent competition, Aviva is not likely to suffer a competitive injury. Therefore, there is no genuine issue as to any material fact. Defendants' Motion for Summary Judgment on Count IV of the Amended Complaint is granted.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 418] is GRANTED IN PART.

2. Summary judgment is granted in favor of Defendants Fingerhut, Menard, and Kmart and against Aviva as to Count Three, the Lanham Act claim, and Count Four, the Minnesota UDTPA claim, of the Amended Complaint.

Dated: September 23, 2011

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge