UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

    Plaintiff,

v.                                                                                                Civil No. 09-1091 (JNE/JSM)
                                                      ORDER
Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

    Defendants.

    Plaintiff Aviva Sports, Inc. (Aviva) brought this action against Defendants Fingerhut Direct Marketing, Inc. (Fingerhut), Menard, Inc. (Menard), Kmart Corporation (Kmart), Wal-Mart Stores, Inc. (Wal-Mart), and Manley Toys, Ltd. (Manley), alleging patent infringement and false advertising in violation of the Federal Lanham Act, 15 U.S.C. § 1125(a) (2006), and the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), Minn. Stat. § 325D.44 (2010). In Orders dated June 27, 2011 and September 23, 2011 this Court found that Aviva lacked standing to pursue its false advertising claims against retailer defendants Wal-Mart, Fingerhut, Menard, and Kmart and granted summary judgment on those claims in favor of the Defendants. Now before the Court is Manley's Motion for Summary Judgment on Plaintiff's Claim for False Advertising.

## I.    BACKGROUND[1]

    This is a case involving inflatable water slides and pools. Aviva manufactured and sold inflatable water slides and pools between 2001 and January 2012. Manley began selling inflatable water slides and pools in or around 2003. According to Aviva, advertisements and/or

---

[1] The factual background of this lawsuit has been discussed at length in previous orders and will not be described again in detail here.

1

packaging materials for many of Manley's products contain false or fraudulent representations. Specifically, Aviva argues that Manley superimposed scaled-down images of children onto images of its products to make the products appear larger than they actually are. Further, Manley supposedly uses larger, custom-made products for its photo shoots, rather than the actual products being advertised. As a result of this alleged manipulation, Aviva claims that Manley's advertisements violate the statutes' false advertising provisions and caused injury to Aviva.

The deadline for filing dispositive motions expired on October 1, 2011. On November 8, 2011, this Court granted summary judgment in favor of Manley as to Aviva's recovery of actual damages under the Lanham Act. Aviva was permitted, however, to move forward with its requests for injunctive relief and disgorgement of Manley's profits under the Lanham Act. In January 2012, Aviva sold its assets and discontinued its sale of inflatable water slides and pools. On April 23, 2012, Manley moved to amend the pretrial scheduling order on the grounds that Aviva's asset sale caused Aviva to lose standing to pursue its Lanham Act and MDTPA claims against Manley. After a hearing on the motion, the Honorable Janie S. Mayeron, United States Magistrate Judge, issued an order that stated that "the Court will amend the pretrial scheduling order to allow Manley to bring a summary judgment motion on the ground that the asset sale resulted in Aviva's loss of standing regarding its Lanham Act and MDTPA claims." Order dated May 9, 2012, at 4 [Docket No. 594]. On June 4, 2012, Manley brought the current summary judgment motion.

## II.   DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to

particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In Manley's brief, it asserts that it brought this motion "because there have been two important changes in the factual circumstances relevant to . . . Aviva's false advertising claim." Manley's Mem. Supp. Summ. J. 3. The first change is that Manley allegedly "no longer employs the particular advertising that Aviva contends was 'false.'" *Id.* For support, Manley cites the declaration of Samuel Wah, a Manley employee who declared that Manley "no longer employs any of the advertising at issue in this action." Wah Decl. ¶ 2. The second change that Manley highlights is Aviva's January 2012 sale of assets and cessation of business operations. Based on these two changed circumstances, Manley asserts that Aviva's claims for injunctive relief and disgorgement of profits are moot.

The Court rejects Manley's contention that Aviva's claims are moot because Manley no longer uses the advertising at issue in this litigation. First, this issue is not properly before the Court. Manley argued before the magistrate judge that it sought to amend the pretrial scheduling order based on the effect of Aviva's asset sale on its continued standing. The magistrate judge amended the pretrial scheduling order "to allow Manley to bring a summary judgment motion on the ground that the asset sale resulting in Aviva's loss of standing regarding its Lanham Act and MDTPA claims." At no time was Manley permitted to argue or submit evidence regarding

whether or not it continues to utilize the allegedly false advertising. Despite the very limited purpose for which Manley was permitted to file another motion for summary judgment, Manley's briefs focus heavily on its alleged discontinuation of the advertisements at issue. Further, "[t]he test for mootness is stringent." *Ctr. for Special Needs Trist Admin., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) (internal quotation marks omitted). "[T]he defendant faces a heavy burden of showing that 'the challenged conduct cannot reasonably be expected to start up again.'" *Id.* (quoting *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways." *Id.* (citation omitted). "Instead, a case becomes moot if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012)). Manley fails to meet this standard.

Manley next argues that because Aviva is no longer a business competitor, Aviva cannot show that it will suffer "a likelihood of injury" or that there is "causal nexus between that possible injury and Manley's false advertising." Manley asserts that Aviva's requests for injunctive relief and disgorgement of profits are now moot.[2] The Court, however, cannot reach the merits of the Manley's argument because of the inadequacy of the written submissions currently before the Court. Manley is attempting to argue that Aviva no longer has standing to pursue its false advertising claims under the Lanham Act and MDTPA—yet Manley does not provide one citation to either statute. This Court has articulated the tests for standing under these statutes on numerous occasions—including the orders dated June 27, 2011, September 23, 2011, and November 8, 2011. Yet Manley completely fails to address *any* of these tests in its briefs.

---

[2] Alternatively, Manley argues that Aviva is not entitled to any of Manley's profits from sales generated after the January 2012 asset sale.

4

Manley's argument appears to be that because Aviva is no longer a competitor, it lacks standing under the Lanham Act—but only one of the three tests for standing requires that the parties be competitors (the so-called "categorical test"). Despite acknowledging that this Court has "delineated and applied [the governing standards for standing under the Lanham Act] at length," Manley fails to address those standards or perform any legal analysis whatsoever. The only legal analysis contained in Manley's brief relates to its argument that it voluntarily ceased using the advertising at issue in this litigation—an argument that this Court finds inappropriate and meritless.[3]

To the extent that Manley argues that Aviva is not entitled to disgorgement of profits, this, again, is not an argument regarding *standing*—it is an argument that goes to the merits of Aviva's claim. "[T]he standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim." *Red River Freethinkers v. City of Fargo*, 10-3214, 2012 WL 1887061 (8th Cir. May 25, 2012). The Lanham Act "makes an award of the infringing party's profits subject only to the principles of equity." *Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 473 (8th Cir. 2011). "Disgorgement exists to deter would-be infringers and to safeguard against unjust enrichment." *Id.* Even where

---

[3] The Court observes, however, that the January 2012 asset sale casts serious doubt on Aviva's ability to prove the irreparable harm necessary to obtain injunctive relief. *See Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011) (stating that proof of "irreparable harm absent the injunction . . . is an essential and universal predicate to the grant of equitable relief"). Aviva's unsupported statements that it could re-enter the market (absent any evidence that Aviva intends to do so, or that Aviva even has the ability to do so after the asset sale) are likely insufficient to prove a likelihood of injury in the future or irreparable harm absent the injunction. But this is an issue separate from whether Aviva currently has standing to bring a claim under the Lanham Act.

injunctive relieve may be inappropriate, disgorgement of profits may nevertheless be warranted. *See, e.g.*, *id.* at 471 ("'[A]ll Lanham Act remedies are equitable in nature' and . . . '[t]here might be some situations in which a Lanham Act plaintiff would be entitled to monetary but not injunctive relief[.]'" (quoting *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir.1994))).  *See also BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1095-96 (7th Cir. 1994) (stating that "[a]lthough disgorgement of defendant's profits 'may overcompensate for a plaintiff's actual injury and create a windfall judgment at the plaintiff's expense,' the court may nevertheless 'consider the need to deter further violations to protect the public at large'" (citation omitted)).  Whether or not it would be equitable to award Aviva Manley's profits is a separate issue from whether Aviva has *standing* under the Lanham Act.  Because this is not an argument regarding standing, and because there has been absolutely no other legal analysis of Aviva's standing under the Lanham Act, the Court rejects Manley's arguments.

### III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Manley's Motion for Summary Judgment [Docket No. 624] is DENIED.

Dated:  August 6, 2012

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
