UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

      Plaintiff,

v.                                                                                               Civil No. 09-1091 (JNE/JSM)
                                                                                          ORDER
Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

      Defendants.

Plaintiff Aviva Sports, Inc. ("Aviva") brought this action against Defendants Fingerhut Direct Marketing, Inc. ("Fingerhut"), Menard, Inc. ("Menard"), Kmart Corporation ("Kmart"), Wal-Mart Stores, Inc. ("Wal-Mart"), and Manley Toys, Ltd. ("Manley"), asserting claims of patent infringement and false advertising. On June 4, 2012, Defendants Fingerhut, Kmart and Menard (collectively, "Retailer Defendants") filed a Motion for Summary Judgment of Patent Non-Infringement and/or Invalidity. The Court conducted a patent claim construction hearing on June 22, 2012 and issued a claim construction order on July 18, 2012. In light of the Court's claim construction order, the Court allowed the parties to supplement their briefs regarding the pending summary judgment motion. The parties submitted their supplemental briefs on August 10, 2012. For the reasons stated below, Retailer Defendants' motion is now granted in part and denied in part.

**I.    BACKGROUND**

The patent at issue in this litigation, U.S. Patent No. 6,558,264 (filed Nov. 3, 2001) ('264 Patent), is entitled "Inflatable Wedge for Diving onto a Water Slide." The invention disclosed in the '264 Patent is an inflatable water play structure that connects to the end of a garden hose. The body of the structure is generally wedge-shaped, to permit a user to slide from the top end to

1

the bottom end of the structure. The structure also includes a water emitting device, which discharges water so as to lubricate the sliding surface of the structure. Aviva alleges infringement of claims 14, 18, and 19 of the '264 Patent.[1] Claim 14 depends from claim 11, which recites:

> 11. A water play structure for connection to an end of a garden hose, comprising a cushioning slide having a wedge-shaped inflatable body with a bottom surface to rest on a support surface, a downwardly sloped upper surface along which a user can slide from a top end to a bottom end thereof, a plurality of generally vertically disposed baffles which interconnect the base to the upper surface to retain the inflatable body in a wedge shape, and a water emitting device connectable to the garden hose for discharging water at the top end of said upper surface to flow down to said bottom end of said upper surface to lubricate said upper surface during sliding of the user therealong.

Claim 14 recites:

> 14. The water play structure according to claim 11, wherein respective side baffles of the plurality of baffles, and respective sides of the inflatable body are slightly taller than a remaining plurality of said plurality of baffles, such that the upper surface comprises a pair of side rails with a sliding surface therebetween.

Claim 18 recites:

> 18. A ground supported water play structure for connection to an end of a garden hose, comprising a cushioning slide having a wedge-shaped inflatable body with a bottom surface to rest on a support surface comprising the ground, a downwardly sloped upper surface having a sliding portion along which a user can slide from a top end to a bottom end thereof, and a water emitting device connectable to the garden hose for discharging water at the top end of said upper surface to flow down to said bottom end of said upper surface to lubricate said upper surface during sliding of the user therealong, wherein the wedge-shaped inflatable body further has a plurality of substantially vertical walls comprising a front wall, a pair of laterally spaced side walls and a rear wall that connect the bottom surface and the upper surface together, wherein the rear wall is substantially taller than the front wall and each side wall has a wedge shape to

---

[1] Manley filed a reexamination request with the U.S. Patent and Trademark Office (USPTO) on February 19, 2010. During the reexamination process, Aviva cancelled claims 1-12 and 15-17. Claim 14, which depends from (cancelled) claim 11, was found patentable. It is unclear if claim 14 was ever rewritten in independent form. During the reexamination process, the USPTO also found new claims 18 and 19 to be patentable.

provide the wedge-shape of the inflatable body, wherein the rear wall when viewed in a rear elevational view of the wedge-shaped body has a sliding portion approach area thereon extending upwardly from the bottom surface to the top end of the upper surface and extending laterally from one side of the sliding portion of the upper surface to an opposite side of the sliding portion of the upper surface, wherein the inflatable body when inflated is free standing and self-supporting on the ground with the entirety of the sliding portion approach area of the rear wall being substantially completely exposed to a user, and wherein no portion of the water play structure is located behind the rear wall in a position that is within the sliding portion approach area of the rear wall such that a user who runs on the ground straight ahead towards the sliding portion approach area of the rear wall of the inflatable body has unimpeded access to the sliding portion approach area of the rear wall from the ground and is able to come up to the sliding portion approach area of the rear wall while running on the ground to transition directly from a running position on the ground immediately behind the sliding portion approach area of the rear wall to a sliding position atop the sliding portion of the upper surface without having to first step over or climb up any other portion of the water play structure.

Claim 19 recites:

> 19. The water play structure of claim 18, wherein the upper surface of the body includes a pair of raised side rails with the sliding portion of the upper surface being that portion of the upper surface disposed between the raised side rails.

In the claim construction order dated July 18, 2012, the Court declined to construe the claim terms "cushioning slide having a wedge-shaped inflatable body" and "wedge shaped inflatable body" to mean only a wedge small enough so that users could run up to it on the ground and jump, fall forward, or dive onto it. The Court also rejected Defendants' arguments that the claim terms "water emitting device connectable to the garden hose for discharging water at the top end of said upper surface" and "for discharging water at the top end of said upper surface" necessarily meant that water had to be discharged at the vertically highest point. Rather, the Court found that "[t]he water must be placed in such a position along the top end of the sliding surface as to sufficiently lubricate the sliding surface to permit a user to slide along it." The Court also declined to construe the claim terms "side baffles" and "respective sides."

The Court did, however, construe the claim term "vertically disposed baffles which interconnect the base to the upper surface to retain the inflatable body in a wedge shape," as recited in claim 11, to mean "vertically disposed baffles *entirely inside the inflatable body* that interconnect the base to the upper surface to retain the inflatable body in a wedge shape." The Court found that based on the claim language and prosecution history, the "baffles," including the raised "side baffles," must be distinct from and completely internal to the inflatable body.

Retailer Defendants now ask the Court to grant summary judgment in their favor on all of Aviva's patent infringement claims.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmoving party must substantiate its allegations by "sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotation marks omitted).

The determination of infringement requires two steps. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (internal quotation marks omitted). The Court has already construed the claims in the '264 Patent. "To establish infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). The patentee bears the burden of proving infringement by a preponderance of the evidence." *Id.* "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) (internal quotation marks omitted). "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Absolute Software*, 659 F.3d at 1139 (internal quotation marks omitted). "An element of an accused product is equivalent to a claim limitation if the differences between the two are insubstantial, a question that turns on whether the element of the accused product 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* at 1139-40 (citation omitted). "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Id.* at 1129-30.

**A. Claim 14 of the '264 Patent**

To prove that Retailer Defendants' products infringe claim 14 of the '264 Patent, Aviva must produce evidence that the allegedly infringing products include, among other things, "side baffles of the plurality of baffles, and respective sides of the inflatable body, that are slightly

taller than a remaining plurality of said plurality of baffles, such that the upper surface comprises a pair of side rails with a sliding surface therebetween."

Retailer Defendants first argue that the products they sell do not include slightly taller "side baffles" as required by claim 14 of the '264 Patent, but instead utilize separate "add-on" tubes that are attached to the water slide during the last stage of manufacturing. During the reexamination process, Aviva clearly disclaimed any structure that utilized such add-on tubes. Retailer Defendants cite to the declaration of Samuel Wah, an employee of Manley who asserts that Manley manufactures the wedge portion of the slides first, and then attaches "add-on" tubes to form the side rails at the last stage of manufacturing. Wah also provides diagrams that purport to illustrate Manley's manufacturing process (although it is not clear to which, if any, of the accused products the illustrations apply). Aviva, in response, provided photographs of, as well as an opportunity for the Court to inspect, one of the allegedly infringing products. Aviva notes that an examination of the product itself reveals that the product could not have been manufactured in the manner Wah described. Specifically, the side wall of the product extends all the way from the bottom of the wedge to the top of the side rail. Aviva argues that if the product used tubes that were added on at the last stage of production, as Retailer Defendants claim, then "[t]he side wall would stop and on top of that a separate and independent add-on tube would be attached." Aviva's Mem. Opp. 17. Aviva also notes that the air chambers formed by the side walls and those formed by the side rails are continuous, indicating that the side rails are not simply tubes that were added onto the wedge at the last stage of production. The Court finds that

6

there is a genuine issue of fact regarding whether or not the allegedly infringing products utilize tubes that were added on to the wedge at the last stage of production.[2]

Even though there is a genuine issue of fact regarding Manley's manufacturing process, Aviva must still produce evidence that the accused products contain each element of claim 14 of the '264 Patent.[3] *See Laitram*, 939 F.2d at 1535. There is no literal infringement if even one limitation is absent. *See Elkay*, 192 F.3d at 980. As previously construed by the Court, the baffles must be "vertically disposed baffles entirely inside the inflatable body that interconnect the base to the upper surface to retain the inflatable body in a wedge shape." Thus, to literally infringe claim 14, the side baffles in the accused products must be: (a) entirely inside the inflatable body, and (2) slightly taller than the non-side baffles.

Retailer Defendants assert that the side rails of the accused products are formed by material that is *external* to the inflatable body—not by an entirely internal "side baffle" as required by claim 14. Aviva has produced absolutely no evidence to demonstrate that a genuine factual dispute exists with respect to this claim element. Aviva argues that whether or not there are "slightly taller" side baffles is a jury question, but points to no structure in any of the accused products that might possibly meet the required elements for a side baffle—i.e., a structure that is entirely inside the inflatable body *and* slightly taller than the non-side baffles. When directly asked during oral argument whether the side baffles of the accused products are taller than the non-side baffles, Aviva responded that it did not know and had never measured the side baffles.

---

[2] Despite Aviva's lengthy attacks on Wah's—and Manley's—credibility, the Court at this time offers no opinion on that issue.

[3] Aviva repeatedly asserts that Retailer Defendants failed to show that their products do not infringe the '264 Patent. Aviva appears to misplace the burden of proof. Retailer Defendants do not have the burden of proving noninfringement—rather, Aviva must offer evidence that Retailer Defendants' products *do* infringe the '264 Patent.

Further, Aviva asserts in its supplemental brief that "[t]he side rail of the Manley-accused product . . . is part of the overall inflatable body. . . . A cut in the side wall of the side rails or a cut in the upper surface of the side rails of the Manley product would result in deflation of the body." Aviva's Supplemental Mem. 8. In its claim construction order, the Court—relying on the claim language and file history of the '264 Patent—explained that the "baffles" of the '264 Patent, including the raised "side baffles," must be distinct from and completely internal to the inflatable body. The Court explained that the "inflatable body" is "comprised of surfaces that maintain its inflatable integrity—i.e., surfaces that if cut or punctured, would result in deflation of the body." In contrast, the "baffles" do not perform the function of containing air within the body, but instead give the body shape. Thus, it appears that Aviva is conceding that the side rail of the accused products is *not* formed by a "baffle," but rather is part of the inflatable body itself.

At this point in the litigation, it is Aviva's responsibility to come forward with evidence to support its claims of patent infringement: Aviva must produce at least *some* evidence that the side rails of the allegedly infringing products are formed by slightly taller, internal baffles. Aviva has failed to do this, and so it has not shown that there is any genuine dispute of material fact regarding literal infringement of claim 14 of the '264 Patent.

In Aviva's supplemental brief, Aviva argues in a conclusory fashion that "[t]he jury should further be given the opportunity to determine whether the Manley-accused products sold by the Retail Defendants infringe under the doctrine of equivalents." Aviva's Supplemental Mem. 9. To prove infringement under the doctrine of equivalents, Aviva must show that the differences between a claim limitation of the patented invention and an element of the accused product are "insubstantial," meaning that "the element of the accused product 'performs substantially the same function in substantially the same way to obtain the same result' as the

8

claim limitation." *Absolute Software*, 659 F.3d at 1139-40 (citation omitted). "[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

Aviva offers no evidence, or even any arguments, regarding how the side rails of the accused products are equivalent to the side rails of the patented invention. Aviva makes no mention of the functions required by the limitation in claim 14 (requiring side rails formed by taller side baffles), what element of the accused products performs those functions, or in what way it performs those functions. Although the accused products and the patented invention both include raised side rails that prevent a user from falling laterally off the side of the slide, more is required to find equivalence. Claim 14 requires "side baffles" that serve *two* functions, only one of which is to form a pair of side rails with a sliding surface in between them. The other function is that, just like all the other baffles in the baffle array, the side baffles perform the structural role of retaining the inflatable body in a wedge shape. Aviva provides no evidence or argument that an element of the accused products performs "substantially the same function in substantially the same way to obtain the same result as the claim limitation."

Below is the Court-generated diagram used during claim construction:



During claim construction, Aviva argued that segment "D" (comprised of external segment "B" and internal segment "C") was a baffle. The Court rejected that argument, finding that a "baffle" as recited in the '264 Patent had to perform the function of retaining the wedge-shape of the inflatable body, or preventing the body from "ballooning up in the middle when inflated." Because the partially-external structure did not perform that functional requirement, the Court found that only segment "C" was a "baffle." Segment "B" was held to be an exterior surface that contains air (i.e., part of the inflatable body itself), but did not retain the shape of the body.[4] The Court continues to find that the side rails of the accused products—formed in part by external segment "B"—do not perform the functional requirement of retaining the wedge-shape of the inflatable body. Thus, these side rails do not perform "substantially the same function in substantially the same way to obtain the same result." Aviva has pointed to no element of the accused products that performs both required functions, as required to find infringement under the doctrine of equivalents.

Aviva appears to be applying the doctrine of equivalents to the invention as a whole—essentially arguing that the accused structures with raised side rails generally are equivalent to the patented structures with raised side rails. But the doctrine must be applied to individual claim elements, and "is not allowed such broad play as to effectively eliminate [a claim element] in its entirety." *Warner-Jenkinson Co.*, 520 U.S. at 29. Aviva's vague argument that the side rails of the accused products—which are not formed by slightly taller, internal baffles—are equivalent to the side rails of the patented invention wipes away claim 14's requirement that the structure have side rails that are formed by "side baffles" that "are slightly taller than a remaining

---

[4] The Court also relied on the file history in explaining that segment "B" is a portion of the upper surface of the inflatable body, rather than a "baffle." Further, even if the partially-external structure *could* be considered a "baffle," the patentee explicitly disclaimed that sort of structure.

plurality of said plurality of baffles." '264 Patent, claim 14. "[A]n element of an accused product . . . is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

Even if Aviva had presented evidence to support its claim of equivalence, prosecution history estoppel would operate to prevent application of the doctrine in this case. "Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel." *Elkay*, 192 F.3d at 981. "Prosecution history estoppel prevents operation of the doctrine of equivalents from expanding a claim limitation to include subject matter surrendered during the patent's prosecution." *Id.*; *see also Duramed Pharm., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) ("[T]he doctrine of prosecution history estoppel prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent."). Whether prosecution history estoppel applies is a question of law. *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010).

As discussed in detail in the Court's previous claim construction order, during reexamination the patentee distinguished the invention disclosed in the '264 Patent from the prior art by specifically disclaiming structures in which the side rails were not formed from internal raised baffles. *See, e.g.*, Nickels Decl. Ex. C (ECF No. 600-1), at 10 (explaining that the prior art did not "actually teach using baffles of different heights to form raised sides on an inflatable structure," but instead kept the baffles "all the same height"); *Id.* at 12 (stating that the

prior art "ke[pt] all the baffles . . . the same height," thus "teach[ing] away from the invention of claim 14").[5]

As the Federal Circuit Court of Appeals stated in *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997),

> The claim at issue defines a relatively simple structural device. A skilled patent drafter would foresee the limiting potential of the [claim] limitation. No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim.

The file history of the '264 Patent reflects a manifest intent to claim a structure with side rails formed by raised side baffles, rather than a structure with raised side rails formed by some other means. Aviva cannot now recapture through the doctrine of equivalents subject matter that was explicitly disclaimed to acquire the '264 Patent.

---

[5] In distinguishing the invention of the '264 Patent from the prior art, the patentee explained that the prior art used "add on tubes" to create raised side rails, rather than raised side baffles. These disclaimed "add on tubes," however, were not necessarily separate tubes that were later attached to the main body. For example, the patentee described the Healy prior art reference (shown below), which taught an elongated water slide that was created by overlying two sheets of plastic material and then heat sealing the two sheets together to form the tubes. *See* Nickels Decl. Ex. F (ECF No. 600-1), at 15.



U.S. Patent No. 6,312,341 fig.2
(filed Mar. 15, 2000).

The two outermost tubes, which were larger in diameter, were created by increasing the distance between the heat seals that formed those tubes—not by adding two larger-diameter tubes later in the production process. The patentee nevertheless characterized these two larger-diameter tubes in the Healy reference as "add on tubes," and explained that the Healy reference taught away the invention in claim 14 because it did not use "baffles of different heights to form raised sides." *Id.* Ex. C, at 10. Thus, the patentee disclaimed more than simply structures in which separate tubes were later added onto the main body—the patentee also disclaimed any structure in which the side rails were not formed by taller side baffles.

In sum, Aviva has offered no evidence to demonstrate the existence of a genuine issue of material fact regarding its claims that Retailer Defendants' products infringed claim 14 of the '264 Patent, either literally or under the doctrine of equivalents. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment in favor of Retailer Defendants as to non-infringement of claim 14 of the '264 Patent is appropriate.

**B. Claims 18 and 19 of the '264 Patent**

Claims 18 and 19 recite a structure with, among other things, "a cushioning slide having a wedge-shaped inflatable body" and "a water emitting device connectable to the garden hose for discharging water at the top end of said upper surface." Retailer Defendants assert that the products they sell are not "cushioning," as required by claims 18 and 19 of the '264 Patent, because the products are too large for a user to run up to and jump and/or dive upon. They also contend that their products are not "wedge-shaped." Finally, Retailer Defendants argue that claims 18 and 19 of the '264 Patent require that the *entire* wedge be lubricated water (i.e., that water must be discharged at the vertically highest point of the sliding surface), and that their products do not infringe the '264 Patent because they lack this element.[6]

Based on this Court's construction of these claim terms, Retailer Defendants' arguments are rejected. As stated above, the Court declined to construe the claim terms "cushioning slide having a wedge-shaped inflatable body" and "wedge shaped inflatable body" to mean only

---

[6] Retailer Defendants did not further address these arguments in their post-claim construction supplemental brief. At the hearing on the summary judgment motion, they appeared to acknowledge that after this Court's construction of the above claim terms, these arguments lack merit. The Court will nevertheless briefly address these arguments.

wedges small enough so that users could run up to it on the ground and jump, fall forward, or dive onto it. The Court also refused to define "wedge" as being a precise planar shape with no curvature, especially given that the patented invention involves a soft, inflatable structure, which by its nature will have some curvature. With their summary judgment motion, Retailer Defendants submitted photographs of some of the accused products, asserting that these products are not "wedge-shaped." As the moving party, Retailer Defendants have the burden of showing that a genuine dispute of material fact does not exist. If the movant's papers themselves demonstrate the existence of a genuine dispute of material fact, then the movant has not met its burden. *See Wright & Miller*, 10A Fed. Prac. & Proc. Civ. § 2727 (3d ed.); *see also Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 393 (8th Cir. 1986) ("When conflicting inferences can be drawn from the facts, summary judgment is inappropriate." (quoting *Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir. 1983))). Retailer Defendants' papers demonstrate the existence of a disputed material fact—the images they provided reveal products that a jury *may* consider to be wedge-shaped. Thus, Retailer Defendants fail to demonstrate that no genuine issue of fact remains regarding the shape of the accused products.

The Court also rejected Defendants' arguments that the claim terms "water emitting device connectable to the garden hose for discharging water at the top end of said upper surface" and "for discharging water at the top end of said upper surface" necessarily meant that water had to be discharged at the vertically highest point. Rather, the Court found that "[t]he water must be placed in such a position along the top end of the sliding surface as to sufficiently lubricate the sliding surface to permit a user to slide along it." Here, again, Retailer Defendants fail to demonstrate that no genuine issue of fact remains. They argue that their products do not discharge water at the top of the slide, but they also contend that if the water is not discharged at

14

the top of the slide, "the result would be the Slip 'N Slide® version of 'rug burn.'" Defs.' Mem. Supp. 6. Thus, they seem to be arguing that consumers cannot use the very products that Retailer Defendants sell—either the slide is sufficiently lubricated and users can slide down it, or the slide is not sufficiently lubricated and users will get "rug burn" and will be unable to slide down the sliding surface. The photographs contained within Retailer Defendants' papers reveal children sliding down an apparently lubricated slide. The children in the photographs do not appear to be suffering from "rug burn." A jury could, based upon the photographs, find that water is discharged "at the top end of said upper surface to flow down to said bottom end of said upper surface to lubricate said upper surface."[7] Summary judgment under these circumstances would be inappropriate.

Because Retailer Defendants have failed to show that no genuine issue of material fact remains with respect to infringement of claims 18 and 19 of the '264 Patent, their motion for summary judgment on these patent claims is denied.[8]

---

[7] Further, the photographs do not foreclose the possibility that *some* of the water may, in fact, contact the very top end of the slide. For example, the photographs are not of sufficient resolution or quality to show where every single drop of water contacts the slide. Also, if one were to reduce the water pressure through the garden hose that is connected to the slide, it may very well be possible that what appears to be a forceful spray of water that contacts the sliding surface "well below the 'top' of the sliding surface" would actually be a trickle of water that would contact the very topmost portion of the sliding surface.

[8] Retailer Defendants state that they have not sold the allegedly infringing products after November 15, 2011, the date that claims 18 and 19 issued. But they cite to nothing in the record to support this assertion. The Wah Declaration, not cited by Retailer Defendants, includes a statement that that "[a]fter early-2011 . . . Manley has not shipped any of these particular accused infringing products listed and depicted . . . to any of the three defendants Fingerhut, Kmart, or Menard." Wah Decl. ¶ 4. This statement, however, does not foreclose the possibility that Retailer Defendants had remaining stock of these products and continued to sell the products to consumers after November 15, 2011. Thus, Retailer Defendants have not met their burden of showing the absence of a genuine issue of material fact. Even if they did meet their initial burden, Aviva submitted evidence that at least one of the Retailer Defendants—Kmart— continues to offer for sale one of the products that Aviva alleges infringes claims 18 and/or 19.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS

ORDERED THAT:

1. Retailer Defendants' Motion for Summary Judgment of Patent Non-Infringement and/or Invalidity [Docket No. 616] is GRANTED IN PART and DENIED IN PART.

2. Summary judgment is GRANTED in favor of Retailer Defendants on Aviva's claims of infringement of claim 14 of the '264 Patent.

3. Summary judgment is DENIED on Aviva's claims of infringement of claims 18 and 19 of the '264 Patent.

Dated: November 7, 2012

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

Kmart contends that Aviva's evidence is the result of a "clerical mis-labeling." There is nevertheless a genuine dispute of material fact regarding the Retailer Defendants' sale of the allegedly infringing products after November 15, 2011.