UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

       Plaintiff,

v.                                                              Civil No. 09-1091 (JNE/JSM)
                                                                ORDER
Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

       Defendants.

       Plaintiff Aviva Sports, Inc. ("Aviva") brought this action against Defendants Fingerhut

Direct Marketing, Inc. ("Fingerhut"), Menard, Inc. ("Menard"), Kmart Corporation ("Kmart"),

Wal-Mart Stores, Inc. ("Wal-Mart"), and Manley Toys, Ltd. ("Manley"), asserting claims of

patent infringement and false advertising.  The Court conducted a claim construction hearing on

June 22, 2012 and issued a claim construction order on July 18, 2012.  Now before the Court is

Defendant Wal-Mart's Motion for Partial Summary Judgment.  For the reasons stated below,

Wal-Mart's motion is granted.

## I.      BACKGROUND

       The patent at issue in this litigation, U.S. Patent No. 6,558,264 (filed Nov. 3, 2001) ('264

Patent), is entitled "Inflatable Wedge for Diving onto a Water Slide."  The invention disclosed in

the '264 Patent is an inflatable water play structure that connects to the end of a garden hose.

The body of the structure is generally wedge-shaped, to permit a user to slide from the top end to

the bottom end of the structure.  The structure also includes a water emitting device, which

discharges water so as to lubricate the sliding surface of the structure.  Aviva alleges, among

other things, infringement of claim 14 of the '264 Patent.[1]  Claim 14 depends from claim 11,

which recites:

> 11. A water play structure for connection to an end of a garden hose, comprising a cushioning slide having a wedge-shaped inflatable body with a bottom surface to rest on a support surface, a downwardly sloped upper surface along which a user can slide from a top end to a bottom end thereof, a plurality of generally vertically disposed baffles which interconnect the base to the upper surface to retain the inflatable body in a wedge shape, and a water emitting device connectable to the garden hose for discharging water at the top end of said upper surface to flow down to said bottom end of said upper surface to lubricate said upper surface during sliding of the user therealong.

Claim 14 recites:

> 14. The water play structure according to claim 11, wherein respective side baffles of the plurality of baffles, and respective sides of the inflatable body are slightly taller than a remaining plurality of said plurality of baffles, such that the upper surface comprises a pair of side rails with a sliding surface therebetween.

In the claim construction order dated July 18, 2012, the Court construed the claim term

"vertically disposed baffles which interconnect the base to the upper surface to retain the

inflatable body in a wedge shape," as recited in claim 11, to mean "vertically disposed baffles

*entirely inside the inflatable body* that interconnect the base to the upper surface to retain the

inflatable body in a wedge shape."  The Court found that based on the claim language and

---

[1]      Manley filed a reexamination request with the U.S. Patent and Trademark Office (USPTO) on February 19, 2010.  During the reexamination process, Aviva cancelled claims 1-12 and 15-17.  Claim 14, which depends from (cancelled) claim 11, was found patentable.  In an appeal brief to the USPTO, the patent owner wrote claim 14 in independent form, incorporating into it the limitations of claim 11.  *See* ECF Docket No. 619, Ex. 11, at 3, 18.  The file history, however, does not reveal any amendment in which claim 14 was rewritten in independent form. This appears to be permissible.  *See* 2 U.S. Dep't of Commerce, U.S. Patent & Trademark Office, *Manual of Patent Examining Procedure* §§ 2260.01, 2660.03 (8th rev. ed. 2012) (stating that when an unamended base patent claim is cancelled, dependent claims do not have to be rewritten in independent form and that "the content of the canceled base claim would remain in the printed patent and would be available to be read as a part of the dependent claim").

prosecution history, the "baffles," including the raised "side baffles," must be distinct from and completely internal to the inflatable body.

Wal-Mart now asks the Court to find that there is no infringement of claim 14 of the '264 Patent, or in the alternative, that claim 14 is invalid.

## II.   DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmoving party must substantiate its allegations by "sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotation marks omitted).

The determination of infringement requires two steps. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (internal quotation marks omitted). The Court has already construed the claims in the '264 Patent. "To establish infringement, every limitation set forth in

a patent claim must be found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  The patentee bears the burden of proving infringement by a preponderance of the evidence."  *Id.*  "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) (internal quotation marks omitted).  "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Absolute Software*, 659 F.3d at 1139 (internal quotation marks omitted).  "An element of an accused product is equivalent to a claim limitation if the differences between the two are insubstantial, a question that turns on whether the element of the accused product 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* at 1139-40 (citation omitted).  "[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Id.* at 1129-30.

To prove that Wal-Mart's products infringe claim 14 of the '264 Patent, Aviva must produce evidence that the allegedly infringing products include, among other things, "side baffles of the plurality of baffles, and respective sides of the inflatable body, that are slightly taller than a remaining plurality of said plurality of baffles, such that the upper surface comprises a pair of side rails with a sliding surface therebetween."  In its claim construction order, the Court stated that the "baffles" must be entirely inside the inflatable body.  Aviva concedes that there is no literal infringement of claim 14 because the accused products do not include slightly

taller side baffles, as the Court has construed that term.  Aviva contends, however, that there is

infringement under the doctrine of equivalents.  Aviva must therefore show that some element of

the accused products "performs substantially the same function in substantially the same way to

obtain the same result" as the slightly taller, entirely internal baffle limitation of claim 14.

Aviva's entire argument appears to be based on its interpretation of Figure 1 of the '264

Patent, reproduced below.



*The '264 Patent's Figure 1*
*(modified by the Court)*

Aviva uses this figure to demonstrate where it believes the taller, internal side baffles

attach to the upper surface of the slide (represented by the bolded line above, added by the

Court).  Aviva asserts that the side baffles are taller than the middle baffles only at the back wall

of the wedge, and that they "taper down do a height equal to the middle baffles."  Pl.'s Mem.

Opp. 4.  Aviva's argument is not supported by the patent figures, nor is it supported by the claim

language.

In the figures of the '264 Patent, the "side baffles" are represented by the structures

labeled 44 and 47 (the structures labeled 50, 53, and 56 represent the "middle baffles").  Figure 1

does not purport to depict the side baffles.  Aviva's reliance on this figure is therefore misplaced.
Figure 2 of the '264 Patent, in contrast, *does* depict the side baffles.



*The '264 Patent's Figure 2*
*(modified by the Court)*

Figure 2 of the '264 Patent shows that the side baffles 44 and 47 are internal structures
that connect the base of the wedge to the upper surface of the raised side rails.  The bold lines,
added by the Court, represent where one of the side baffles attaches to the upper surface to form
the raised side rails.  It is apparent that the side baffles are taller than the middle baffles for the
entire length of the side rails—not just at the back wall.  At no point do the side baffles "taper
down do a height equal to the middle baffles."

Not only is Aviva's argument inconsistent with the figures in the '264 Patent, but it is
also unsupported by the claim language itself.  Claim 14 requires that the side baffles be taller
than the middle baffles "such that the upper surface comprises a pair of side rails with a sliding
surface therebetween."  '264 Patent, claim 14.  The claim is clear: the taller side baffles form the
raised side rails.  According to Aviva's interpretation of Figure 1, however, the side baffles only
attach to the side rail at the back wall of the wedge.  Aviva thus appears to be asserting that the

'264 Patent discloses a structure in which the side rails are actually formed by something *other* than taller side baffles. This assertion is wholly at odds with the claim language.

Aviva asserts that Wal-Mart's accused products contain elements equivalent to the "side baffles" of claim 14. Aviva's argument, however, is based on its erroneous understanding of where the "side baffles," as disclosed in the '264 Patent, are located and what functions they serve. First, by misunderstanding the location at which the side baffles attach to the upper surface of the wedge, Aviva incorrectly identifies the element that it contends is being "insubstantially changed by the accused product." Pl.'s Mem. Opp. 6. Aviva believes that the element to be analyzed under the doctrine of equivalents is only that portion of the side rail that is closest to the back wall of the wedge—i.e., the only portion that Aviva believes contains side baffles that are taller than the middle baffles. As previously explained, however, the *entire* side rail is formed by taller side baffles, not just the backmost portion.

Further, to prove infringement under the doctrine of equivalents, Aviva must show that some element of the accused products "'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Absolute Software*, 659 F.3d at 1139-40 (citation omitted). This is known as the "function-way-result" test. Claim 14 requires "slightly taller" side baffles that serve *two* functions. One function is that the side baffles form a pair of side rails with a sliding surface in between them. This is to prevent users from accidentally falling laterally off the side of the wedge. Aviva contends that both the invention disclosed in the '264 Patent and Wal-Mart's accused products perform this function in the same way—through the use of side rails—and that they achieve the same results. Following Aviva's argument to its logical conclusion, *any* inflatable wedge that includes side rails that prevent users from falling off the wedge, regardless of how those rails are formed, would infringe the '264

Patent under the doctrine of equivalents.  Claim 14 does not claim a wedge with side rails formed by any means.  It explicitly requires that the "side baffles of the plurality of baffles, and respective sides of the inflatable body are slightly taller than a remaining plurality of said plurality of baffles."  Aviva's argument reads out this claim limitation in its entirety.  "[A]n element of an accused product . . . is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation."  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

The second function of the "side baffles" is that, just like all the other baffles in the baffle array, the side baffles perform the structural role of retaining the inflatable body in a wedge shape.  They "connect two spaced sheets of material together" to prevent the body from "ballooning up in the middle when inflated."  Claim Construction Order 17, ECF No. 664. Aviva entirely neglects this function in its equivalence analysis.

Claim 14 of the '264 Patent, as construed, requires side walls and internal side baffles that are slightly taller than the middle baffles, such that the taller side baffles and side walls form raised side rails.  Aviva's argument would vitiate the "slightly taller" side baffles element of claim 14.  "[T]he doctrine of equivalents is not a license to ignore or 'erase . . . structural and functional limitations of the claim,' limitations 'on which the public is entitled to rely in avoiding infringement.'"  *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) (quoting *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987)).  Aviva's attempt to use the doctrine of equivalents as a back door to recapture claim scope lost during claim construction is precluded.  *See Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1315 (Fed. Cir. 2008) ("[Plaintiff is precluded from asserting that

those systems infringe under the doctrine of equivalents, as doing so would vitiate an element of the claims . . . as construed.").

Moreover, even if Aviva had presented evidence to support its claim of equivalence, prosecution history estoppel would operate to prevent application of the doctrine in this case. "Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel." *Elkay*, 192 F.3d at 981. "Prosecution history estoppel prevents operation of the doctrine of equivalents from expanding a claim limitation to include subject matter surrendered during the patent's prosecution." *Id.*; *see also Duramed Pharm., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) ("[T]he doctrine of prosecution history estoppel prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent."). Whether prosecution history estoppel applies is a question of law. *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010).[2]

As discussed in detail in the Court's previous claim construction order, during the reexamination process the patent owner distinguished the invention disclosed in the '264 Patent from the prior art by specifically disclaiming structures in which the raised side rails were not formed from taller side baffles. *See, e.g.*, Nickels Decl. Ex. C, at 10, ECF No. 600-1 (explaining

---

[2]     The parties dispute whether amendment-based estoppel applies in this case. Amendment-based estoppel applies to "bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004). As explained above, it is not clear from the record that claim 14 was ever rewritten or amended, or that there was any other narrowing amendment made. The Court, however, need not determine whether amendment-based estoppel applies, because argument-based estoppel *does* apply in this case to preclude Aviva's arguments. "To invoke argument-based estoppel, the prosecution history must evince a 'clear and unmistakable surrender of subject matter.'" *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002). Here, there is such a surrender.

that the prior art did not "actually teach using baffles of different heights to form raised sides on an inflatable structure," but instead kept the baffles "all the same height"); *Id.* at 12 (stating that the prior art "ke[pt] all the baffles . . . the same height," thus "teach[ing] away from the invention of claim 14").  The patent owner explained that whereas the prior art used "add on tubes" to create raised side rails, the invention disclosed in the '264 Patent used taller side baffles.

Aviva asserts that only "two specific types" of "add on tubes" were disclaimed during the reexamination process—tubes that were added to the *sides or top* of a *flat* inflatable body, and tubes that were affixed to the *top* of a *wedge*.  It is not entirely clear as to what Aviva believes was or was not disclaimed, but it appears as though Aviva is arguing that the patent owner did not disclaim structures in which the raised sides were formed by "add on tubes" that are affixed to the *side* of a *wedge*.  But the shape of the inflatable body to which the "add on tubes" were affixed (i.e., flat or wedge-shaped) and whether the "add on tubes" were affixed to the side or the top of the body were never the points of contention during the reexamination process.  Rather, the relevant issue upon which the patent owner focused was the manner in which the raised side rails were formed—i.e., whether or not they were created by taller side baffles.  The patent owner disclaimed all structures in which the raised side rails were not formed by taller baffles.

To the extent that Aviva is arguing that the only "add on tubes" that the patent owner disclaimed were separate tubes that were later attached to a main inflatable body, Aviva's argument also fails.  The patent owner clearly disclaimed more than only those particular types of "add on tubes."  For example, the patent owner described the Healy prior art reference (shown below), which taught an elongated water slide that was created by overlying two sheets of plastic material and then heat sealing the two sheets together to form the tubes.  *See* Nickels Decl. Ex. F, at 15,17, ECF No. 600-1.

10



*U.S. Patent No. 6,312,341 fig.2*
*(filed Mar. 15, 2000).*

The two outermost tubes, which were larger in diameter, were created by increasing the distance between the heat seals that formed those tubes—not by adding two larger-diameter tubes later in the production process.  The patent owner nevertheless characterized these two larger-diameter tubes in the Healy reference as "add on tubes," and explained that the Healy reference taught away from the invention in claim 14 because it did not use "baffles of different heights to form raised sides."  *Id.* Ex. C, at 10.  The patent owner clearly disclaimed more than simply structures in which separate tubes were later added onto a main body—the patent owner disclaimed any structure in which the side rails were not formed by taller side baffles.[3]  After the Court's claim construction, it is now undisputed that the allegedly infringing products do not include taller side baffles, and that the raised side rails of the accused products are not formed by taller side baffles.  Thus, the patent owner disclaimed during reexamination the types of structures it now accuses of infringement.  Limitations disclaimed in prosecution history cannot be reclaimed through the back door in claim construction.  The back door is still closed if the limitations walk around the block and try again with the doctrine of equivalents.

---

[3]     Aviva's further attempt to narrowly define "tubes" as "hollow elongated cylinders" is unavailing.  Pl.'s Mem. Opp. 13.  The precise shape of the "add on tubes" was not the focus of the patent owner's disclaimer during the reexamination process.  Rather, the focus was on the manner in which raised sides were created.

In sum, Aviva has failed to present evidence that there is infringement of claim 14 of the '264 Patent, either literally or under the doctrine of equivalents. Even if there were sufficient evidence of equivalence to create a genuine dispute of material fact, Aviva cannot now recapture through the doctrine of equivalents subject matter that was explicitly disclaimed during reexamination of the '264 Patent. For those reasons, Wal-Mart is entitled to judgment of non-infringement of claim 14 as a matter of law.[4]

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    Wal-Mart's Motion for Partial Summary Judgment [Docket No. 686] is GRANTED.

Dated: December 3, 2012

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[4]    Because the Court finds that claim 14 of the '264 Patent is not infringed, the Court need not consider Wal-Mart's alternative invalidity argument.