UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aviva Sports, Inc.,

    Plaintiff,

v.                                                            Civil No. 09-1091 (JNE/JSM)
                                                          ORDER
Fingerhut Direct Marketing, Inc., Menard, Inc.,
Kmart Corporation, Wal-Mart Stores, Inc., and
Manley Toys, Ltd.,

    Defendants.

      On March 20, 2013, the Honorable Janie S. Mayeron, United States Magistrate Judge, issued an order granting in part and denying in part Plaintiff Aviva Sports, Inc.'s ("Aviva") Motion for Sanctions. In that order, the magistrate judge imposed sanctions on Defendant Manley Toys, Ltd. ("Manley") as well as on Manley's attorney, Mr. Stephen M. Lobbin, and Mr. Lobbin's law firm, the Eclipse Group.[1] Lobbin objected to the Order, arguing in part that he was not given notice of the possibility of personal sanctions. On May 3, 2013, the Court vacated that part of the magistrate judge's Order that imposed sanctions against Lobbin and put Lobbin on notice that sanctions against him may be considered for his role in the failed depositions of Manley's Rule 30(b)(6) witness. Lobbin filed his response to the Court's Order, and the Court is now ready to rule on the issue of sanctions against Lobbin.

## I.    BACKGROUND

      The factual background underlying this issue was thoroughly set forth in the magistrate judge's March 20, 2013 Order, and the Court will not repeat it at length here. In summary, Aviva had originally noticed a Rule 30(b)(6) deposition of Manley for January 11, 2011.

---

[1]     Because Lobbin is the only attorney at the Eclipse Group who participated on behalf of Manley in the matters at issue, for purposes of this Order the court will treat Lobbin and the Eclipse Group as one and the same (referred to as "Lobbin").

1

Aviva's attorney traveled to Hong Kong for the deposition. Manley identified Chan Siu Lun ("Chan") as its corporate deponent, and Manley's counsel participated by telephone.[2] Chan was not prepared to testify, and in April 2011, Aviva moved to compel Manley to produce a properly prepared Rule 30(b)(6) witness. On January 3, 2012, the Court concluded that Manley's corporate designee was "woefully unprepared" to respond to numerous topics and ordered Manley to produce a properly prepared Rule 30(b)(6) witness and pay the costs of a translator if one would be needed. The Court also warned that if Manley again produces an unprepared witness, the Court will entertain a motion for sanctions against Manley.

On June 7, 2012, Manley produced Richard Toth as its Rule 30(b)(6) witness.[3] Toth was not adequately prepared to testify as to each of the identified topics at that time. Due to Toth's schedule, the deposition had to be continued on December 11, 2012. Aviva informed Lobbin that at least the six-month delay would give Toth time to become better prepared. In December 2012, however, Toth was still grossly unprepared to provide meaningful testimony as to several of the identified deposition topics. Aviva, believing that another motion to compel would be futile, instead moved for an award of fees and costs incurred in connection with the failed depositions and in bringing its motion for sanctions.

As this Court noted in its May 3, 2013 Order, the magistrate judge correctly found that Toth was unprepared to testify as Manley's corporate designee. For example, Toth—the President of Manley Toys Direct (*not* Manley Toys, Ltd., the Defendant in this case)—did not know how Manley Toys, Ltd. does business or why his company was even called "Manley," and he denied knowing anything about Manley Toys, Ltd. He could not provide any testimony

---

[2] Lobbin was not yet Manley's counsel at the time of the Chan deposition.

[3] By this time, Lobbin had undertaken representation of Manley.

regarding the organizational structure of Manley Toys, Ltd. other than the names of the individuals who own the company. He had no information regarding the revenues, units, costs and profits received from the sales of the products at issue. It appears that Manley's Chinese counsel, Walter Fong, prepared brief (and only slightly responsive) answers to the identified deposition topics, and Toth was completely unprepared to answer any follow-up questions related to those topics. Generally speaking, if the answer to Aviva's question was not on the notes provided to him by Fong, Toth could not answer the question.

In the magistrate judge's March 20 Order, affirmed in part by this Court, the magistrate judge imposed sanctions against Manley under both Rule 37 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, finding that "Manley's decision to send Toth to the deposition armed with little knowledge beyond the notes prepared by Fong is indefensible." March 20, 2013 Order, at 16 (ECF No. 797). The magistrate judge also concluded that Lobbin played a "key role" in the failure of the second deposition and that he knew or should have known that Toth was unprepared. "Any lawyer acting with a reasonable amount of skill and diligence would have recognized that Toth was not the right deponent and the fault for failing to adequately prepare Toth lies with Manley and its counsel." *Id.* at 17. The magistrate judge found that Lobbin willfully disregarded the Court's order regarding Manley's Rule 30(b)(6) deposition. As examples, the magistrate judge explained that Lobbin attempted to justify Toth's "dismal performance" by citing the need for an English-proficient deponent, despite the fact that the Court explicitly provided that Manley could produce a non-English-speaking deponent so long as it paid for a translator. Lobbin emphasized the "convenience" of having Toth testify—presumably because Toth lives in the United States. The magistrate judge concluded that "counsel's conduct in the deposition was objectively reckless and so egregious that it amounted

3

to bad faith" and "unnecessarily prolonged these proceedings by putting Aviva through the time and expense of participating in this useless deposition." *Id.* at 18.

## II. DISCUSSION

"A court may require counsel to satisfy personally attorneys' fees reasonably incurred by an opposing party when counsel's conduct 'multiplies the proceedings in any case unreasonably and vexatiously.'" *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (quoting 28 U.S.C. § 1927). Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (2006). "The statute permits sanctions when an attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Clark*, 460 F.3d at 1011 (quoting *Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003)); *see also Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (explaining that § 1927 "allows district courts to assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." (internal quotation marks omitted)).

"Federal Rule of Civil Procedure 37(b) authorizes sanctions for failure to comply with discovery orders." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980). If the Court finds that there has been a failure to comply with a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 37 sanctions are permissible where there is "an order compelling discovery, a willful violation of that order, and prejudice to the other party." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). These sanctions "must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1012 (8th Cir. 1993) (internal quotation marks and citation omitted).

Lobbin makes four arguments as to why sanctions against him are unwarranted; the Court will address each argument in turn. First, Lobbin points to his "honorable credentials," "unblemished 18-year professional record" and "reasonable personal and professional disposition." The Court does not question Lobbin's credentials, record or disposition. None of these things, however, provide any justification or explanation for Lobbin's reckless disregard of his duties to the court in this matter. "All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice." *Malautea*, 987 F.2d at 1546; *see also* Model Rules of Prof'l Conduct Preamble ¶ 1 (2013) (stating that a lawyer is "an officer of the legal system and a public citizen having special responsibility for the quality of justice" who "should demonstrate respect for the legal system and for those who serve it, including judges [and] other lawyers," and that "it is . . . a lawyer's duty to uphold legal process"). Lobbin's eighteen years of experience as an attorney should have made him acutely aware of his professional duties and his obligation to ensure that his client complied with the Court's discovery orders. Further, his experience should have provided him with ample understanding of discovery procedures and proper deposition preparedness.

Lobbin next points to the fact that Aviva requested a sanction against Manley, rather than against Manley's attorney. As Lobbin acknowledges, the Court may order sanctions *sua sponte*,

which is precisely why this matter is currently before the Court.  Whether or not Aviva chose to seek sanctions against Manley, Lobbin, or both does not factor into this Court's analysis as to whether such sanctions against Lobbin are, in fact, warranted.  As an attorney, Lobbin owes a duty to the Court, and it is for the Court to determine whether that duty has been neglected.

Lobbin also contends that the Court should not consider misconduct on the part of Manley's prior counsel in assessing whether sanctions against Lobbin are appropriate.  As Lobbin correctly notes, Manley has switched lead counsel numerous times during the course of this litigation; Lobbin did not begin representing Manley until early May 2012, a month before Toth's first deposition.  Before Lobbin entered this litigation, the Court on several occasions had warned or reprimanded Manley's previous counsel.  *See, e.g.*, Jan. 3, 2012 Order, at 17-20, 34-36, 40-42 (ECF No. 508); May 11, 2012 Order, at 11, 13, 20-23 (ECF No. 601).  The Court assures Lobbin that he is not being "penalized personally for conduct that occurred before he ever got involved in the litigation."  Resp. Br. 8 (ECF No. 817).  The fact that former counsel had been repeatedly warned regarding Manley's noncompliance with discovery orders, however, should have served as notice to Lobbin that he was assuming representation of a potentially noncompliant client that had previously engaged in discovery misconduct.  Lobbin had access to the electronic record in this case and assumed representation of Manley with full knowledge of the events that had already transpired.  Thus, while Lobbin is not personally responsible for the conduct that occurred prior to May 2012, he was at least on notice of Manley's obvious contempt for the judicial system and this Court's orders and that the Court was not letting Manley's attorneys off the hook for Manley's misconduct.

Next, Lobbin asserts that he should not be personally sanctioned for the failed Rule 30(b)(6) deposition because he was not authorized to select or prepare the witness and he did not

assume representation of Manley until May 2012, shortly before Toth's June deposition. He contends that because he was not authorized to select or prepare the corporate deponent, he could not cause the "deposition testimony to be any different or better than it was" and "that it could not have gone better no matter what I did." Resp. Br. 4 (ECF No. 817). Walter Fong, Manley's Chinese counsel, submitted a declaration in which he states that although Lobbin's "input" regarding the deposition was "welcomed," it was Fong who took responsibility for selecting and preparing Toth. The Court identifies several problems with this argument.

First, although Lobbin had only recently begun representing Manley prior to Toth's first deposition in June 2012, Lobbin had ample time to correct Toth's deficiencies prior to the continuation of Toth's deposition in December 2012. Lobbin provides no evidence or argument as to what steps he took or attempted to take between the failed June deposition and the failed December deposition. In his declaration in objection to the magistrate judge's March 20, 2013 Order, at 4 (ECF No. 804), Lobbin states that "[p]erhaps I could have personally conducted the witness selection and preparation process, and traveled to China for that purpose; however, I was assured repeatedly in discussions with Manley's representative that the designated Rule 30(b)(6) witness would be fully prepared to provide information in response to the deposition topics." Even giving Lobbin the benefit of the doubt that he did not have enough time to become involved in the preparation of the 30(b)(6) witness prior to the June deposition and that he reasonably relied on his client's assurances that the witness would be prepared, there is no excuse for Lobbin's failure to intervene between the two deposition dates. By the conclusion of the June deposition, Lobbin was certainly on notice that Toth was inadequately prepared. At that point, it was unreasonable for Lobbin to rely on any further assurances from Manley that the

deficiencies would be corrected by December.[4] *Cf.* Fed. R. Civ. P. 26(g) Adv. Com. Notes, 1983 Amendments (stating that an attorney "may rely on assertions by the client and on communications with other counsel in the case *as long as that reliance is appropriate under the circumstances*" and "what is reasonable is a matter for the court to decide on the totality of the circumstances" (emphasis added)); *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990) ("Blind reliance on the client is seldom a sufficient inquiry." (internal quotation marks omitted)).

As the attorney advising Manley's conduct and as an officer of the Court, Lobbin was required to do *something* to try to assure Manley's compliance. If he was not aware that Manley's designated 30(b)(6) witness was unprepared prior to the June deposition, he certainly should have been aware of this fact after the deposition. There is no evidence that Lobbin attempted to take any steps to further prepare Toth or otherwise ensure that Manley produced an adequately prepared 30(b)(6) witness for deposition during the six-month interval. For example, there is no indication that Lobbin ever traveled to China to assist in discovery or personally engage with his Chinese client, nor is there any suggestion that he spoke with Toth between the two depositions to assess Toth's preparation and adequacy to testify. Lobbin's late entry into this litigation does not explain his complete disregard for this Court's discovery orders as evidenced by Toth's continued dismal performance in December 2012. While perhaps Lobbin could have been excused from responsibility for the failed June deposition, he offers nothing to excuse his actions—or lack thereof—leading up to the December deposition.

---

[4] It is questionable whether Lobbin's reliance on Manley's assurances was *ever* reasonable, given his own acknowledgment that Manley is a "challenging litigation client" and his awareness of Manley's other previous discovery abuses. A quick glance at the ECF record in this case reveals a docket littered with motions and orders for sanctions against Manley. Lobbin should have been that much more diligent in his attempts to make sure Manley complied with this Court's discovery orders, and given Manley's history of noncompliance and disobedience, a reasonable attorney would have been wary of Manley's assurances in the first place.

It is also apparent from Lobbin's statements during Toth's deposition and from Lobbin's subsequent submissions to the Court that he took the absurd position that Toth *was* adequately prepared for the deposition. During the deposition, Lobbin asserted that Toth's "general knowledge" of the identified topics was sufficient, despite the magistrate judge's January 3 Order contemplating testimony from a corporate deponent who could testify specifically on the identified topics. In his objections to the magistrate judge's imposition of sanctions, Lobbin repeatedly asserted that Toth was a proper and prepared witness. The only reason he does not continue to make this assertion now is because this Court expressly stated that it will not further entertain that argument in connection with this matter. *See* May 3, 2013 Order (ECF No. 812). The Court recognizes that Lobbin has a duty to zealously advocate for his client, but even that advocacy must be "within the bounds of the law." Model Rules of Prof'l Conduct Preamble ¶ 9 (2013). Here, Lobbin not only asserted that Toth was an adequately prepared deponent in connection with his advocacy for his client, he also made this assertion in his own objections to the magistrate judge's order of sanctions against him personally. *See* Obj. to Magistrate Judge's March 20, 2013 Sanctions Order by Non-Party the Eclipse Group LLP, at 7 (ECF No. 803) ("Contrary to the Magistrate Judge's determinations, the witness was prepared and provided appropriate answers for almost all of the topics."). It is difficult for the Court to characterize Lobbin's conduct simply as "competent, good-faith advocacy" on behalf of his client, Resp. Br. 3 (ECF No. 817), in light of Lobbin's previous statements and submissions.

Lobbin appears to believe that the fact that Manley's Chinese counsel took responsibility for the selection and preparation of Manley's 30(b)(6) witness somehow absolves him of any wrongdoing. He is mistaken. Lobbin is Manley's United States counsel and the counsel of record in this case, and he has a professional responsibility not only to his client, but also to the

Court. "An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly." *Malautea*, 987 F.2d at 1546. "This concept is as old as common law jurisprudence itself." *Id.* Lobbin cannot stick his head in the sand and cower behind his client's disobedient conduct. Lobbin may be held responsible for Manley's discovery violations, even if he did not personally instigate the conduct. *See Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1161-62 (11th Cir. 1993) (explaining that Rule 37 does not require that in order for sanctions to be imposed upon the attorney, the attorney must have instigated the relevant misconduct).

> The phrase "attorney advising such conduct" does not . . . exclude either an attorney's willful blindness or his acquiescence to the misfeasance of his client; to the contrary, the phrase instructs that when an attorney advises a client in discovery matters, he assumes a responsibility for the professional disposition of that portion of a lawsuit and may be held accountable for positions taken or responses filed during that process. Sanctions exist, in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law and toward their brethren at the bar.

*Id.*

Even if the Court accepted that Lobbin acted in good faith and truly believed that Manley—despite having clearly shown complete and utter disregard for this Court's discovery orders throughout the course of this four-year litigation—would take the steps it needed to take to adequately prepare its designated 30(b)(6) witness, Lobbin's subjective good faith alone is not enough to absolve him of all responsibility for this fiasco. "Subjective good faith ought not to be an infinitely expansive safe harbor to protect an attorney" who behaves in a way "that a competent attorney could not under any conceivable justification reasonably believe" to be appropriate. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987). "Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some judgment." *Id.*

10

"To excuse objectively unreasonable conduct by an attorney would be to state that one who acts 'with "an empty head and a pure heart" is not responsible for the consequences.'" *Id.* (quoting *McCandless v. Great Atl. & Pac. Tea Co.*, 697 F.2d 198, 200 (7th Cir. 1983)).

Based on the extensive record in this case, Lobbin's unreasonable reliance on Manley's assurances, and his failure to make any diligent attempt to comply with the Court's discovery order prior to the disastrous December deposition, the Court finds that Lobbin's behavior, when viewed objectively, constituted intentional or reckless disregard of his duties, at best characterized as a willful blindness toward his client's disdain for the judicial process. Lobbin's utter failure to attempt to discharge his duties as an officer of the Court unreasonably and vexatiously multiplied the proceedings in this case and amounted to bad faith. There was a discovery order compelling Manley's production of a prepared 30(b)(6) deponent, a willful violation of that order, and Aviva was prejudiced by that violation—both in the time and money expended on the failed deposition and in Aviva's inability to acquire through discovery the information it needed to pursue its claims. There is nothing to show that the failure to comply with the discovery order was substantially justified or that there are any other circumstances that would make an award of expenses unjust. "This conduct . . . amounts to a near total dereliction of professional responsibility" and "[s]uch abusive conduct should not, can not, and will not be cost-free." *Comiskey*, 989 F.2d at 1012. Sanctions against Lobbin under Federal Rule of Civil Procedure 37(b) or 28 U.S.C. § 1927 are warranted.[5] Lobbin shall be jointly and severally liable

---

5     In this Court's May 3, 2013 Order, the Court stated that it "does not intend to conduct a hearing on this matter, unless the parties request *and demonstrate the need for* such a hearing." May 3, 2013 Order (ECF No. 812) (emphasis added). Lobbin responded that he requests a hearing because "the negative personal, professional and financial impact of any such monetary sanction being considered is serious enough to justify an opportunity for counsel to explain, in person, his actions and intentions in question and the lack of any bad faith or *mens rea* on his part." Resp. Br. 2 (ECF No. 817). The Court does not minimize the impact of the imposition of

for Aviva's reasonable expenses—including attorneys' fees—incurred in connection with the failed depositions and in bringing the motion for sanctions.

Both 42 U.S.C. § 1927 and Federal Rule of Civil Procedure 37(b)(2)(C) provide for the award of the costs, expenses, and attorneys' fees reasonably incurred as a result of the misconduct. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Hours that are excessive, redundant or otherwise unnecessary are not "reasonably expended" and should be excluded from the calculation. *Id.* The reasonableness of a fee is a matter within the Court's discretion. *Id.* at 433, 437. Aviva's attorney, Keith Sorge ("Sorge"), submitted an affidavit stating that he spent at least 69.9 hours in connection with preparing for and attending the two Toth depositions and the motion for sanctions. Sorge's billing rate is $400 per hour, resulting in claimed fees of $27,960.00. Sorge's affidavit also states that attorney Ryan Sorge ("Ryan Sorge") spent 5.5 hours reviewing and identifying documents to be used at the deposition, at a billing rate of $225 per hour. Sorge also claims costs totaling $103.00. Manley submitted a response, objecting to the number of hours claimed by Keith Sorge as unreasonable. Manley does not object to the billing rates of $400 and $225 per hour, the 5.5 hours expended by Ryan Sorge, or the claimed costs.

---

sanctions and has provided Lobbin with ample notice and opportunity to explain his actions and intentions; Lobbin has not demonstrated a need for an in-person hearing on this matter. *See Tenkku*, 348 F.3d at 744 (explaining that where the sanctioned party is "afforded ample notice and opportunity to be heard" on the question of whether a sanction should be imposed and the amount of the sanction, a hearing is not necessary); *Chrysler Corp.*, 186 F.3d at 1022-23 (explaining that the Fifth Amendment's due process requirements are met "where the record demonstrates a willful and bad faith abuse of discovery and the non-cooperating party could not be unfairly surprised by the sanction" and "the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed").

The Court finds that the attorneys' fees incurred by Ryan Sorge ($1,237.50), the claimed costs ($103.00), and Keith Sorge's hourly rate of $400 per hour are reasonable. The Court also finds, despite Manley's objection, that the twelve hours Sorge claims for actually deposing Toth and preparing for and participating in the motion hearing is reasonable. Toth's two depositions together lasted approximately seven hours, and the hearing on the motion for sanctions lasted approximately one hour. Factoring in transit and reasonable preparation time, the Court does not find twelve hours expended on the depositions and hearing to be unreasonable.

Sorge also states that he spent approximately fourteen hours preparing for *each* of the two Toth depositions, including time spent reviewing documents, researching Manley, and drafting questions; Manley objects that the twenty-eight hours is unreasonable because the second Toth deposition was merely a continuation of the first deposition and did not require significant additional preparation. Given the numerous documents involved in this case, the Court finds that it was reasonable for Sorge to spend fourteen hours preparing for the first Toth deposition. It was not, however, reasonable to spend an *additional* fourteen hours preparing for what should have been a continuation of the first deposition. The Court finds that seven hours is a reasonable time to have spent in preparation for the second of the two depositions.

Finally, Sorge claims to have spent twenty-nine hours drafting the submissions in support of Aviva's motion for sanctions and responding to Manley's opposition to that motion, including time spent reviewing Toth's deposition. The Court finds this amount of time to be excessive. Aviva's memorandum in support of its motion was only sixteen pages and was not factually or legally complex. Aviva's barely-four-page reply brief contained no new factual information and included no citations to law. Throughout both briefs, Aviva primarily relied on citations to and quotes from Toth's deposition—and although that deposition transcript was approximately three-

hundred pages long, the Court does not find that it should have required more than a few hours to read. The Court finds twenty-nine hours to be an unreasonable amount of time to read through the deposition, draft the motion papers, and read and respond to Manley's objections. Instead, fifteen hours represents a reasonable amount of time necessary to conduct these activities.

In sum, the Court finds that Sorge reasonably expended forty-eight hours in connection with the two Toth depositions and motion hearing. At a rate of $400 per hour, this amounts to attorneys' fees of $19,200. Upon adding this amount to the $1,237.50 fees incurred by Ryan Sorge and the costs of $103.00, the Court finds that Manley and Lobbin are jointly and severally liable for $20,540.50 in reasonable fees and costs incurred in connection with this discovery misconduct.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Sanctions against Attorney Stephen Lobbin are imposed pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) and 28 U.S.C. § 1927. Lobbin shall be jointly and severally liable for Aviva's reasonable costs and attorneys' fees incurred in connection with the failed depositions and in bringing the motion for sanctions.

2. Manley and Lobbin are jointly and severally liable for reasonable fees and costs in the amount of $20,540.50.

Dated: July 23, 2013

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge