# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aviva Sports, Inc.,<br>　　　　　Plaintiff,<br><br>v.<br><br>Fingerhut Direct Marketing, Inc., et al.,<br>　　　　　Defendants. | Case No. 09-cv-1091 (JNE/HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff's Motion to Compel Production of Manley Documents and Enforce the Court's Prior Discovery Order [ECF No. 1099]. Plaintiff ASI Inc., f/k/a Aviva Sports Inc. ("Aviva") moves the Court to compel the production of documents belonging to Defendant Manley Toys Ltd. ("Manley") pursuant to the Court's December 30, 2015, post-judgment discovery order [ECF No. 924], as corrected [ECF No. 925]. Manley has been dissolved as a corporate entity, and those documents are now in the possession of two foreign nationals, Mat Ng and John Robert Lees ("Liquidators"), who served as Manley's liquidators in recent Hong Kong liquidation proceedings. Because the Court finds it has subject-matter jurisdiction over the case and limited specific personal jurisdiction over the Liquidators, the Court grants the motion.

## I.    Background

The history of this case is complicated, and the Court recounts only those facts necessary for the resolution of the present motion.

A.      Discovery Derails the Case

Aviva filed suit in this matter on May 11, 2009.  [ECF No. 1.]  Its original

Complaint named several companies, including the Hong Kong-based toy manufacturer

Manley Toys, Ltd. and its U.S. counterpart, Toy Quest, Ltd.  (*Id.* ¶¶ 20–21.)  After

extensive litigation, in August 2013 the court awarded Aviva a default judgment of

approximately $8.5 million including damages for Manley's falsely advertised products,

attorneys' fees and costs, and sanctions.  [ECF No. 827.]  To date, Aviva has collected

"almost nothing" on its judgment.  (Calland Decl. ¶ 1 [ECF No. 1102].)

In December 2015 Aviva filed a motion to compel post-judgment discovery

responses from Manley.  [ECF No. 915.]  Aviva sought a variety of financial and other

documents, including documents about assets and asset transfers, sales, profits, products,

customers, distributors, licensing, insurance, corporate structure and ownership, and

intercorporate relationships (hereafter "Manley Documents").  (*See* Calland Decl. Ex. 1

[ECF No. 1102-1].)  Manley did not file an opposition to the motion and did not appear at

the motion hearing.  [*See* ECF No. 922.]  On December 30, 2015, the court granted

Aviva's motion.  [ECF No. 924.] (as corrected [ECF No. 925], hereafter the "Production

Order").  The court ordered Manley to respond to Aviva's first set of post-judgment

requests for production by no later than January 29, 2016, and indicated that if Manley

failed to respond Aviva would be permitted to "seek appropriate relief from the Court."

(*Id.* ¶¶ 4–5.)  Manley never responded to Aviva's discovery requests, and the information sought in those discovery requests is the subject of the current motion.[1]

## B.    Manley Starts Bankruptcy Proceedings in Hong Kong and New Jersey

The large judgment caused Manley to commence simultaneous Hong Kong voluntary winding-up and United States ancillary bankruptcy[2] proceedings.  It was a turnkey operation. On March 11, 2016, a notice of a "Creditors' Meeting" under Hong Kong law was sent to all of Manley's known creditors via regular mail and published in three Hong Kong newspapers.  *In re Manley Toys Ltd.*, 580 B.R. 632, 636 (Bankr. D. N.J. 2018).   The date of the meeting was March 22, 2016.  On that day, Manley's shareholders passed a special resolution initiating a voluntary winding-up proceeding under Section 228A(1)(c) of the Hong Kong Companies (Winding Up and Miscellaneous Provisions) Ordinance (Cap. 32) ("Hong Kong Liquidation law").[3]  (*See* Verified Pet. Pursuant to 11 U.S.C. §§ 105(a), 1504, 1507, 1509, 1515, 1517, 1519, 1521, and 1525 for

---

[1] In February 2016 Aviva filed a motion for sanctions based on Manley's failure to comply with the court's Production Order.  [ECF No. 929.]  That hearing was continued, however, while the court considered a motion to intervene.  [*See* ECF Nos. 937, 939.] Aviva calls the motion to intervene a "sham motion" brought by two alleged corporate affiliates of Manley whose attorneys, Aviva attests, were hired and paid for by Toy Quest Ltd.  (Calland Decl. ¶ 5.)  The court later denied the motion to intervene as "grossly deficient."  [ECF No. 953 at 11.]

[2] The parties frequently reference documents filed in the Chapter 15 proceedings: *In re Manley Toys Ltd.*, No. 16-15374-JNP (Bankr. D. N.J.).  The Court will use the following short citation for references to the bankruptcy court's docket: (Document Name at Page Number [Bankr. ECF No. X].)

[3] The Liquidators attached to their Chapter 15 Petition as an appendix a copy of the Hong Kong Liquidation Law in effect at the time of winding-up.  [Bankr. ECF Nos. 2-5–2-8.] The law has since undergone revisions.  References to the Hong Kong Liquidation Law are to the version attached to the Chapter 15 Petition unless otherwise specified.

Entry of an Ord. Recognizing Foreign Main Proceeding and Granting Further Relief and Add'l Assist. (hereafter "Chapter 15 Petition") at 5, Calland Decl. Ex. 2 [ECF No. 1101-2].)  At the simultaneous meeting of creditors,[4] a Committee of Inspection ("COI")—consisting entirely of affiliated entities—was appointed, and the COI appointed Ng and Lees as "Appointed Liquidators and Foreign Representatives."  *In re Manley Toys Ltd.*, 580 B.R. at 636; (*see* Aug. 20, 2021 Liquidators Letter to Mag. Judge [ECF No. 1146]); *see also* Hong Kong Liquidation Law §§ 241 (concerning meeting of creditors), 243 (concerning committee of inspection.). The COI also authorized the Liquidators to take actions under Hong Kong Law and commence Chapter 15 proceedings in the United States. (*See* Exhibit B to Chapter 15 Petition [Bankr. ECF No. 2-2 at 3].)

On the same day, the Liquidators filed a petition under Chapter 15 of the United States Bankruptcy Code seeking recognition of the Hong Kong proceedings as foreign main proceedings.  *See* Chapter 15 Petition; *see also* 11 U.S.C. §§ 101(23), 1517(a).   By initiating the Chapter 15 proceedings, Manley sought protection of its U.S. assets, which almost solely consisted of claims against Toys "R" Us, Inc. for accounts receivable totaling $5,000,000.  (*See* Chapter 15 Petition at 3.)

On March 28, 2016, the Liquidators, through counsel, informed this District Court that they had filed the Chapter 15 Petition.  [ECF No. 956.]  The Liquidators also

---

[4] Seventeen creditors attended; all but one were affiliates of Manley. (Mar. 22, 2016 Manley Mins. [Bankr. ECF No. 43-7].)  Neither Aviva nor Toys "R" Us received sufficient notice to attend the meeting.  *In re Manley Toys Ltd.*, 580 B.R. at 640. Ultimately, Aviva had means under Hong Kong law to participate, but chose not to pursue those avenues.  *See id.* at 641 (discussing safeguards).  The Liquidators and the COI even offered Aviva a spot on the COI, but Aviva refused.  *Id.*

informed the court that the bankruptcy court in New Jersey had granted them provisional

relief in the form of "a stay of all proceedings against [Manley] in the United States."

(*Id.*; *see also* Mar. 24, 2016 Bankr. Ct. Mins [Text-Only Entry After Bankr. ECF No.

16].)  Post-judgment enforcement stalled in this case in light of the stay. [5]

### C.    Role of the Liquidators and the Manley Documents

In theory, upon appointment, the Liquidators were required to "take into [their]

custody, or under [their] control, all the property and things in action to which the

company is or appears to be entitled."  Hong Kong Liquidation Law § 197; *see also* Hong

Kong Liquidation Law § 251(1)(b) (powers and duties of liquidator in voluntary winding

up).  Additionally, the Liquidators had several powers and duties under Hong Kong Law

including: "to bring or defend any action or other legal proceeding in the name and on

behalf of the company.  Hong Kong Liquidation Law § 199(1)(a).  However, the

Liquidators had to follow directions "given by the creditors . . . or by the committee of

inspection."  Hong Kong Liquidation Law § 200(1). And, because Manley commenced a

---

[5] As a result, the Court ultimately denied Aviva's motion for sanctions, *see supra* note 1, without prejudice to the motion's renewal.  (*See* Sept. 6, 2016 Ord. [ECF No. 959].)  On November 23, 2016, Aviva moved for contempt sanctions against Manley, Samson Chan, Alan Chan, Brian Dubinsky, Toy Quest Ltd., and Aquawood LLC.  [ECF No. 961.]  The Court denied the motion "in light of the partial reservation of Aviva Sports' motion for relief from the provisional stay."  (Jan. 23, 2017 Ord. at 5 [ECF No. 997].)  After receiving permission from the Bankruptcy Court, Aviva renewed its motion on May 29, 2018 [ECF No. 999].  The Court granted the motion as to Manley but denied it as to the others on the ground that Aviva had not demonstrated that the Court had personal jurisdiction over them. [ECF No. 1087]  The Federal Circuit summarily affirmed.  [ECF No. 1097.]

creditors voluntary winding-up, certain powers required an explicit sanction by the

Committee of Inspection or creditors.  *See* Hong Kong Liquidation Law § 251(a).

Practice followed theory.  The COI resolved that:

1. The books and records of the Company and of the Liquidators may be destroyed
after the Company is wound up at a time and in a manner selected by the
Liquidators.

. . .

3. The Liquidators should be granted the power contained in Section 199(1) of the
[Hong Kong Liquidation Law].

(ASI Ex. 44 at 2 [Bankr. ECF No. 43-35].)  It is undisputed the Liquidators assumed

control and took into custody the documents owned by Manley.  Specifically, the

Liquidators have in storage about twenty banker's boxes of financial statements, general

ledgers, bank statements, purchase orders, invoices, bills of lading, and payment vouchers

dating back to at least 2010.  (*See* Calland Decl. Ex. 3 [ECF No. 1102-3].)  Aviva claims

these documents are subject to the Production Order and relevant to related litigation.

*See, e.g. ASI Inc. v. Aquawood LLC*, Case No. 19-cv-763 (JRT/HB) (D. Minn.);

*Rennenger v. Aquawood, LLC*, Case Nos. 4:19-cv-123, 131, 132, 134, 135 (S.D. Iowa)

(consolidated sexual harassment actions).

### D.     Liquidation Unravels and Terminates

The Manley liquidation efforts, led by the Liquidators, unfolded in Hong Kong,

with parallel proceedings in New Jersey.  The record reflecting the proceedings in Hong

Kong is sparse.  From 2016 to today, the Liquidators purportedly conducted the

liquidation pursuant to Hong Kong Liquidation law.  In February 2019, the Liquidators

6

disavowed investigations into any alter ego or fraudulent transfer claims. (Calland Decl.

¶ 14.) Rather, the Liquidators, on behalf of Manley, sought a settlement with Toy Quest

in the Hong Kong courts that would have the Liquidators distribute to the independent

creditors HK$300,000 (approximately US$38,700). (*Id.* ¶ 15.) The settlement included a

waiver of fraudulent transfer, alter ego, or other claims against Toy Quest Ltd. and other

affiliated companies or individuals. (*Id.*) The Hong Kong court rejected the settlement

with the understanding the Liquidators would attempt to negotiate an enhanced

settlement. (*Id.* ¶ 17.) The Liquidators ultimately concluded no settlement was likely

and requested leave to withdraw the proposed settlement, which the Hong Kong court

granted. (Liquidators Mem. Opp. Mot. Compel at 3 [ECF No. 1119].)

In New Jersey, the bankruptcy court ultimately granted recognition of the Hong

Kong liquidation as a "foreign main proceeding." *In re Manley Toys Ltd.*, 580 B.R. 632

(Bankr. D.N.J. 2018), *aff'd*, 597 B.R. 578 (D.N.J. 2019). Although Aviva appealed to the

Third Circuit the district court's decision affirming the bankruptcy court, the parties

agreed to dismiss the appeal. [Bankr. ECF No. 429.] Before and after this decision,

Aviva repeatedly sought relief from the stay to pursue alter ego and fraudulent transfer

claims against Manley, which were ultimately allowed after the bankruptcy court

determined the Liquidators "effectively abandoned" those claims, given the facts above.

(Feb. 25, 2021 Ord. ¶ 6 [Bankr. ECF No. 419].)

After the Toy Quest settlement failed, the Liquidators gave notice on February 19,

2021, that the final meetings of creditors in the Hong Kong proceedings would take place

on March 22, 2021. (*See* Liquidators Ex. B [ECF No. 1119 at 20-21].) The meeting took

place, and, on March 26, 2021, the Liquidators filed the documents necessary to close the proceedings with the Companies Registry of Hong Kong.  (*See* Liquidators Ex. C [ECF No. 1119 at 22-26].)   Three months following the filings, Manley formally dissolved. (*See* Liquidators Ex. D [ECF No. 1119 at 27-28].)  The Liquidators filed a final report in the bankruptcy court, which ultimately agreed to close the case.[6]  [Bankr. ECF Nos. 421, 425.]

The Liquidators consequently became the former liquidators of Manley. Ordinarily, the Liquidators would have destroyed all books, records, and documents of Manley in their custody after the final meeting of creditors.[7]  (Liquidators Mem. Opp. Mot. Compel at 4.)  However, an order by the bankruptcy court required the Liquidators preserve the documents until June 21, 2021.  (*Id.*)  Subsequently, the Liquidators voluntarily agreed to preserve the Manley Documents until December 31, 2021, with all costs of storage payable by Aviva.  (Liquidators Ex. E [ECF No. 1119 at 34].)

---

[6] The Final Report recognized that Toys "R" US "filed a case under Chapter 11 [of the Bankruptcy Code] that resulted in no distributions to general unsecured creditors," meaning Manley took nothing, and the "reason for the Chapter 15 case evaporated." [Bankr. ECF No. 42 at 6.]  However, the stay allowed the Liquidators to pursue settlement negotiations with Toy Quest.  (*Id.* at 6-7.)  Once those fell through and the Liquidators conducted the final meeting to wind-up Manley, the protections of Chapter 15 were no longer necessary. (*Id.* at 7.)

[7] Aviva contends the Liquidators "insisted on destroying the documents" because the COI instructed them to do so.  (*See* Calland Decl. ¶¶ 22-23).  *See* Hong Kong Liquidation Law § 283(1)(b) (disposal of books and papers of company as permitted by COI); *but see* Hong Kong Companies Ordinance § 758 (former director required to keep dissolved company's books and papers for 6 years). The only instruction from the COI in the record, quoted above, allows, but does not require, destruction of the documents. Even if the Liquidators were bound to destroy the documents, nothing prevented them from sending Aviva a copy of those documents before doing so.  Production and destruction are not mutually exclusive here.

## II.      Analysis

Aviva now seeks to compel Manley, or the Liquidators in their capacity as

Manley's (former) liquidators, to produce the Manley Documents currently held in

storage.  The Liquidators object to the motion to compel on two grounds: lack of personal

jurisdiction and lack of subject matter jurisdiction.  Because the latter is more

straightforward, the Court begins there.

### A.      Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 U.S. 375, 377 (1994).  "While a district court's jurisdiction typically ends

when a case is closed and judgment entered, a district court retains ancillary jurisdiction

to 'manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Jenkins*,

*v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) (quoting *Kokkonen*, 511

U.S. at 380).  As a result, the Supreme Court has sanctioned a "broad range of

supplementary proceedings involving third parties to assist in the protection and

enforcement of federal judgments." *Peacock v. Thomas*, 516 U.S. 349, 356-57 (1996)

(listing cases).  "Without jurisdiction to enforce a judgment entered by a federal court, the

judicial power would be incomplete and entirely inadequate to the purposes for which it

was conferred by the Constitution." *Id.* at 356.

Citing the presumption against jurisdiction, *Kokkonen*, 511 U.S. at 377, and the

burden on Aviva to establish jurisdiction, *Sierra Club v. U.S. Army Corp. of Eng'rs*, 446

F.3d 808, 815 (8th Cir. 2006), the Liquidators argue this Court lacks subject matter

jurisdiction over the motion.  The Liquidators believe Aviva must show the Court has

diversity jurisdiction, which it cannot do because the Liquidators are nonparties and there is no amount in controversy between Aviva and the Liquidators. (Liquidators Mem. Opp. Mot. Compel at 9-11.)

The Liquidators misunderstand the inquiry. Aviva's motion falls squarely within the Court's ancillary enforcement jurisdiction. Once a party establishes subject-matter jurisdiction over the suit, that party need only show that ancillary jurisdiction extends to the post-judgment motion. *See Peacock*, 516 U.S. at 355 (requiring jurisdiction before exercising ancillary jurisdiction). The party does not need to re-establish original or diversity jurisdiction as to the motion in particular. The Liquidators do not and cannot reasonably contest this Court's subject-matter jurisdiction over the lawsuit as a whole. *See* 15 U.S.C. § 1121 (jurisdiction over Lanham Act claims); 28 U.S.C. § 1367 (supplemental jurisdiction over state-law claims); (Aug. 6, 2013 Ord. at 18-19 [ECF No. 822] (awarding judgment based on Lanham Act damages and Manley's prior default as to false advertising claims).) The Production Order permitted post-judgment discovery to aid in the enforcement of the judgment. (*See* Aviva Mem. Supp. Mot. Compel Resps. Post-Judgment Discovery at 2 [ECF No. 918] ("To facilitate enforcement of its Judgment in light of Manley's persistent attempts at evasion, therefore, ASI has served Manley with Discovery Requests, pursuant to Rule 69.").) The present motion seeks to compel the Liquidators to the same effect. Rule 69(a)(2) of the Federal Rules of Civil Procedure explicitly acknowledges a judgment creditor's ability to obtain discovery; and this Court has ancillary jurisdiction to compel responses to such requests and enforce its prior orders compelling production. *Accord, e.g.*, *Murphy v. Snyder*, Case No. 10-cv-1513 (JS)

10

(AKT), 2019 WL 4396574, at *6 (E.D.N.Y. Aug. 6, 2019) (granting post-judgment motion to compel subpoena), *adopted*, 2019 WL 4415430 (E.D.N.Y. Aug. 23, 2019). Therefore, the Court finds subject-matter jurisdiction is present here.

### B. Personal Jurisdiction

#### 1. Whether the Court Has Jurisdiction Over the Liquidators as Agents of Manley

Manley is a party to this action. No one contests that the Court has personal jurisdiction over Manley. And at the time Aviva filed this motion, the Liquidators were, by operation of law, Manley. *See* Hong Kong Liquidation Law § 199(1)(a) (power to defend in the name of the company); (*see also* Calland Decl. Ex. 5 ¶¶ 24-26 (describing under Hong Kong law that, upon appointment of liquidators, business ceases and powers of the directors dissipate in favor of liquidators' control).) The only reason the Liquidators have the Manley Documents in the first instance is because of their official role as liquidators of Manley. Therefore, the Liquidators, when they became the corporate representatives of Manley, also became subject to this Court's Production Order. Aviva, however, was precluded at that time from seeking an order compelling the Liquidators to comply on Manley's behalf by the stay in the Chapter 15 proceedings, which the Liquidators vigorously defended. But for the stay, the Court had the authority at that time to compel the Liquidators in their official capacity as corporate representatives of Manley. *Cf. In re Grand Jury Subpoena (85-W-71-5)*, 784 F.2d 857, 860-61 (8th Cir. 1986) (affirming denial of motion to quash subpoena directed to attorney of defunct company as corporate representative); *Henderson v. City of Woodbury*, 2016

11

WL 11020056, at *2 (D. Minn. July 22, 2016) (requiring trustee of decedent's estate to facilitate discovery with next of kin).

But as soon as the bankruptcy court announced its intention to grant relief from the stay so that the requested discovery could be pursued (Feb. 4, 2021 Audio Decision [Bankr. ECF No. 416]), the Liquidators hurriedly closed up shop. Aviva brought its motion one month before Manley was set to dissolve. Manley dissolved, and the Liquidators now view themselves as mere foreign nonparty document custodians who have received an informal request for production of the Manley Documents. *See Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975) ("If the person is a non-party, production of documents can be compelled only by a subpoena duces tecum issued under Rule 45(d)(1)."); *see generally Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Ia.*, 482 U.S. 522 (1987) (discussing use of Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (hereafter Hague Evidence Convention), Mar. 18, 1970, 23 U.S.T. 2555, procedure for international discovery between residents of signatories, which includes the United States and Hong Kong).[8]

---

[8] The Liquidators do not contest the instant motion to compel on the grounds that Aviva should instead have served a subpoena or sought issuance of a letter of request under the Hague Evidence Convention. Ordinarily, the lack of such a subpoena or letter would be fatal to a motion to compel as there is nothing to compel without an initial request. But here the Liquidators, as agents of Manley, had the obligation to produce the documents, and Aviva moved to enforce that obligation while the Liquidators still represented Manley. Perhaps when Manley dissolved, it would have behooved Aviva also to seek a letter of request directed to the Liquidators or the Hong Kong Companies Registrar (*see* Hong Kong Companies Ordinance § 757(1)-(2) (allowing Registrar to execute or cause to be executed tasks that a dissolved company should have taken while still operating)).

Further, Aviva has not identified any Hong Kong law that keeps Manley alive post-dissolution for purposes of winding up pending litigation. *See Chi. Title & Tr. Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124 (1937) ("There must be some statutory authority for the prolongation of [the corporation's] life, even for litigation purposes."). Thus, this case is distinguishable from cases cited by Aviva for the proposition that formal dissolution does not terminate discovery obligations. (Aviva Mem. Supp. Mot. Compel Liquidators at 20-21 & 21 n.8 [ECF No. 1101].) *See, e.g., Burris v. Versa Prods., Inc.*, Case No. 07-cv-3938 (JRT/JJK), 2013 WL 608742, at *6 (D. Minn. Feb. 19, 2013) (discussing survival of discovery obligations of dissolved Wisconsin corporation based on a Wisconsin statute); *Sines v .Kessler*, Case No. 3:17-cv-00072, 2020 WL 3428988, at *3 (W.D. Va. June 23, 2020) (same in Michigan); *Luv N'Care, Ltd. v. Laurain*, Case No. 2:18-cv-02224-JAD-EJY, 2019 WL 4695399, at *2 (D. Nev. Sept. 26, 2019) (same in Nevada). In contrast, Hong Kong law makes no provision for the survival of the corporate state for any purpose post-liquidation. *See* Hong Kong Liquidation Law § 251 (providing that the corporate state continues only until the company is dissolved). *Cf. Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 383-84 (2d Cir. 2021) (discussing similar issues with Cayman Island entities). Without any corporate existence whatsoever, Manley can neither bring nor defend any action. And without an underlying corporation, the Court is unaware of any authority for maintaining or resurrecting the Liquidators' corporate representative

---

But, for the reasons that will follow, based on the unique posture of this case, the Court believes Aviva's motion is sufficient.

capacity under these circumstances.[9]  To the extent Aviva seeks to characterize the

Liquidators *successors* to Manley, it cites no legal authority (Aviva Mem. Supp. Mot.

Compel Liquidators at 15-16, 19, 21), and the Court is aware of none, for treating the

former liquidators of a now-dissolved company as its successors in any respect.

In the alternative, Aviva argues the Liquidators are so closely related to Manley

that the Court has the power to compel production as if they are Manley.  (Aviva Mem.

Supp. Mot. Compel Liquidators at 18-21.)  But the cases Aviva cite for this proposition

are also distinguishable.  First, Aviva cites *Compagnie Francaise d'Assurance Pour le

Commerce Exterieur v. Phillips Petro. Co.* for its holding that "a third party with a

substantial interest in the litigation cannot be allowed to frustrate the rules of discovery to

the disadvantage of a party."  105 F.R.D. 16, 33-34 (S.D.N.Y. 1984); *see also In re Infant

Formula Antitrust Litig.*, MDL No. 878, 1992 WL 503465, at *9-10 (N.D. Fla. Jan. 13,

1992) (applying similar principles to assignors).  The Court agrees, as far as the holding

goes.  But here, the former Liquidators have no interest whatsoever in the litigation after

completing the liquidation.

Second, Aviva cites *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.* for

the view that a corporation cannot transfer documents to a nonparty to impede discovery.

---

[9] The other cases cited by Aviva, while they do not rely on survival statutes, still do not
provide support for Aviva's position.  In *Retail Service Systems, Inc. v. Carolina
Bedding Direct, LLC*, the dissolved entity to whom discovery was directed did not
contest its discovery obligations.  Case No. 2:13-cv-00994, 2014 WL 2169389, at *1
(S.D. Ohio May 23, 2014).  And in *United States v. R.J. Zavoral & Sons, Inc.*, there was
no evidence the allegedly dissolved entity ever formally dissolved.  Case No. 12-cv-668
(MJD/LIB), 2014 WL 12756820, at *3 (D. Minn. Jan. 17, 2014).

171 F.R.D. 135, 146-48 (S.D.N.Y. 1997).  In that case, the plaintiff was seeking to compel production of documents previously owned by the defendant but, post-bankruptcy, now held by the defendant's successor-in-interest.  *Id.*  The court found the defendant maintained custody and control over the documents even though they were physically in the hands of a nonparty; therefore, the plaintiff's motion to compel the defendant to produce the documents, as opposed to issuing a subpoena to the nonparty, was proper.  Here, no one contests that Manley had custody and control over the documents up until its dissolution.  Thus, by the logic of *Bank of New York* (and but for the stay), the Court could have ordered *Manley* to produce the documents even though the documents were in the hands of its Liquidators.  But with Manley dissolved and no longer in existence, the *Bank of New York* scenario is inapplicable here.  *Compare with List v. Carwell*, Case No. 18-cv-2253 (DSD/TNL), 2020 WL 5988514, at *11-13 (D. Minn. Oct. 9, 2020) (holding defendant-corporation in the midst of dissolution must ship documents held by Canadian partner of recently-deceased sole shareholder of company).

In short, although the Court had the authority to compel production of the documents by Manley's Liquidators in their capacity as corporate representatives prior to the dissolution of the company, there is no basis without a corporate survival statute to treat the Liquidators as corporate representatives now.

The question, therefore, is whether the Court has independent personal jurisdiction over the Liquidators; if so, the Court can still compel the Liquidators individually to produce the documents.

2.    Whether the Court Has Specific Personal Jurisdiction Over the Liquidators

The parties disagree over the applicable test for assessing specific personal jurisdiction.[10]  The Liquidators recite the test for specific personal jurisdiction applied to nonresident parties.  Because Minnesota's long-arm statutes authorize the assertion of jurisdiction to the fullest extent allowed by constitutional due process, *see Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), "the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  "In evaluating a nonresident's contacts with the forum, we must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986).  Under Eighth Circuit law, the Court must assess "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties."  *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (assessing minimum contacts of defendants) (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (same)).

In reply, Aviva argued it seeks to compel "the Liquidators in their official capacities as Manley's liquidators for the limited purpose of ordering them to preserve

---

[10] Aviva does not claim the Court has general jurisdiction over the Liquidators.

16

and produce the Manley Documents. . . . [B]y virtue of both the Liquidators' status as the

successors to Manley and the actions the Liquidators have taken on behalf of Manley in

connection with proceedings in this Court, to which Manley is a party.  The Court's

jurisdiction over Manley is undisputed and no minimum contacts analysis is necessary"

to compel the Liquidators. (Aviva Reply at 7 [ECF No. 1136].)

The reality is more complicated.  "'Federal courts ordinarily follow state law in

determining the bounds of their jurisdiction over persons' . . . because a federal district

court's authority to assert personal jurisdiction in most cases is linked to service of

process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction

in the state where the district is located.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014)

(quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) and Fed R. Civ. P.

4(k)(1)(A)).  Supreme Court precedent on personal jurisdiction is acutely concerned with

the adjudication of claims against nonresident defendants.  *See Int'l Shoe Co v. State of

Wash., Office of Unemploy. Comp. & Placement*, 326 U.S. 310, 316 (1945) ("[D]ue

process requires only that *in order to subject a defendant to a judgment* in personam, if

he be not present within the territory of the forum, he have certain minimum contacts

with it such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice.") (emphasis added; cleaned up); *Zenith Radio Corp. v.

Hazeltine Resch. Inc.*, 395 U.S. 100, 110 (1969) ("The consistent constitutional rule has

been that a court has no power to adjudicate a personal claim or obligation unless it has

jurisdiction over the person of the defendant.");  *Asahi Metal Indus. Co., v. Sup. Ct. of

Cal., Solano Cnty*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who

must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *Daimler AG*, 571 U.S. at 132-33 (discussing precedent "increasingly trained on the relationship among the defendant, the forum, and the litigation").  That is to say: the Supreme Court has not established a precise test for asserting personal jurisdiction over nonparties.

While the Eighth Circuit has not addressed this issue, other circuits have, particularly the United States Court of Appeals for the Second Circuit.  In *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136-37 (2d Cir. 2014), U.S. luxury goods retailers sued individuals and companies with Chinese bank accounts who had allegedly violated plaintiffs' trademark rights.  The plaintiffs sought discovery and a temporary restraining order against the Bank of China—a nonparty—to freeze the defendants' assets and preserve any chance of discovery and recovery.  *Id.* at 125.   The district court granted the motion, issued an asset-freeze injunction, and, when the Bank of China refused to comply with the discovery order, sanctioned the Bank of China for civil contempt.  *Id.*

The Second Circuit reversed the entry of contempt because the district court's exercise of general personal jurisdiction was contrary to the Supreme Court's recent decision in *Daimler*.  It remanded the case for the district court to determine whether it could exercise specific personal jurisdiction over the foreign nonparty bank, and it provided some guidance for that inquiry.  *Id.* at 136-38.  Prior Second Circuit precedent recognized that on the one hand, "a person who is subject to liability . . . far from home may have better cause to complain of an outrage to fair play than a nonparty."  *Id.* at 137

18

n.17.  "But on the other hand, a nonparty with few if any connections to the activities giving rise to the suit may have a strong interest in its freedom to take actions that are 'genuinely independent' of any intent to frustrate a court's [order]."  *Id.*  To accommodate for a nonparty's status as such, the Second Circuit suggested the following framework for assessing the minimum contacts of a nonparty when a party seeks to compel compliance with a standing court order:

> [F]irst assess the connection between the nonparty's contacts with the forum and the order at issue, and then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.

*Id.* at 137.  The court noted that at least one other circuit had applied a similarly "translated" version of the specific jurisdiction test to discovery requests "by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue."  *Id.* at 141 (citing *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996)).

The Second Circuit had occasion to revisit the issue in *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), in the context of an application pursuant to 28 U.S.C. § 1782.[11] In that case, although the court rejected the idea "that there is a categorically lower showing of due process needed to obtain discovery from a nonparty,"[12] it concluded that

---

[11] Section 1782 of Title 28 provides the district court the authority to compel a person within its district to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  The instant motion is the mirror-image: a district court compelling a foreign nonparty to produce documents for use in a proceeding within the district.

[12] The Fourth Circuit came to a similar conclusion in *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019) (holding that aiding-and-abetting

"it [is] enough for purposes of due process in these circumstances that the nonparty's contacts with the forum go to the actual discovery sought rather than the underlying cause of action." *Id.* at 530. Ultimately, the Second Circuit affirmed the denial of the petition because the discovery materials sought by the petitioners were not related to the respondent's forum contacts. *Id.* at 530-31.

In the absence of Eighth Circuit case law on point, the Court finds the Second Circuit's reasoning instructive, and therefore will apply its translated specific personal jurisdiction test to the present motion to compel discovery. Thus, the Court must first determine the nonparty's contacts with the forum, the discovery sought, and the court's order to determine whether the discovery materials sought "arise[s] out of or relate[s] to the [nonparty's] contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017). Second, given those contacts, the Court must assess whether asserting personal jurisdiction would comport with fair play and substantial justice. The Court must also give due regard to the risks to international comity generated by such an exercise of jurisdiction. *Daimler AG*, 571 U.S. at 141-42. The party invoking jurisdiction bears the burden of establishing that personal jurisdiction exists. *See Whaley*, 946 F.3d at 451.

Ng is a citizen and resident of Hong Kong. (Ng Decl. ¶ 2 [ECF No. 1141-2].) Lees is a resident of Hong Kong and citizen of New Zealand. (Lees Decl. ¶ 2 [ECF No.

---

jurisdiction under Fed. R. Civ. P. 65(d)(2)(C) requires no less due process and movant must show minimum contacts).

1141-1].)  Both Ng and Lees disavow any contact with the state of Minnesota.  (See Ng Decl. ¶ 5-8; Lees Decl. ¶ 5-8.)

But although Ng and Lees, as individuals, had no contacts with Minnesota, they were Manley's liquidators, and it makes sense to impute *Manley's* contacts to them in that capacity.  Manley initiated liquidation proceedings because of this Court's entry of default judgment and after it was subject to this Court's Production Order.  When Ng and Lees became the Liquidators, Hong Kong law cloaked them with authority to act on behalf of Manley.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("As an inanimate entity, a corporation must act through agents.").  In fact, no other individual *could* act on behalf of Manley, meaning only the Liquidators could have fulfilled Manley's post-judgment discovery obligations under the Production Order.  In undertaking their role as Liquidators, Ng and Lees should reasonably have anticipated the need to respond on behalf of Manley in United States courts and this Court in particular.

Given Aviva's dogged pursuit of the judgment and the Liquidators' obligations to Manley and its creditors, the Liquidators were acutely aware of this case, Manley's debt, and this Court's Production Order.  Before the provisional stay granted by the bankruptcy court, Manley, and therefore the Liquidators as Manley's agents, were obligated to turn over the documents.  The provisional and—upon recognition of the Hong Kong proceedings as foreign main proceedings—final stay relieved them of that production obligation temporarily.  But then Aviva obtained relief from the stay for the purpose of moving to compel the production of the Manley Documents, and so moved while the Liquidators were *still* the sole corporate representatives of Manley.  Yet, from the day the

bankruptcy court granted immediate relief from the stay until Manley's dissolution, the Liquidators did not satisfy Manley's discovery obligations.  Indeed, the Liquidators could—and should—have turned over a copy of the Manley Documents while they still held that official capacity, in which case it would never have been necessary to hale them into this Court.  Thus, the Liquidators' contacts with Minnesota through this litigation and as corporate representatives of Manley are substantial indeed.[13]

The posture of this case resembles *Hawkins* in some respects, but the differences warrant a different result.  In *Hawkins*, United States plaintiffs obtained a default judgment awarding monetary damages and an injunction against a Hungarian businessman and several companies he controlled, including i-TV.  935 F.3d at 216. The plaintiffs found the judgment hard to enforce because the assets were overseas.  *Id.* When Hungarian companies purchased i-TV, the plaintiffs sought to enforce the judgment against the nonparty purchasers and requested discovery to that effect.  *Id.*  The district court permitted extensive discovery over personal jurisdiction objections raised by the nonresident nonparty purchasers.  *Id*.  The purchasers appealed and the Fourth Circuit reversed.

Relevant here, the plaintiffs in *Hawkins* asserted that the purchasers aided and abetted the violation of the district court's injunction, which had ordered the transfer to the plaintiffs of the defendant's ownership interest in i-TV.  *Id.* at 218, 228.  Relying on

---

[13] For this reason, the Liquidators' reliance on 11 U.S.C. § 1510 is misplaced.  The Court does not rely upon the Liquidators' appearance as foreign representatives in the New Jersey bankruptcy proceedings as the sole premise for exercising personal jurisdiction over them.

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985),[14] the plaintiffs argued the aiding and abetting constituted sufficient contact for the court to exercise personal jurisdiction because the court has the authority to enforce the injunction against nonparties in active concert with subjects of the injunction through Rule 65(d)(2)(C) of the Federal Rules of Civil Procedure.

The Fourth Circuit, however, rejected *Waffenschmidt*'s two theories for exercising personal jurisdiction under Rule 65(d)(2)(C).  The first theory was that "district courts have inherent, nationwide authority to institute civil contempt proceedings against nonparties who aid and abet violations of injunctions."  *Hawkins*, 935 F.3d at 229.  But the Fourth Circuit concluded that "it would violate due process for a district court to reach foreign aiders-and-abettors that lack any contacts with the United States," and, citing *Gucci*, emphasized that no court of appeals has extended the first theory to foreign nonparties.  *Id.*

The second theory was that the mere act of aiding and abetting a violation of an injunction under Rule 65(d)(2) is a type of "super contact" that is necessarily sufficient to support the exercise of personal jurisdiction.  According to the *Waffenschmidt* court, the in-forum effects of the nonparties' conduct (namely, the evasion of the court's

---

[14] The Liquidators rely on *Janvey v. Proskauer Rose LLP*, Civil Action Nos: 3:13-cv-0477-N-BQ, 3:09-cv-0721-N-BQ, 2020 WL 418884 (N.D. Tex. Jan. 24, 2020), which also rejected an argument for personal jurisdiction for contempt proceedings based on a violation of an injunction under *Waffenschmidt*.  This Court's personal jurisdiction analysis does not turn on the violation of any injunction.  In fact, the Court already rejected Aviva's attempts to show personal jurisdiction over different nonparties based on a *Waffenschmidt* argument.  [ECF No. 1087 at 9-11.]  Rather, a discussion of *Waffenschmidt* and *Hawkins* helps to frame the minimum contacts inquiry in this context.

jurisdiction and the effect on the litigation) were enough to establish personal jurisdiction. *Waffenschmidt*, 763 F.2d at 717, 721-23. But the Fourth Circuit ruled on two separate grounds that the "super contact" theory swept too broadly and failed to recognize that in-forum effects of out-of-forum conduct must create a substantial connection to the forum such that the forum is the focal point. *Hawkins*, 935 F.3d at 230-31. First, the Fourth Circuit noted that aiding and abetting does not always have a substantial effect on the forum. In *Hawkins*, the sale merely moved the assets "from one inaccessible location overseas to another" and any affront to the dignity of the district court was therefore categorically insufficient. *Id.* Second, the conduct was not the sort of "express aiming" at the forum that the *Calder* effects test requires. *See Calder v. Jones*, 465 U.S. 783, 789 (1984). Instead, the court found, the purchasers "help[ed] violate an injunction for selfish reasons that ma[de them] merely indifferent to any effect in the forum." *Hawkins*, 935 F.3d at 231. The court also cited serious comity concerns underlying its rejection of personal jurisdiction over the purchasers. *Id.* at 231-32.

Here, Aviva obtained a default judgment in this District against Manley, a foreign corporation over which this Court had jurisdiction. Aviva had difficulties collecting the judgment and sought post-judgment discovery, which this Court granted. After Manley entered liquidation proceedings, Aviva sought to enforce the Production Order against the Liquidators, who were not only the new controllers of Manley but had taken custody of the Manley's documents because of their role as Manley's liquidators. Thus, unlike in *Hawkins,* this Court initially had personal jurisdiction over the Liquidators in their capacity as Manley's corporate representatives.

24

In addition, the Hong Kong liquidation was initiated because of the Minnesota judgment and with the aim of impeding, if not thwarting altogether, Aviva's efforts to collect on that judgment.  The Liquidators' refusal to turn over the documents (and, moreover, their threat to *destroy* those documents when they can have no possible legitimate interest in their disposition) can only be understood as advancing Manley's strategy to avoid being held accountable for the judgment.  Thus, in their actions—and failures to act—as Manley's representatives, the Liquidators aimed their conduct expressly at Minnesota and this Court.

Viewed in this light, the Liquidators' contacts are more than sufficient.  The Liquidators obtained the discoverable documents in their capacity as representatives of Manley after the Court had already entered an order compelling Manley to produce them in this case.  And, while Manley's dissolution resulted in the termination of the Liquidators' representative capacity, Manley's documents have not moved; they remain in the custody and control of those very same persons.   After shedding their corporate capacity, "what [Ng and Lees] cannot do, free of consequences, is tell Plaintiff[] that they are just out of luck."  *Burris*, 2013 WL 608742, at *7.

The ultimate inquiry is whether exercising personal jurisdiction over the Liquidators would offend "traditional notions of fair play and substantial justice." *Whaley*, 946 F.3d at 451 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  Without a doubt, "the conduct and connection with the forum state [is] such that the [Liquidators] could reasonably anticipate being haled into court there." *Id.* (cleaned up).  Critical to this conclusion is that the Liquidators were previously subject to this Court's jurisdiction;

25

Manley had an obligation to comply with the Production Order; and the Liquidators had the sole authority to fulfill Manley's obligations but did not.  They have neither a continuing official interest nor a personal interest in the documents, and Manley no longer survives and therefore can have no continuing claim of ownership.  Thus, the only entity with a demonstrable right to the documents is Aviva, and the only surviving entities with an arguable interest in Aviva *not* getting those documents are parties to the related case before this Court.  Requiring the Liquidators to do what Manley was ordered to do, and what they as Manley's representatives were obligated to do, comports with "traditional notions of fair play and substantial justice."  Indeed, such notions are irreconcilable with allowing the Liquidators to persist in their continuing refusal to produce the documents.

The Court has also considered the comity concerns here.  The Supreme Court has cautioned that the extension of personal jurisdiction over foreigners could antagonize other nations and make them less likely to respect U.S. judgments.  *See Daimler*, 134 S. Ct. at 762-63; *see also Hartford Fire Ins. Co v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting in part) ("The 'comity' they refer to is not the comity of courts, whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere,[15] but rather what might be termed 'prescriptive comity': the respect sovereign

---

[15] In a letter to the undersigned, the Liquidators asserted that they would be unwilling to turn over the Manley Documents without an order from a Hong Kong court.  [ECF No. 1148.]  But they cite no Hong Kong law or court order that suggests a Hong Kong court has any interest at all in the disposition of the documents of a company that has been dissolved.

nations afford each other by limiting the reach of their laws."); Restatement (Third) of

Foreign Relations Law §§ 402-04 (1987).  But the substantial effects on Minnesota and

traditional notions of fair play and substantial justice validate the very limited intrusion

upon the sovereignty of Hong Kong.  *See Asahi Metal Indus. Co.*, 480 U.S. at 114

("When minimum contacts have been established, often the interests of the plaintiff and

the forum in the exercise of jurisdiction will justify even the serious burdens on the alien

defendant.")

The Court therefore concludes that it can and should exercise jurisdiction over the

Liquidators and grant the relief requested by Aviva.

Several matters regarding the logistics of that production bear discussion.  First,

the parties' briefs suggest there may be some disagreement about whether *all* of the

documents and electronically stored information (ESI) the Liquidators received from

Manley comprise more than the *Manley Documents* (i.e., the documents the Court

ordered be produced).  Moreover, it is possible that even if the former is broader than the

latter, a review of the Manley Documents could suggest further requests would be

appropriate.  The Liquidators have no personal interest in any of the documents or ESI

they received from Manley, Manley has no surviving interest, and no other person has

come forward with a claim of ownership or right over those materials.  It would therefore

hardly be fair—to Aviva or to the Liquidators—to place on the Liquidators the expense

and burden of reviewing the documents and ESI to determine which are within the scope

of the Court's Production Order, of litigating the follow-up motion practice that is certain

to ensue if there are disagreements about the scope of the Production Order, or of

continuing to maintain any documents or ESI that may remain, if any.  Therefore, the

Court will order the Liquidators to produce to counsel for Aviva *all* of the documents and

ESI of which they took custody from Manley. To the extent the documents exist in

physical or hard copy form (as opposed to electronic), the Court will order the

Liquidators to produce the original documents, at Aviva's expense.  *Cf. List*, 2020 WL

5988514, at *13 (ordering shipment of documents held abroad by person without interest

in the documents).  As to ESI, the Court will order its production in native format, with

all metadata intact, by secure means to be determined after consultation between counsel

for the Liquidators and Aviva's counsel.  Aviva will also bear the reasonable costs of that

production.

Further, because Aviva will now become the custodian of all documents and ESI

turned over to the Liquidators by Manley, the Court will require Aviva to make the

documents and ESI received from the Liquidators available for inspection upon request

with reasonable notice by any party in this case or the related litigation (*e.g., ASI Inc. v.*

*Aquawood LLC*, Case No. 19-cv-763 (JRT/HB) (D. Minn.); *Rennenger v. Aquawood,*

*LLC*, Case Nos. 4:19-cv-123, 131, 132, 134, 135 (S.D. Iowa)).  The Liquidators shall not

withhold or retain any of the documents, including on grounds of relevance,

responsiveness, or privilege.[16]

---

[16] *See Affiniti Colo., LLC v. Kissinger & Fellman, P.C.*, 461 P.3d 606, 614-17 (Colo. Ct.
App. 2019) (collecting cases concluding the "trending majority view" is that the attorney-
client privilege terminates upon dissolution of the corporate client and where no one is
left to assert the privilege).  In the unlikely event a party determines there are documents
in the collection as to which that party claims privilege or other protection from
discovery, the party may invoke the process set forth in Federal Rule of Civil Procedure

### III.     Conclusion

Therefore, based on the foregoing and all of the files, records, and proceedings herein, Plaintiff's Motion to Compel Production of Manley Documents and Enforce the Court's Prior Discovery Order [ECF No. 1099] is **GRANTED** and **IT IS HEREBY ORDERED** that:

1. The Liquidators must produce to Aviva all documents and electronically stored information (ESI) of which they took custody from Manley, including but not limited to the Manley Documents.  The Liquidators shall not withhold any such documents or ESI, including on grounds of relevance, responsiveness, privilege, or other immunity from discovery.  The Liquidators must continue to preserve unaltered all documents and ESI of which they took custody from Manley, pending production of same to counsel for Aviva as provided herein.

2. Counsel for Aviva and for the Liquidators shall meet and confer promptly regarding the means by which the documents and ESI will be shipped or otherwise transferred to Aviva's counsel.  To the extent the documents exist in hard copy, the Liquidators will ship the originals of those documents unless counsel agree to a different form of production.  Any ESI must be transmitted in native format (i.e., the form in which it was received and maintained by the Liquidators) by secure means to be agreed upon by counsel.

---

26(b)(5)(B).  Pursuant to Federal Rule of Evidence 502(d), any such privilege or protection shall not be waived on account of the disclosure ordered herein, nor shall it be a waiver in any other federal or state proceeding.

3. Unless otherwise agreed by Aviva and the Liquidators or ordered by the Court, the documents and ESI should be shipped or transmitted (as applicable) by the Liquidators no later than December 15, 2021.

4. Aviva shall bear the actual costs incurred by the Liquidators for storage, transmission, and shipping.

5. Aviva shall preserve the documents and ESI produced by the Liquidators and shall make the documents and ESI available for inspection upon request with reasonable notice by any party in this case or the related litigation (*e.g., ASI Inc. v. Aquawood LLC*, Case No. 19-cv-763 (JRT/HB) (D. Minn.); *Rennenger v. Aquawood, LLC*, Case Nos. 4:19-cv-123, 131, 132, 134, 135 (S.D. Iowa)).

6. Aviva's request for alternative relief in the form of substituting the Liquidators as parties for Manley is denied as moot.

Dated: November 12, 2021

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge