# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aviva Sports, Inc., | Case No. 09-cv-1091 (JNE/HB) |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO RECONSIDER NOVEMBER 12, 2021 ORDER AND MOTION FOR CONTEMPT** |
| Fingerhut Direct Marketing, Inc., et al., | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

The Court issued an order compelling Mat Ng and John Robert Lees ("Liquidators") to turn over documents received from Manley Toys Ltd. ("Manley Documents Order") during its liquidation [ECF No. 1150]. The Liquidators filed a motion for modification of order compelling turnover of documents and stay [ECF No. 1151], citing Federal Rules of Civil Procedure 59(e), 60(b)(1)(6), and 62. After ruling Rules 59, 60, and 62 were inapplicable to the Court's non-final order,[1] the Court agreed

---

[1] *See In re Kujawa*, 323 F.3d 628, 630 (8th Cir. 2003); *see also Auto Servs. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 856-57 (8th Cir. 2008) (noting that a party must ordinarily wait until a final judgment is entered to seek reconsideration of a non-appealable interlocutory order under Rule 59(e), but that local rules and inherent discretionary authority to review and revise interlocutory rulings provided avenues for more immediate relief). Even Rule 54(b) is not entirely applicable since the Court's order came post-judgment:

> Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

to hear the motion as a motion for reconsideration under Local Rule 7.1(j).  [ECF No. 1155.]  In response to the Liquidators' motion, Aviva filed a motion for contempt and sanctions [ECF No. 1164], which the Court agreed to hear and decide together.   For the reasons below, the Court will grant in part and deny in part the Liquidators' motion for reconsideration and grant in part and deny in part Aviva's motion for contempt and sanctions.

## I.    Background

A more thorough post-judgment background can be found in the Court's prior Manley Documents Order.  In short, Aviva sought post-judgment discovery from Manley Toys, Ltd. ("Manley").  Manley failed to respond, Aviva moved to compel responses in December 2015, and, after Manley failed to appear, the Court granted the motion. [ECF Nos. 915, 922, 924-25.]  Approximately three months later, Manley wound up its dealings in Hong Kong, filed for liquidation, and passed on to its liquidators, Matt Ng and John Robert Lees, twenty bankers boxes of documents as well as several compact discs (the "Manley Documents").[2] (*See* Calland Decl. Opp. Mot. Recon. Ex. 2 [ECF No. 1174-2].)   The documents included employment contracts, financial documents, corporate documents (minutes, certificate of incorporation, articles of association, etc.),

---

In these circumstances, the Court must rely on its inherent and discretionary authority to reconsider a non-final post-judgment order subject to local rules.  *See* D. Minn. L.R. 7.1(j).

[2] As counsel for Aviva acknowledged during the hearing, the documents in dispute concern Manley's pre-liquidation activity.  The term "Manley Documents" should not be read to include documents created by Manley, its COI, or the liquidators after filing for bankruptcy in Hong Kong.

bank statements, payment and receipt vouchers, invoices, bills of lading, emails, and documents related to legal proceedings. (Calland Decl. Opp. Mot. Recon. Ex. 2.) The Liquidators filed parallel Chapter 15 proceedings in federal bankruptcy court where Aviva found limited success in obtaining the documents due to the circumscribed nature of Chapter 15 proceedings. However, Aviva successfully sought relief from the bankruptcy stay to pursue post-judgment discovery of the Manley Documents in this court. [ECF No. 1099.] Over the Liquidators' objections solely as to personal and subject matter jurisdiction, the Court granted Aviva's motion to compel, ordering the Manley Documents be sent to Aviva in the United States no later than December 15, 2021. (Manley Documents Order.)

The Liquidators found themselves between a rock and a hard place. Kingsley Tze-Wei Ong, the Liquidators' Hong Kong counsel,[3] advised the Liquidators that, in order to release the documents, they would need the consent of Manley's former Committee of Inspection ("COI")[4] or an order from a Hong Kong Court recognizing this Court's Manley Documents Order. (Calland Decl. Opp. Mot. Recon. Ex. 8 at 1 [ECF No. 1174-8; Ong Decl. ¶ 3 [ECF No. 1153.) When asked, former members of Manley's former COI objected to release of the Manley Documents because 1) the documents may contain

---

[3] Ong counseled the Liquidators during Manley's Chapter 15 proceedings. (Calland Decl. Opp. Mot. Recon. Ex. 3 at 4-5 [ECF No. 1174-3].) He is presently a solicitor of Hong Kong specializing in restructuring and insolvency laws. (Ong. Decl. ¶ 5(a).)

[4] The committee of inspection in a creditors voluntary winding up under Hong Kong law oversees the liquidators in the discharge of their duties. Manley's COI consisted entirely of Manley affiliates. (Manley Documents Order at 4.)

personal data; 2) some of the documents may be protected by legal privilege under Hong Kong law; and 3) Aviva should obtain a Hong Kong court order.  (Ong Decl. ¶ 3.)  The objections raised the possibility of civil and criminal liability in Hong Kong.  (*See, e.g.*, Calland Decl. Opp. Mot. Recon. Ex. 1 at 1 [ECF No. 1174-1].)  Meanwhile, in the United States, Aviva demanded the Manley Documents backed by a court order and threats of a motion for contempt and sanctions. (*Id.* at 4.)  Stuck, the Liquidators sought relief from this Court.  The Liquidators' motion seeks a stay from the Manley Documents Order, the opportunity to conduct a privilege review and comply with Hong Kong data privacy law, and an order requiring Aviva seek approval of the Manley Documents Order in Hong Kong court.   Moreover, the Liquidators want Aviva to pay for the privilege and privacy review, which Ong estimates would take approximately 30 days and cost approximately US$30,000 plus charges for redaction.  (Jan. 31, 2022 Liquidators' Ltr. to Maj. J. [ECF No. 1187].)

Aviva viewed the motion for reconsideration as a bad faith dilatory tactic to frustrate Aviva's judgment collection efforts.  (Aviva's Mem. Supp. Mot. Contempt at 1-2 [ECF No. 1166].)  When the meet and confer process broke down, Aviva moved for an order holding the Liquidators in contempt of the Manley Documents Order for their failure to produce even a single document by December 15, 2021.  [ECF No. 1164.]  Aviva seeks a sanction of US$5,000 per day of non-compliance and payment of fees and costs associated with the motion for contempt.

Notwithstanding the obligation of a party to comply promptly with all orders of the court, *see Maness v. Meyers*, 419 U.S. 449, 458 (1957); *Howat v. Kansas*, 258 U.S.

181, 189-90 (1922), whether the Liquidators' actions are contemptuous turns, at least in part, on the merits of their motion for reconsideration. As a result, the Court will address the motion for reconsideration before turning to the motion for contempt and sanctions.

## II.    Motion for Reconsideration

The Liquidators seeks modification of the Manley Documents Order on three grounds: Hong Kong data privacy law, Hong Kong privilege law, and the need for an approval order in Hong Kong. However, the Court must first address Aviva's argument that Manley or the Liquidators waived these issues.

### A.    Waiver and Forfeiture of Issues

#### 1.    Whether Manley Waived or Destroyed its Claims of Privilege

Aviva argues the Court should not grant leave to conduct a privilege and privacy review because Manley had waived or abandoned those issues 1) by failing to respond to its post-judgment discovery requests in 2015 and the Court's orders in 2016, or 2) in the alternative, by dissolving. (Aviva's Mem. Opp. Mot. Recon. at 3-4 [ECF No. 1173].) Under both arguments, Aviva applies the law of the United States. The Liquidators argue 1) Hong Kong law should apply to a former Hong Kong corporation's Chinese business documents, 2) the attorney-client privilege survives dissolution and 3) Manley—or its successors to the right to waive the privilege—has not made a specific affirmative waiver of the privilege, which is required. (Liquidators' Mem. Supp. Recon. at 14-15 [ECF No. 1152]; Liquidators' Reply Mot. Recon. at 8 [ECF No. 1178].)

A review of Hong Kong and United States privilege law reveals a likely conflict as to both 1) whether the dissolution of a company destroys the privilege and 2) whether

inaction during litigation can serve to waive the privilege.  In Hong Kong, "[t]he modern case law on legal professional privilege has divided the privilege into two categories, legal advice privilege and litigation privilege.  Litigation privilege covers all documents brought into being for the purposes of litigation.  Legal advice privilege covers communications between lawyers and their clients whereby legal advice is sought or given." *Three Rivers District Council v. Governor & Co. of the Bank of Eng. (No. 6)*, [2004] UKHL 48, [2005] 1 AC 610 (HL), ¶ 10, 2004 WL 2526848 (appeal from the High Court of Chancery).  Once established, the legal professional privilege cannot be overridden by the court: "it can be waived by the person, the client, entitled to it and it can be overridden by statute, but it is otherwise absolute." *Id.* ¶ 25.  As a fundamental right in Hong Kong, it yields to no competing interests such as, for example, the interests of justice.  *HKSAR V. Chen Keen*, [2021] HKCFI 3024 ¶ 19, 2021 WL 4427742 (CFI); *see also* Xianggang Jiben Fa (Basic Law of Hong Kong) art. 35 (H.K.).[5]  The legal professional privilege may be waived either expressly or impliedly, *Chen Keen*, [2021] HKCFI 3024 ¶¶ 20-21, but there must be no doubt that it has been waived, *Goldlion Props. & Others v. Regent Nat'l Enters. Ltd.*, [2006] 1 HKLRD 793, 805, 2005 WL 3034901 (CA).

The Court is unaware of any Hong Kong authority addressing the precise question of whether the legal professional privilege enjoyed by a corporation survives its dissolution.  Aviva offers no part of the Hong Kong Companies (Winding Up and

---

[5] https://www.basiclaw.gov.hk/en/basiclaw/chapter3.html.

Miscellaneous Provisions) Ordinance (Cap. 32) or other Hong Kong law that effectuates a destruction of privilege upon dissolution. However, Hong Kong courts often look to the law of other common law jurisdictions such as England and New Zealand. *See, e.g.*, *Citic Pacific Ltd. v. Sec. for J. (No. 2)*, [2015] 4 HKLRD 20, 43, 2015 WL 9639 (CA) (looking at English, United States, and New Zealand law). And, as the Liquidators point out, the recent U.K. decision of *Lee Victor Addlesee & Others v. Dentons Europe LLP*, [2019] EWCA (Civ.) 1600, 2019 WL 04805928, held that the dissolution of a company does not act to destroy the privilege regardless of whether or not there exists anyone to assert the privilege. This case was cited favorably by at least one court in Hong Kong, *Angela Chen v. Wai Wai Chen*, [2021] HKCFI 2436, ¶ 52, 2021 WL 2528703 (CFI), although not in the corporate context. Without other guidance, the Court believes Hong Kong courts are likely to follow the *Addlesee* decision, which stands in stark contrast to the prevailing rule in the United States that the dissolution of a company destroys any privilege for want of one to assert the claim. *See Affiniti Colo., LLC v. Kissinger & Fellman, P.C.,* 461 P.3d 606, 614-17 (Colo. Ct. App. 2019).

Similarly, while U.S. courts sometimes find waiver of privilege based on a passive failure to object on grounds of privilege, *see Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012), Hong Kong courts usually require something more. For instance, a party may be estopped from claiming privilege after disclosing the allegedly protected communication to the opposing party and allowing the opposing party to rely upon the communication in the litigation. *See Mai Wa Wah v. Suek Chai Kit Christopher*, [2018] HKCFI 842, ¶ 26, 2018 WL 250234 (CFI). A Hong Kong court may

7

require the production of a privileged document if the privilege holder relies on and describes in detail the contents of some but not all of the legal advice contained in the document. *See Goldlion Props.,* [2006] 1 HKLRD 793, ¶ 19. But the Court is unaware of any Hong Kong case where the mere failure to respond to an adversary's documentary requests resulted in waiver of the privilege.

On the limited record before the Court, some documents appear to be covered by U.S. attorney-client privilege and some documents appear to be covered by Hong Kong legal professional privilege. Although the Court is without Eighth Circuit guidance on how to determine the availability of foreign privilege law, the common refrain amongst the many courts is that "any communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters solely involving [a foreign country] will be governed by the applicable foreign statute." *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1145, 1169-70 (D.S.C. 1975); *accord Philips N. Am. LLC v. Fitbit LLC*, --- F. Supp. 3d ---, ---, 2022 WL 252392, at *5 (D. Mass. Jan. 27, 2022); *Cadence Pharms., Inc. v. Fresenius Kabi USA,* LLC, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014); *Knauf Insulation, LLC v. Johns Manville Corp.*, Case No. 1:15-cv-00111-TWP-MJD, 2019 WL 4832205, at *2 (S.D. Ind. Oct. 1, 2019); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992). *But see Baxter Int'l, Inc. v. Becton, Dickinson, & Co.*, 2019 WL 6258490, at *2 (N.D. Ill. Nov. 22, 2019) (declining to apply the "touch base" test in favor of a "comity/functional approach"). *See generally*, 1 Testimonial Privileges § 1:11 (3d ed. 2021). United States courts, driven by comity concerns, have adopted this rule notwithstanding the fact that

8

privilege is a procedural rule ordinarily determined by the law of the forum.  *See Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 102 (S.D.N.Y. 2002).  Under this rule, "communications related to legal proceedings in the United States, or that reflect the provision of advice regarding American law, 'touch base' with the United States and, therefore, are governed by American law, even though the communication may involve foreign attorneys or a foreign proceeding."  *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010).  "Conversely, communications regarding a foreign legal proceeding or foreign law 'touch base' with the foreign country," meaning foreign privilege law applies.  *Id.*

Accordingly, if any documents touch base with the United States, U.S. privilege law applies.  Manley likely waived its claims of privilege as to those documents by failing to fulfill its obligation to respond to Aviva's requests,[6] but certainly destroyed any claim of privilege upon its dissolution.  On the other hand, for what appears to be most of the Manley Documents that do not pertain to the United States or U.S. litigation, Hong Kong law would apply, and Manley cannot be said to have waived its claims of privilege.  Without a privilege review, the Court cannot conduct the "fact-specific" inquiry into whether any particular document or set of documents have a "more than incidental" connection with the United States.  *Id.* at 67; *see also McCook Metals, L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 256-57 (N.D. Ill. 2000) (party asserting the applicability of foreign

---

[6] Because Manley's dissolution waived any claims of U.S. attorney-client privilege, the Court need not decide whether Manley's post-judgment discovery conduct resulted in waiver of the same.

privilege law bears the burden of proof).  But that is not the question to be answered today.  For now, it is sufficient to say that the Court is satisfied that at least some privilege claims have survived to be asserted.

### 2.    Whether the Liquidators Forfeited Privilege and Privacy Claims

To the extent Manley had not already waived or destroyed its claims of privilege, Aviva argues that the Liquidators, in failing to raise the privilege and privacy concerns in response to the motion to compel, forfeited those issues.  (Aviva's Mem. Opp. Mot. Recon. at 3-4.)  The Liquidators disagree, arguing that the Court went further than the relief sought by Aviva, and it therefore did not have an opportunity to address the issues.

"A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015).  Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the court decided the prior motion.  *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988).  To succeed on a motion for reconsideration, a party must show "exceptional circumstances." *Arnold v. Wood*, 238 F.3d 992, 998 (8th Cir. 2001).

Aviva moved to compel "Mat Ng and John Robert Lees . . . to produce *all* Manley documents in their or their employers' possession, custody, or control."  (Prop. Ord.

10

Compel [ECF No. 1104] (emphasis added).)[7]  The Liquidators' opposition to Aviva's

motion to compel, which they filed after Manley formally dissolved, focused exclusively

on jurisdictional issues, although they made a generic reservation of rights.  (*See*

Liquidators' Mem. Opp. Mot. Compel at 5 [ECF No. 1119].)  The Liquidators did not ask

for time to review for privilege and privacy concerns, nor did they ask for the Court to

require an approval order from a Hong Kong court should the Court agree with Aviva's

arguments.  On the arguments presented, the Court ordered the documents to be

produced.

The Liquidators argue that the Court went a step too far in three respects: 1) ruling

that the Liquidators could not assert Manley's attorney-client privilege over the Manley

Documents, 2) preventing a privacy review, and 3) ordering the production of originals.

(Liquidators' Mem. Supp. Mot. Recon. at 6.)  They argue Aviva did not raise these

issues, which means the Liquidators could not address the arguments.  Accordingly,

because attorney-client privilege, privacy, and the production of originals were not at

issue, the Liquidators believe the motion for reconsideration is proper.

As to the first two issues, the Liquidators stand on a faulty assumption that Aviva

bore the burden of placing privilege and privacy at issue.  The individual resisting

discovery must raise objections of that nature.  *See Cargill, Inc.*, 284 F.R.D. at 425

(collecting cases where failure to raise privilege objections forfeited the issue); *see also*

---

[7] Given the language of the proposed order, the Court is confused by the
Liquidators' assertion that Aviva "never sought . . . blanket production."  (Liquidators'
Mem. Supp. Mot. Recon. at 14.)  Aviva asked for exactly that.

Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must (i) expressly make the claim[.]"); Fed. R. Civ. P. 45(e)(2)(A) (same).  Although there was some discussion of potentially privileged materials in the bankruptcy proceedings in 2016 (*see* Packman Decl. Supp. Mot. Recon. Ex. A [ECF No 1177-1]), the record does not reflect *any* discussion of privilege or privacy concerns while meeting and conferring on the present disputes.  (*See* Second Suppl. Meet & Confer Stmt. Ex. A [ECF No. 1114-1] (pre-motion discussions); Calland Decl. Opp. Mot. Recon. Ex. 8 (post-Manley Documents Order discussions).)  In their opposition brief, the Liquidators did not ask for an opportunity to brief privilege or privacy concerns if their arguments about jurisdiction failed.  The Liquidators do not explain why they could not have presented the issues to the Court— particularly if they were aware about potentially privileged materials as early as 2016.  It would be well within the Court's discretion to deny the motion on this ground alone.  *See SPV-LS, LLC*, 912 F.3d at 1111.

But the Court agrees that it did not give due consideration to the possibility that some of the Manley Documents were protected by Hong Kong privilege law, which differs in significant respects from U.S. jurisprudence.  Moreover, as the Court's review of Hong Kong privilege law reveals, Hong Kong courts jealously guard privileged communications—likely even if there is no one to assert the privilege.[8]  Therefore, the

---

[8] Even the Liquidators appear unsure of whether they hold the right to assert and waive the privilege.  (*Compare* Liquidators' Mem. Supp. Recon at 14 ("It is (and always has been) the Liquidators' position that they inherit Manley's pre-petition attorney-client privilege in much the same way a trustee a [sic] does in other bankruptcy proceedings in

Court agrees that it erred in assuming U.S. privilege law applied to all documents, and the Liquidators' request for an opportunity to review documents for privilege is proper grounds for its motion.

On the other hand, the Liquidators could—and should—have raised their concerns about the Hong Kong data privacy law in response to the initial motion.  However, the Court need not determine whether those arguments were waived because, as will be seen, it concludes on other grounds that the Liquidators are not entitled to conduct a privacy review of the Manley documents.

Finally, as for the present objection to the production of originals, the Court agrees that the Liquidators had no opportunity to address that issue.  Like the document custodian at issue in *List v. Carwell*, Case No. 18-cv-2253 (DSD/TNL), 2020 WL 5988514 (D. Minn. Oct. 9, 2020), the Court viewed the Liquidators as individuals without any interest in the documents themselves. (*See* Manley Documents Order at 28.) With Manley dissolved and the Liquidators potentially about to destroy the documents

---

the United States.") *with* Ong Decl. ¶¶ 25-27 ("However, since Manley is now dissolved, it is unclear whether the Liquidators still retain any such authority.").  Hong Kong courts recognize that pending liquidation, the Liquidators have the right to assert or waive the privilege. *See China Med. Techs. Inc.* [2015] HKEC 2367, ¶ 13, 2015 WL 10743 (CFI). But the Liquidators point to no provision in Hong Kong law allowing the Liquidators—or the COI for that matter—to puppet a company from the grave and assert privilege. Instead, it would appear that whatever rights remain post-dissolution fall to the Hong Kong government, as was the case in *Addlesee*.  *See* Hong Kong Companies Ordinance (Cap. 322) § 752(1).

The *Addlesee* decision has created a trap for the unwary court where even without one to assert the right, a court must jealously guard privileged communications.  And without one to waive the right, a court must do so in perpetuity.  Query—although neither side has—whether such a rule offends the public policy of this forum. *See Astra*, 208 F.R.D. at 98.

(*See id.* at 6, 8 n.7.), it made good sense to have the documents in the hands of the only interested party: Aviva.  But now the Liquidators object to the production of originals because it may subject them to personal liability under Hong Kong law.  (Liquidators' Mem. Supp. Mot. Recon. at 22.)  The Manley Documents Order allows for Aviva and the Liquidators to agree to something other than the production of the originals, including the production of copies. (*See id.* at 30.)  Nothing in the record suggests Aviva is steadfastly demanding the production of originals as opposed to copies.  To alleviate the Liquidators' concerns, the Court modifies the Manley Documents Order to allow for the production of forensically sound copies as opposed to originals.

### B.    Merits

Satisfied that the issues raised by the Liquidators as grounds for reconsideration are proper, the Court now turns to the merits of the Liquidators' requests.

### 1.    Whether to Permit a Review for Privileged Information

In brief, the Liquidators state they have "legitimate concerns" that certain of the Manley Documents contain material subject to the attorney-client privilege—of Manley or others.  (Liquidators' Mem. Supp. Mot. Recon. at 14.)  Aviva argues that the Liquidators' failure to identify even a single potentially privileged document—either under U.S. or Hong Kong law—militates against delaying the production of the Manley Documents to conduct a privilege review.  (Aviva's Mem. Opp. Mot. Recon. at 14, 24.)  The Liquidators respond that the privilege log produced in the Chapter 15 bankruptcy proceedings substantiates their privilege concerns.  (Liquidators' Reply Mot. Recon. at 3.)  However, at the hearing, Aviva pointed out that the privilege log concerned

14

documents created during the liquidation—documents Aviva has conceded are not Manley Documents subject to the Manley Documents Order. *See supra* note 2.

The Court agrees that with regard to the vast majority of the Manley documents, the Liquidators do not have a leg to stand on. First, as the Court has already determined, any communication that "touched base" with the United States is no longer privileged, meaning no review is necessary. And although the Court would be inclined to allow for a review of documents to locate communications privileged under Hong Kong law, the Liquidators have entirely failed to demonstrate even a passing chance any documents other than the eight CDs categorized as "legal documents," as well as Boxes 19 and 21 described as "Document[s] in relation to Legal Proceedings"[9] (Calland Decl. Opp. Mot. Recon. Ex. 2) contain privileged information. The other boxes contain employment contracts; management accounts; audited financial statements; profits tax returns; tax computations; board meeting minutes; shareholder resolutions; annual meeting minutes; a certificate of incorporation; a copy of business registration; unissued share certificates; a memorandum and articles of association; a register of directors, members, transfers, and charges; banking documents; payment vouchers; receipt vouchers; journal vouchers; sale order forms; invoices; bills of lading; purchase orders; factory invoices; emails; a general ledger; and human resources records. (*Id.*) None of the other categories of documents reveal any possibility of privileged communications under Hong Kong law. The Court is

---

[9] Given the dates ascribed to Boxes 19 and 21, these documents are very likely documents related to Manley's U.S. litigation in this district, Iowa, and New Jersey. Such documents would touch base with the United States. Nevertheless, out of an abundance of caution, the Court will permit review of those boxes.

unsure if counsel for the Liquidators have even conducted a preliminary review to substantiate their "legitimate concerns" about privilege.  While the Liquidators raise the specter of "claims and accus[ations] of violating HK privilege law" should they release any privileged communications (Liquidators' Mem. Supp. Mot. Recon. at 17), they fail to provide any legal or factual support for that contention.

Accordingly, the Court will modify its Manley Documents Order to allow for a review of the eight CDs of "legal documents" in Box 17 as well as Boxes 19 and 21 (hereafter the "Privilege Review Set").  All other documents should be produced without a review for privilege.  Furthermore, for the avoidance of doubt, all documents within the Privilege Review Set as to which there is no legitimate claim of privilege and all documents that "touch base" with the United States, regardless of any arguable prior privileged status, must be produced.

As to any documents the Liquidators withhold on privilege grounds following the foregoing review, the Liquidators must produce a privilege log identifying each such document and setting forth the information required by Federal Rule of Civil Procedure 26(b)(5)(A).

### 2.   Whether to Permit a Review for Private Information Under Hong Kong Data Privacy Law

The Liquidators ask the Court to allow for a review of the Manley Documents to ensure no data is disclosed in violation of the Hong Kong Personal Data (Privacy)

Ordinance (Cap. 486) ("PDPO").[10]  (Liquidators' Mem. Supp. Mot. Recon. at 13-14.)

They primarily rely on Ong's declaration analyzing the applicability of the PDPO

generally.  Aviva argues that the review for sensitive information under the PDPO is

unnecessary because: 1) the Liquidators have failed to show that the PDPO applies

because personal information will not be found in the Manley Documents; and 2) even if

the PDPO applies, the *Aerospatiale*[11] factors weigh against blocking discovery based on

Hong Kong privacy law.  The Liquidators believe "the Aerospatiale factors are

inapplicable here [because] [t]he Liquidators are not asking this Court to block the

production of Documents under Hong Kong law. . . . The Liquidators are simply asking

this Court to allow them to conduct a privilege and data privacy review of the

Documents, at Aviva's expense.  If there are Documents which fall under the privilege or

privacy categories, they will be logged and the log will be provided to Aviva."

(Liquidators' Reply Mot. Recon. at 7.)

        The Court finds it difficult to reconcile the Liquidators' statement that they do not

seek to block discovery of certain documents with their intention to provide a privacy log

that presumably catalogs documents withheld on the basis of the PDPO.  Where a party

seeks to limit discovery on the grounds of foreign privacy law, courts routinely find the

*Aerospatiale* factors to be instructive.  *See, e.g.*,  *Grupo Petrotemex, S.A. De C.V. v.*

*Polymetrix AG*, Case No. 16-cv-2401 (SRN/HB), 2019 WL 2241862, at *1-*6 (D. Minn.

---

        [10] An official version in English can be found here:
https://www.elegislation.gov.hk/hk/cap486!en-zh-Hant-HK.pdf.
        [11] *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
482 U.S. 522, 546 (1987).

May 24, 2019) (Swiss data privacy law); *In re Baycol Prods. Litig.*, MDL No. 1431

(MJD/JGL), 2003 WL 22023449, at *6 (D. Minn. Mar. 21, 2003) (Germany data privacy

law); *see also, e.g., In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592,

2016 WL 3923873, at *6-7 (E.D. La. July 21, 2016) (German data privacy law);

*BrightEdge Techs., Inc. v. Searchmetrics, GmbH*, Case No. 14-cv-01009-WHO (MEJ),

2014 WL 3965062, at *2 (N.D. Cal. Aug. 13, 2014) (German and EU data privacy law).

The Court will analyze those factors here.

 "The party opposing discovery of relevant, non-privileged information has the

burden of establishing some good cause or sound reasons for blocking disclosure."

*Grupo Petrotemex*, 2019 WL 2241862, at * 2 (quoting *Rolscreen Co v. Pella Prod. of St.*

*Louis, Inc.*, 145 F.R.D. 92, 95 (S. D. Iowa 1992)).  "Thus, the party relying on foreign

law to resist discovery has the burden to show such law applies to the discovery at issue."

*Id.*

The Liquidators rely on Ong's analysis of the PDPO to argue that the PDPO

applies to the Manley Documents.  (Ong Decl. ¶¶ 6–18.)  Under Section 4 of the PDPO,

> [A] data user shall not do an act, or engage in a practice, that contravenes a data protection principle unless the act or practice, as the case may be, is required or permitted under this Ordinance.

Relevant here, "personal data shall not, without the prescribed consent of the data subject,

be used for a new purpose (which the data subject has not previously consented to)."

(Ong Decl. ¶ 10); *see also* Hong Kong PDPO sch. 1, Data Protection Principle 3. Ong

ultimately concludes that "[i]f the Liquidators disclose the Documents to the Minnesota

Court without informing the data subject(s) and obtaining their prescribed consent, the

Liquidators may contravene the PDPO (DPP 3 – Clause 3(1)), unless an exemption applies." (*Id.* at 11.)  He goes on to conclude no such exemption[12] applies and that the penalty for disclosure would be a fine up to HK$1,000,000 and imprisonment for up to 5 years under Section 64(3C).[13] (*Id.* at 11.)

Aviva argues that per the document descriptions provided by the Liquidators, the majority consist of routine business documents that do not implicate any privacy concerns at all.  (Aviva Mem. Opp. Mot. Recon. at 5-6, 16.)  It points out that the Liquidators *assume* that the Manley Documents contain what *might* be defined as "personal data." (*Id.* at 17 (quoting Liquidators' Mem. Supp. Mot. Recon at 13).)

After an exchange of letters post-hearing (*see* ECF Nos. 1180–84), the Liquidators provided an example of a "voucher" document containing arguably private information under the PDPO.  [*See* ECF No. 1186-1.]  However, as Aviva explained in its responsive letter, the Liquidators had previously disclosed the redacted information when it provided some of Manley's general ledgers—unredacted—to Aviva during the bankruptcy case in New Jersey.  (Aviva's Feb. 3, 2022 Ltr. to Maj. J. at 1 [ECF No. 1188].)  Matching the voucher to the general ledger, Aviva demonstrates that the Liquidators redacted information—names of individuals, bank account numbers, and business email addresses—about Samson Chan, an individual associated with Manley who is a

---

[12] An exemption for legal proceedings exists but only for Hong Kong proceedings. Hong Kong PDPO § 60B.

[13] Ong also discusses possible liability for disclosing personal data that were obtained without consent, but Manley's improper data collection practices can hardly be said to be grounds to block disclosure of discoverable information.

defendant in a related case and allegedly played a "key role" in the concealment of Manley's assets.  *See* Memorandum Opinion and Order at 3, 23, *ASI, Inc. v. Aquawood, LLC et al.*, Case No. 19-cv-763 (JRT/HB) (D. Minn. Mar. 31, 2022), ECF No. 510.

Although Aviva's points are well-taken, the Court is satisfied by the Liquidators' showing that some data subject to the PDPO's restrictions may be found in the Manley Documents.  Personal data means any data "(a) relating directly or indirectly to a living individual; (b) from which it is practicable for the identity of the individual to be directly or indirectly ascertained; and (c) in a form in which access to or processing of the data is practicable."  Hong Kong PDPO § 2(1).  This definition is broad and encompasses day-to-day information such as the data redacted by the Liquidators.  Aside from the boxes containing corporate documents, the Manley Documents almost certainly contain at least some protected data.  Pertinent as that data may be to Aviva's claims, the information is nonetheless the type of data that may be subject to the PDPO's restrictions on use and disclosure.

However, the Court is not convinced that disclosure of any of the information would result in an actual violation of the PDPO.  "The practice of trying to establish the meaning of a law of a foreign country by testimony or affidavits of expert witnesses, usually lawyers or law professors, often from the country in question" where, as here, English sources exist to illuminate the issues of foreign law, is unsound judicial practice. *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 631 (7th Cir. 2010) (Posner, J., concurring); *see also Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 345 (8th Cir. 1983) ("Federal courts are quite capable of applying foreign law when required to do

20

so[.]").  "[It] adds an adversary's spin, which the court then must discount."  *Bodum USA,*

*Inc.*, 621 F.3d at 629 (maj. op.)  Ong's declaration in this case does not paint the whole

picture of liability.  Section 64(3C) prohibits the disclosure without consent of personal

data

> with an intent to cause any specified harm . . . [or] being reckless as to whether
> any specified harm would be, or would likely be, caused to the data subject or any
> family member of the data subjects; and the disclosure causes any specified harm.

Specified harm means

> (a) harassment, molestation, pestering, threat or intimidation to the person;
> (b) bodily harm or psychological harm to the person;
> (c) harm causing the person reasonably to be concerned for the person's safety or
> well-being; or
> (d) damages to the property of the person.

The Ong declaration omits all of this qualifying information.  It could hardly be said that

in turning over the Manley Documents to Aviva pursuant to court order, the Liquidators

would have the intent to cause or recklessly disregard the possibility of causing any of

these harms to the data subjects.  Moreover, as Aviva emphasizes, neither the Ong

declaration nor the Liquidators' briefing provides any reason to believe the risk of

liability is more than speculative. [14]   The Liquidators previously disclosed personal data

in the New Jersey bankruptcy proceedings, actions further casting doubt over their

---

[14] In an *Aerospatiale* analysis, some courts weigh the hardship facing the
producing party, including whether they face civil or criminal liability for violations of
the blocking statute.  *See, e.g.*, *BrightEdge Techs., Inc.*, 2014 WL 3965062, at *5.  Were
the Court to include this consideration, the factor would weigh in favor of disclosure
since the Liquidators "have not provided any argument as to whether parties in [their]
position have been fined or prosecuted for disclosing personal data under similar
circumstances."  *Id.*; *see also Gucci Am. v. Curveal Fashion*, Case No. 09-cv-8458
(RJS)(THK), 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8, 2010).

concerns about liability. *See Remington Prods., Inc. v. N. Am. Philips. Corp.*, 107 F.R.D. 642, 652-56 (D. Conn. 1985)

Recognizing that the PDPO nevertheless applies to the Manley Documents even if disclosure is unlikely to result in any actual liability, the Court must next determine whether the balance of interests lies in favor of deferring to that blocking statute. *See In re Baycol Prods. Litig.*, 2003 WL 22023449, at \*6. Courts in this district apply the five factors identified in *Aerospatiale*:

> (1) The importance to the litigation of the information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means to obtain the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the foreign country.

482 U.S. at 544 n.28. Courts have not looked favorably on blocking statutes. *See Skky, Inc. v. Thumbplay Ringtones, LLC*, No. 13-cv-2072 (PJS/JJG), 2014 WL 11429038, at \*5 (D. Minn. Apr. 4, 2014).

By failing to brief the *Aerospatiale* factors, the Liquidators have failed to carry their burden of persuasion. Nevertheless, because the interests at stake are largely those of the foreign sovereign, the Court will "exercise special vigilance" to ensure comity concerns are addressed. *See Aerospatiale*, 482 U.S. at 546; *see also Chevron Corp. v. Donziger*, 296 F.R.D. 168, 204 (S.D.N.Y. 2013) (undertaking comity analysis despite parties' undeveloped positions).

Here, there is no question that the information sought is critically important to Aviva's judgment collection efforts, including the parallel RICO action. The Manley

Documents contain information about Manley's assets, asset transfers, sales, profits, customers, corporate structure and ownership, and intercorporate relationships that would substantiate Aviva's claims of corporate shell games to avoid judgment collection efforts. *See Grupo Petrotemex*, 2019 WL 2241862, at *7 (balance of interests weighs in favor of compelling production of documents containing information that goes to the heart of the matters at issue).  The first factor therefore weighs strongly in favor of production.

As to the second factor—specificity—on the one hand Aviva's initial discovery requests were quite broad.  On the other, Aviva and the Liquidators have specifically identified twenty-one bankers boxes subject to the Court's orders.  Moreover, too much time has passed to consider relevancy or overbreadth objections under the U.S. procedural rules.  Therefore, the Court finds that this factor weighs weakly in favor of production.  *See id.* at 6.

The third factor—whether the information originated in the United States—weighs in favor of deferring to the PDPO, as there is no question that most if not all of the information sought originated outside the United States.  *See id.*

The fourth factor—the availability of alternative means—weighs in favor of production.  The Liquidators are the only individuals with the Manley Documents.  Now that Manley has dissolved, it does not appear the information exists in any other format or in any other location than in the twenty-one bankers boxes held by the Liquidators. *See BrightEdge Techs., Inc.*, 2014 WL 3965062, at *5 (focusing on the source of the information). Aviva could initiate proceedings in Hong Kong to obtain the relevant documents from the Liquidators, an activity that may fall within an exemption to the

23

PDPO.  But that process is uncertain, costly, and lengthy. *See Grupo Petrotemex*, 2019

WL 2241862, at *6 (focusing on alternative means of acquiring information in

compliance with blocking statute). As a result, this factor weighs weakly in favor of

production.

The final factor—whether noncompliance would offend important interests of the

United States or compliance would undermine important interests of Hong Kong—is

tricky in light of the Liquidators' failure to make any showing under the *Aerospatiale*

factors.  Besides the obvious interest in protecting its citizens against improper collection

and use of personal and potentially sensitive data, the interests of Hong Kong are not

clearly developed.  *See Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d. 409, 423

(S.D.N.Y. 2016) (collecting cases describing sovereign interest in nondisclosure of

personal data).  By contrast, "the interests of this Court and this country in timely

compliance with discovery are obvious and significant, due in part to 'the overriding

interest in the just, speedy, and inexpensive determination of litigation in our courts.'"

*Id.* at *7 (quoting *Aerospatiale*, 482 U.S. at 543.)  The Liquidators conceded at the

hearing that few, if any, documents contained personal data subject to the PDPO.

Allowing a review of the documents for personal data would only disrupt the United

States' interest in efficient litigation and increase costs.  As Aviva points out, Hong

Kong's interest in protecting the privacy of its citizens is best served by designating all

Manley Documents as Confidential under the Protective Order in this case.  (*See* Aviva's

Mem. Opp. Mot. Recon. at 17.)[15]  The Protective Order allows third parties to designate documents as such.  (Protective Order ¶ 6 [ECF No. 77].)

The Court concludes that, after balancing these factors, the equities weigh in favor of production rather than deferral to the PDPO.  Accordingly, the Court declines to modify the Manley Documents Order to allow for a review of personal data to be withheld under the PDPO.

### 3.    Whether to Require Hong Kong Court Approval

The Liquidators assert that an "order form the Hong Kong court [is necessary] in order to enforce the [Manley Documents Order]."  (Liquidators' Mem. Supp. Mot. Recon. at 17.)  The Ong declaration outlines the procedure that would need to be followed to obtain an order from a Hong Kong court in aid of discovery in this case. (Ong Decl. at 17-18.)

However, because the Court found that it has jurisdiction over the Liquidators, "they are subject to the same legal constraints, including the burdens associated with American judicial procedures," as American litigants.  *Aerospatiale*, 482 U.S. 540 n.25. The Liquidators do not challenge the Court's ruling on personal jurisdiction.  The Manley

---

[15] In its final correspondence on the matter, Aviva asked the Court to effectively modify the Protective Order to allow use of the Manley Documents in *ASI, Inc. v. Aquawood, LLC, et al.*, Case No. 19-cv-763 (JRT/HB) (D. Minn.). [ECF No. 1188 at 3.] The Court agrees such a modification makes sense, but notes that the Liquidators did not have an opportunity to respond to the proposal.  The Court directs Aviva's and the Liquidators' counsel to meet and confer about appropriate changes to the Protective Order in this case, or some other stipulated means to effectuate that end.   Aviva and the Liquidators shall file a joint letter no later than June 17, 2022, setting forth the proposed changes or stipulation and, as to any terms on which there is disagreement, the parties' respective positions.

Production Order is plainly enforceable in the United States through sanctions and contempt proceedings.  Given the background of this case, Aviva should understand the risks associated with obtaining an order only enforceable in the United States against foreign parties.  As a practical matter, it behooves Aviva to obtain a comfort order from a Hong Kong court to eliminate any further resistance from the Liquidators or Manley's COI, but the Court will not require it.

### 4.       Whether Aviva Should Pay for the Review

Given the lack of the Liquidators' interest in the outcome of this case and the fact that Aviva can more readily bear the costs since the Manley estate is closed (and therefore the Liquidators have no funds), the Liquidators ask this Court to shift to Aviva the burden of paying for any privacy or privilege review as well as for obtaining a Hong Kong order.  *Cf. Paisley Park Enters. Inc. v. Boxill*, Case No. 17-cv-1212 (WMW/TNL), 2019 WL 1036059, at *5 (D. Minn. Mar. 5, 2019) (subpoena context).  Aviva objects to any fee shifting given the low volume of documents, the Liquidators' deficient showing, and the low likelihood of uncovering any private or privileged documents.  (Aviva's Mem. Opp. Mot. Recon. 25-26.)

The Court has significantly curbed the relief requested by the Liquidators.  Aviva will not be required to obtain a comfort order from a Hong Kong court.  The Liquidators will only need to review three boxes of documents for privileged materials.  No review for data protected under the PDPO is permitted.  The time and cost to review this limited set of documents should be significantly less than Ong's original estimate of three weeks and US$30,000.  (*See* Jan. 31, 2022 Liquidators' Ltr. to Maj. J.)  Ong estimated a cost of

about US$1,000 per box, meaning three boxes would cost approximately US$3,000.  (*Id.*) Ong would also charge redactions at an additional US$10 per page and copies at US$0.13 per page.  (*Id.*)

Given the Liquidators' lack of interest in the Manley Documents and Aviva's ability to pay, the Court finds that Aviva should bear the costs of paying for the limited review for privileged materials.  However, there is a significant possibility that the costs for redactions may balloon unreasonably due to overbroad claims of privilege by Ong. As a result, the Court will only require Aviva to pay US$3,000 to facilitate the initial review and creation of a privilege log.  Whether Aviva or the Liquidators should bear the costs for redactions—if any—will need to be decided once the Court is fully apprised of the scope of redactions and the Liquidators' claims of privilege.  The Court would also require a more robust showing from the Liquidators that there are not more efficient and less costly mechanisms for redaction.

## III.   Motion for Contempt

As mentioned, Aviva seeks to hold the Liquidators in civil contempt for failing to produce the documents by the December 15, 2021 due date.  Specifically, Aviva asks for an order imposing sanctions including (1) payment of Aviva's attorneys' fees and costs expended to litigate the motion for contempt "and otherwise incurred as a result of the Liquidators' failure to comply with the [Manley Production Order], to be submitted to the Court after the Court rules on this motion;" and (2) a daily sanction of US$5,000 per day for each day the Liquidators remain in contempt of the Manley Documents Order. (Aviva's Mem. Supp. Mot. Contempt at 11 [ECF No. 1166].)

The Court may impose civil contempt sanctions pursuant to its inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *see* 18 U.S.C. § 401. "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). The Court may also sanction non-compliance with a discovery order under Rule 37(b)(2). To determine an appropriate sanction, a court must "balance the goals of enforcing the process of discovery and ensuring the adherence to policy aims of discovery with the right of a party to have its case heard on the merits." *Card Tech. Corp. v. DataCard, Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008). A party should not be sanctioned where the conduct was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The Liquidators oppose any sanction because 1) the Court went beyond the relief requested, 2) the Liquidators sought a stay to review for private and privileged information, which the Court did not consider, and 3) given the posture of the case, the Liquidators are not in contempt. In addressing the merits of the Liquidators' motion for reconsideration, the Court effectively decided the merits of the first two objections. On the one hand, the Court found that most issues should have been raised in the Liquidators' initial objections to the motion to compel. On the other hand, the Court agreed those issues were proper grounds for reconsideration of its prior order. But ultimately, most of the objections were unavailing. It is difficult to say that the motion for reconsideration substantially justified non-compliance.

Moreover, the posture of this case is little reason to excuse non-compliance: a motion for reconsideration—even one requesting a stay—does not "does not absolve [the ordered party] of the obligation to comply with the Order, and does not shield [the ordered party] from contempt proceedings." *Fredin v. Middlecamp*, Case No. 17-cv-3058 (SRN/HB), 2021 WL 75601, at *4 (D. Minn. Jan. 8, 2021); *see also Grove v. Meltech*, Case No. 8:20-cv-193, 2021 WL 106267 at * 2 (D. Neb. Jan. 12, 2021). The Supreme Court has held that all court orders must be complied with promptly. *See Maness*, 419 U.S. at 458; *Howat*, 258 U.S. at 189-90. This is true regardless of whether the court ultimately acted correctly. *Howat*, 258 U.S. at 190. Absent a stay, the person directed by the order must comply even if s/he has lodged an appeal. *Maness*, 419 U.S. at 458.

The Liquidators had only a limited excuse for non-compliance with the Manley Documents Order. At the very least, the Liquidators' failure to raise important questions about privilege and privacy resulted in delay of production of documents. Furthermore, nothing precluded the Liquidators from reviewing the documents and producing all documents for which they had no possible grounds for withholding or redaction, regardless of the outcome of their request for reconsideration, leaving for future determination the question of whether the cost of that review should be shifted to Aviva. As a result, storage costs for the Manley Documents have accrued. Previously, the Court required Aviva to pay these costs. However, in light of the delay, the Court finds that the Liquidators should be obligated to reimburse Aviva for the costs of storing the documents from December 15, 2021, until the present.

The Court expects and assumes the Liquidators will comply with the November 21, 2021 Order, as modified by this Order, without further delay.  Accordingly, it will not recommend imposition of a civil contempt fine at this time, but Aviva may seek the Court's intervention in the event of future non-compliance.  *See United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947) (describing factors a court must assess before imposing civil contempt sanction); *Evans v. Krook*, Case No. 20-cv-2474 (MJD/ECW), 2022 WL 1537994, at *8 (D. Minn. May 16, 2022) (discussing civil contempt authority of magistrate judges); *COKeM Int'l, Ltd. v. MSI Entm't LLC*, Case No. 19-cv-3114 (JRT/HB), 2021 WL 6425378, at *1 & n.1 (D. Minn. Sept. 10, 2021) (same and discussing differences between civil and criminal contempt); *see also Chi. Truck Drivers*, 207 F.3d at 506 (discussing inability to pay defense).

Finally, the Court finds that the Liquidators' failure timely to raise important questions about privilege and privacy needlessly multiplied the proceedings in this case, necessitating an additional round of briefing and hearing.  Accordingly, the Court will order the Liquidators to pay US$2,500 in attorneys' fees to Aviva.  In all other respects, Aviva's request for attorneys' fees and costs associated with the motion for contempt is denied.

## IV.    Conclusion

Therefore, based on the foregoing and all of the files, records, and proceedings herein, the Motion of Former Co-Liquidators of Manley Toys, Ltd., John Robert Lees and Mat Ng, for Modification of Order Compelling Turnover of Documents and Stay [ECF No. 1151] and Aviva's Motion to Hold the Liquidators in Civil Contempt and for

Sanctions for the Liquidators' Failure to Produce Manley Documents [ECF No. 1164] are

**RESOLVED AS FOLLOWS** and **IT IS HEREBY ORDERED THAT**:

1. The Manley Documents Order [ECF No. 1150] is modified to allow the Liquidators to review the Privilege Review Set for documents that may be withheld or redacted on grounds of privilege within the bounds described in this Order. Aviva must pay US$3,000 toward the cost of this review. The Liquidators' request for an opportunity to review the Manley Documents for privilege is denied in all other respects.

2. The Liquidators' request for an opportunity to review and withhold or redact Manley Documents that contain personal data under the PDPO is denied.

3. No later than June 21, 2022, the Liquidators must produce to Aviva without redaction copies of all Manley Documents (including forensically sound copies of all electronically-stored information ("ESI")) that are not within the Privilege Review Set.

4. No later than June 30, 2022, the Liquidators must produce to Aviva all documents within the Privilege Review Set that are not subject to withholding or redaction on privilege grounds as set forth in this Order. At the same time, the Liquidators must produce a log of all documents withheld or sought to be redacted on the basis of privilege. To the extent known, the log must include (1) the name and job title or capacity of the author, (2) the name of each recipient and relationship to Manley, (3) the date the document was prepared, (4) the title and description of the document, (5) the subject matter addressed in the document, (6) the specific basis for the claim that it, or information contained within it, is privileged, and (7) whether the document is being withheld in its entirety or subject to redaction. The log must also describe the Liquidators' basis for believing the document does not touch base with the United States.

5. The Liquidators must bear the costs of storage of the Manley Documents from December 15, 2021, to date. If Aviva has already paid for the costs of storage, the Liquidators must reimburse Aviva for those payments. The Liquidators must further pay US$2,500 in attorneys' fees to Aviva.

6.      Aviva and the Liquidators shall confer on an accounting of the amounts each owes to the other as provided by this Order and shall settle any balance due no later than June 30, 2022.

7.      Aviva's and the Liquidators' counsel must meet and confer about appropriate changes to the Protective Order in this case, or some other stipulated means to permit the use of the Manley Documents produced in this case to be used in the case of *ASI, Inc. v. Aquawood, LLC, et al.*, Case No. 19-cv-763 (JRT/HB) (D. Minn.), subject to the Protective Order in that case [ECF No. 239].   No later than June 17, 2022, Aviva and the Liquidators shall file a stipulation and proposed order.  To the extent there is any disagreement, the parties shall contemporaneously file a joint letter setting forth the terms on which they disagree and their respective positions and proposed language on those terms.

8.      No later than July 5, 2022, Aviva shall file a letter updating the Court as to the production of the Manley Documents.

9.      The Liquidators' request for a stay is denied as moot.

Dated: June 7, 2022

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

32